IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **TAYVIN GALANAKIS,**<br><br>Plaintiff/Counterclaim Defendant,<br>vs.<br><br>**CITY OF NEWTON, IOWA, et al.,**<br><br>Defendants/Counterclaim Plaintiff. | CASE NO. 4:23-cv-00044<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS UNDER FED. R. CIV. P. 12(b)(6)** |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Brief in Support of Motion to Dismiss Counterclaims Under Fed. R. Civ. P. 12(b)(6) states as follows:

**TABLE OF CONTENTS**

**Introduction** .................................................................................................. 1

**Standard Of Review** ..................................................................................... 2

**Argument** ....................................................................................................... 3

    I.    Defamation Claims Fail to Extent the Alleged Defamation Constitutes Statements of Opinion ........................................................ 3

        A.    Domestic Abuse - ¶12(a), (b), (m), (r) & ¶35(b) ........................... 5

        B.    "Sexual Harassment" - ¶12(c), (e), (i), (j), (p) ............................... 8

        C.    Officer Competence - ¶12(d), (f)-(h), (k), (o), (q) & ¶35(a), (d), (e), (g) ............................................................................................. 8

        D.    "False Arrest" ................................................................................. 9

        E.    Other Non-Defamatory - ¶12(l), (n) & ¶35(c), (e), (h) .............. 10

**II.   Claims for Filing a False Complaint Fails as No Complaint was Filed for Purposes of Iowa Code §80F.1(13)** ........................................ 11

**III.  Allegations of Intentional Infliction of Emotional Distress Fail to State a Claim** ................................................................... 12

**IV.   No Invasion of Privacy is Alleged to Have Occurred** ....................... 14

**Conclusion** ................................................................................................. 16

## INTRODUCTION

Tayvin Galanakis was stopped by Newton Police Officers Nathan Winter and Christopher Wing for driving with brights on in a residential area. During this stop, Officer Winters accused Tayvin of driving while intoxicated. Once the field testing established Tayvin had a zero blood alcohol content, Officer Winters switched the accusation to marijuana. All subsequent testing established this was false as well. Officer Wing, being Officer Winters superior, watched and approved of Officer Winters' actions and accusations. They are upset Tayvin has made public the footage of his wrongful arrest and Tayvin's accompanying commentary, none of which supports the counterclaims asserted. As those claims are unsupported by the allegations made, dismissal is required under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a counterclaim must contain sufficient facts, accepted as true, to state a claim to relief that is facially plausible. *Van Stelton v. Van Stelton*, 994 F.Supp.2nd 986, 990 (N.D. Iowa 2014) (*quoting Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). The question is whether a claim adequately asserts facts, not legal conclusions, supporting it. *Van Stelton*, 994

F.Supp.2nd at 991 (*quoting Whitney v. Guys, Inc.*, 700 F.3d 1117, 1128 (8th Cir. 2012). A claim has facial plausibility when pleaded facts allow reasonable inferences to be drawn about liability. *Magee v. Trs. of the Hamline Univ.*, 747 F.3d 532, 534 (8th Cir. 2014).

## ARGUMENT

### I. Defamation Claims Fail to Extent the Alleged Defamation Constitutes Statements of Opinion

A prima facie claim of defamation requires: 1) a published statement, 2) that is defamatory, 3) false, 4) malicious, 5) against the concerned party, with 6) a resulting injury. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 46 (2018). Statements of opinion are "'absolutely protected under the First Amendment.'" *Andrew v. Hamilton County Public Hospital*, 960 N.W.2d 481, 489 (Iowa 2021) (*quoting Kiesau v. Bantz*, 686 N.W.2d 164, 177 (Iowa 2004)). *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Opinions are not actionable. *Andrew*, 960 N.W.2d at 489. This is determined by considering whether it can be interpreted as stating actual facts and if those facts are capable of being proven true or false. *Id.* at 491 (*quoting Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006). This involves four factors:

> The first relevant factor is whether the alleged defamatory statement "has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous." …We characterized this factor as "the precision and specificity of the disputed statement."
>
> The second relevant factor is "the degree to which the [alleged

3

> defamatory] statements are ... objectively capable of proof or disproof [ ]." …We related this factor to the first factor and noted that "if a statement is precise and easy to verify, it is likely the statement is fact."
>
> …The third relevant factor is the context in which the alleged defamatory statement occurs. …"[T]he context to be considered is both narrowly linguistic and broadly social." …We characterized this factor as "the 'literary context' in which the disputed statement [is] made." …The degree to which a statement is laden with factual content or can be read to imply facts depends upon the article or column, see id., or in this case the whole discussion.
>
> The last relevant factor is "the broader social context into which [the alleged defamatory] statement fits." …Important here are the types of writing or speech in which the statement appears. …We likewise characterized this factor as "the social context," and noted that this factor "focuses on the category of publication, its style of writing and intended audience." …We also noted that we consider the " 'public context' or political arena in which the statements were made."

*Yates*, 721 N.W.2d at 770 (citations omitted). Under this approach, opinions are only actionable if they imply a provably false fact or if the facts relied on are provably false. *Id.* at 771 (*quoting Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994)).

While materials outside the pleading cannot normally be considered on a Rule 12(b)(6) motion to dismiss, "'documents whose contents are alleged in the complaint and whose authenticity no party questions'" are not outside the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (*quoting Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). Public records, including court records, may be considered. *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007). *See Est. of Cox by Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 304 (Iowa 2017) (court records subject to Iowa Open Records Act absent exception). As the allegations of defamation

arise directly or indirectly from the videos posted, links to those videos are included in this brief for the court to access. Additionally, the protective orders issued against Officer Winters are attached with redactions. (Ex. 1.)

For purposes of discussion, the statements which Officers Winters and Wing allege as defamatory which constitute opinions are grouped into general categories.

### A.   Domestic Abuse - ¶12(a), (b), (m), (r) & ¶35(b)

Officer Winters first asserts the statements on a posted video that he was "convicted of domestic abuse after beating up his ex girlfriend" is defamation.[1] ( It is true Officer Winters has not been criminally charged, let alone convicted, of domestic abuse. As Officer Winters notes, Tayvin has attempted to clarify this, publicly acknowledging "the officer may not have been convicted nor any charges filed, he did consent to have a civil no-contact/protective order placed on him by a former girlfriend … *for* domestic abuse. The order has been modified to allow him to use a gun while at work." (CC ¶20.) Officer Winters does not deny this and a protective order for relief from domestic abuse was issued against him and extended by consent. (Ex. 1.)

The allegations of defamation relate to the term conviction. (CC ¶12(a), (b), (r).) The term conviction "is of equivocal meaning[.]" *State v. Hanna*, 179 N.W.2d 503, 507 (Iowa 1970). In a technical legal sense, it includes:

> …the status of being guilty of, and sentenced for, a criminal offense, whether that status is established after confession of guilt by a guilty plea or after determination by a jury verdict upon an assertion of innocence. Stated otherwise technically the word means the final consummation of the prosecution against the accused including the

---

[1] The video can be accessed at https://www.youtube.com/watch?v=so_bFYoIsow. The text complained of is at 38:24 – 38:37.

>judgment or sentence rendered pursuant to an ascertainment of his guilt.

*Id.* at 508. Yet:

>In its general and popular sense and frequently is its ordinary legal sense, the word 'conviction' is used in the sense of establishment of guilt prior to and independently of judgment and sentence by a verdict of guilty or a plea of guilty.

*Id.* Where the meaning of a term is subject to different interpretations by the public, it is to be considered in the broader context. *Yates*, 721 N.W.2d at 770. This includes terms having legal definitions:

>While Hettinga's statement similarly may offend a great many people, others may believe that without a threat of force, rape has not occurred. Indeed, some states still require a showing of force as an element of rape. …Accordingly, a "consensus of understanding" does not exist as to whether rape exists without a threat of force. *Yates*, 721 N.W.2d at 770. Moreover, …the context of Hettinga's statement supports a finding that he was expressing his subjective belief about the plaintiffs' status as victims, rather than communicating a verifiable fact.

*Bandstra*, 913 N.W.2d at 48-49 (Iowa 2018).

The term "conviction" lacks a "consensus of understanding" and is indefinite enough to include the entry of protective orders against individuals accused of domestic abuse. For a temporary protective order, a court must find "good cause" including a "[p]resent danger of domestic abuse[.]" Iowa Code §236.4(2). A court "may approve a consent agreement…without a finding the defendant engaged in domestic abuse." Iowa Code §236.5. These protective orders fall within the popular meaning of "conviction."

These also render the statements "substantially true," providing an "absolute

defense to an action for defamation." *Hovey v. Iowa State Daily Publication Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985). Where common usage of terms may be substituted for "'an exact legalism'" its use does not render a statement false. *Id.* (*quoting Simonson v. United Press International, Inc.*, 654 F.2d 478, 482 (7th Cir. 1981)). The issuance of protective orders for relief from domestic abuse sufficiently meets the popular definition of conviction so that "[t]he difference between the truth and the reported truth [is] not material enough for the inaccuracy to be actionable." *Hovey*, 372 N.W.2d at 256.

The video referenced in Counterclaim ¶12(m)[2] is non-defamatory for the same reasons. For Officer Winters to be asserting it as defamatory, the issue must again be the reference to him having a domestic abuse history. The protective orders to which he consented arising from such allegations are sufficient to support the statement.

As to Officer Wing's claim, there is nothing in the statement complained of to support that it is against Officer Wing. (CC ¶35(b)). The statement concerns Officer Winters' "boss" who allows him "to walk around with a gun[.]" (CC ¶35(b)). For this to mean Officer Wing requires a tortured reading. The simplest interpretation is that it is a reference to the Newton Chief of Police, as he is Officer Winters clearest boss, the one authorizing him to have a firearm, and the one most likely to make a statement under such circumstances.

---

[2] This video can be accessed at https://www.tiktok.com/@taytothejay/video/7151071794105978155.

7

B.   **"Sexual Harassment"** - ¶12(c), (e), (i), (j), (p)

This claimed defamation arises from statements asserting Officer Winters made a sexual joke when Tayvin made a statement about "blowing" in requesting to take a breath test. (CC ¶12(c), (i), (j), (p).) Yet the video from which the claimed defamation arises shows Officer Winters made such a joke.[3] Unwanted jokes of a sexual nature can constitute sexual harassment. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Watkins*, 944 N.W.2d 881, 888 (Iowa 2020). Uniformed officers can commit sexual harassment against people they have seized in traffic stops. *Murry v. City of Onawa, Iowa*, 323 F.3d 616, 618-19 (8th Cir. 2003).

Tayvin viewed the sexual joke made against him by a law enforcement officer whose custody Tayvin was in as harassment. In the context of the events in which Officer Winters made the joke, even if the statements were more than an opinion, they would not be defamatory.

C.   **Officer Competence** - ¶12(d), (f)-(h), (k), (o), (q) & ¶35(a), (d), (e), (g)

Tayvin's commentary about Officer Winters and Wings competence are not statements having "a precise and verifiable meaning and are therefore less likely to give rise to clear factual implications." *Yates*, 721 N.W.2d at 773. It is similar to claims of being "substandard and poor performers" or "too much sloppy journalism", which are unlikely to be verifiable. *Id.* (*quoting Moldea*, 22 F.3d at 317). Reasonable readers of the comments "could conclude [Tayvin] was giving his personal conclusion

---

[3] The video can be accessed at https://www.youtube.com/watch?v=so_bFYoIsow. The joke can be heard at 4:22-4:31.

8

or opinion" about the underlying circumstances. His opinion is supported by the admitted fact that Tayvin had a zero blood alcohol content and was ultimately released when Newton's own DRE officer determined Tayvin showed no signs of intoxication. (Petition ¶¶33, 46-49; Answer ¶¶33, 46-49.) Officer Winters also admitted to having "been wrong many times" when he accused people of intoxication.[4]

The statements alleged defamatory in Counterclaim ¶12(k) contain nothing which could be considered defamatory, stating that Winters had not been punished and has been working. This "statement is nonactionable because it is not false" as Officer Winters maintains he did nothing to be punished for. *Bandstra*, 913 N.W.2d at 49. Even interpreted to mean Officer Winters should be punished is a matter of opinion "not objectively capable of proof or disproof." *Id.* at 48. This is also true for the caption in Counterclaim ¶12(o) and ¶35(d), (e), and (g) which is clearly Tayvin's belief as to the attitude that Officers Winters and Wing directed toward him.[5]

D. **"False Arrest"**

Tayvin has filed claims for false arrest against Officers Winters and Wing. This claim is going to be adjudicated by the court. In this sense, the claim is "objectively capable of proof or disproof." *Yates*, 721 N.W.2d at 770. That does not mean those

---

[4] The video can be accessed at https://www.youtube.com/watch?v=so_bFYoIsow. The admission can be heard at 38:30-38:40.
[5] The video referenced in ¶12(o) and ¶35(e) can be accessed at https://www.tiktok.com/@taytothejay/video/7138898521301880110. The video referenced in ¶35(d) can be accessed at https://www.tiktok.com/@taytothejay/video/7139984845543034158. The video referenced in ¶35(g) is accessible at https://www.youtube.com/watch?v=so_bFYoIsow with the text at 12:04.

comments on the videos of his arrest and subsequent release are actionable defamation as "'a term is not automatically categorized as an assertion of fact because it is capable of precise meaning and verification when read in isolation.'" *Andrew*, 960 N.W.2d at 492. When considered as part of the whole video, Tayvin is clearly expressing his innocence of the offense for which he was arrested, something he does throughout the entirety of the video itself. His belief that his arrest was wrongful is justified given that he was released without charges after another officer determined there was no basis for his being charged. (Petition ¶¶46-49; Answer ¶¶46-49.) His comments to this end are not defamatory in this broad context. *See Id.* at 493; *Yates*, 721 N.W.2d at 772.

### E. Other Non-Defamatory - ¶12(l), (n) & ¶35(c), (e), (h)

The caption referencing throat punching is not a comment directed at Officer Winters, and the context of the video makes that clear, with the officer talking about throat punching being another officer who sent the statement to Officer Winters in a text visible on Officer Winters' phone.[6]

As for the comparison to being kidnapped and raped, a reasonable person can't believe, despite the inflammatory language, that Tayvin is accusing Officers Winters and Wing of kidnapping and rape. The videos on which this caption appears are in the context of Tayvin having been arrested for an offense he had not committed, transported to the police station where he was held involuntarily, and subjected to

---

[6] The video referenced in ¶12(l) is accessible at https://www.tiktok.com/@taytothejay/video/7141224074876865838. The text on Officer Winters phone can be seen at 00:52-01:14.

10

physical manipulation and testing by police.[7] Utilizing this language in the context of being taken against your will and held in a location you can't leave while performing physical actions at the demands of those holding you is crude, but not defamatory.

II. **Claims for Filing a False Complaint Fails as No Complaint was Filed for Purposes of Iowa Code §80F.1(13)**

Iowa Code §80F.1 provides a private cause of action for an officer "from the filing of a false complaint against the officer[.]" Iowa Code §80F.1(13). It also defines "Complaint" as "a formal written allegation signed by the complainant or a signed written statement by an officer receiving an oral complaint stating the complainant's allegation." Iowa Code §80F.1(1)(a). For such a complaint to be a false one implies a determination made following "[a] formal administrative investigation of an officer[.]" Iowa Code §80F.1(3). Such an investigation is "ordered by a commanding officer…or commander's designee…intended to gather evidence to determine the merit of a complaint[.]" Iowa Code §80F.1(1)(b).

None of these are alleged. There is no allegation of a formal written allegation by Tayvin, nor one signed by an officer receiving an oral complaint from him. Videos and comments posted online, which is all that is alleged. are not a complaint per Iowa Code §80F.1(1)(a). (Counterclaim [CC] ¶¶56-57, 64-65.) Nor is there any claim these

---

[7] The video referenced in ¶12(n) and ¶35(c) is accessible at https://www.tiktok.com/@taytothejay/video/7139651456507907370. That video is segment of the larger video, referenced in ¶35(h), which is at https://www.youtube.com/watch?v=so_bFYoIsow, with the caption appearing at 36:15-36:19.

were determined false following a formal administrative investigation. Absent allegations of a complaint that has been determined false, there is no claim under Iowa Code §80F.1(13). Counts III and IV must be dismissed.

### III. Allegations of Intentional Infliction of Emotional Distress Fail to State a Claim

To state an intentional infliction of emotional distress claim, the facts asserted must plausibly allege: (1) outrageous conduct; (2) intentional causing, or reckless disregard of the probability of causing, emotional distress; (3) severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the outrageous conduct. *Vinson v. Linn-Mar Community School Dist.*, 360 N.W.2d 108, 118 (Iowa 1984). The court must determine whether the relevant conduct may reasonably be regarded as outrageous. *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014). To do so, the court must determine if the conduct by the defendant is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lennette v. State*, 975 N.W.2d 380, 392 (Iowa 2022). It is not enough to show there was tortious intent or was intended to inflict emotional distress, or that the conduct is characterized by "malice," or a degree of aggravation for which punitive damages could be awarded for another tort. *Vinson*, 360 N.W.2d at 118.

The conduct called outrageous is the posting of videos of actual events with commentary by the person Officers Winters and Wing seized. The commentary about the officers amounts to "mere insults, bad manners, or hurt feelings" insufficient for outrageous conduct. *Hedlund v. State*, 930 N.W.2d 707, 724 (Iowa 2019). These

"unfavorable online publications" accompanying videos of the events themselves do not go "'beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *Zueger v. Goss*, 343 P.3d 1028, 1037 (Colo. App. Ct. 2014). Even to the extent the commentary could be defamatory, it isn't outrageous:

> [E]ven if [plaintiff] was engaged in a personal vendetta intended specifically to humiliate and harass [defendant] or make him lose his job, the specific conduct of making defamatory remarks at public meetings, sending letters to government officials containing defamatory statements, *and maintaining an Internet website with defamatory information*, does not rise to the level of 'extreme and outrageous conduct'…necessary to impose liability for intentional infliction of emotional distress.

*Cohen v. Meyers*, 167 A.3d 1157, 1181 (Conn. App. Ct.). Even two years of online attacks on an attorney as a mentally unstable stalker who never "worked or tried a case," with allegations of pedophilia and ties to terrorists "might be distasteful and offensive" but "do[es] not meet the extreme standard…required for an intentional infliction of emotional distress claim." *Saadi v. Maroun*, No. 8:07-CV-1976-T-24MAP, 2008 WL 4194824, *5 (M.D. Fla. Sept. 9, 2008). *See also Fuller v. Loc. Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 422 (Iowa 1997) (false police report alleging criminal activity not outrageous conduct).

Looking to the relationship between the parties, the power disparity between the two as demonstrated in the videos themselves cuts against outrageous conduct: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Vinson*, 360 N.W.2d at 118

13

(*quoting* Restatement (Second) of Torts §46, cmt. d). Tayvin was a 19-year-old college student seized for hours by Officers Winters and Wings on allegations of intoxication, which ended only when the Newton Police Department's own drug-recognition expert concluded there was nothing to indicate Tayvin was intoxicated. (Petition ¶¶46-49; Answer ¶¶46-49.) Harsh comments against the seizing officers in such a circumstance is hardly shocking. *See Resek c. City of Huntington Beach*, 41 Fed.Appx. 57, 59 (9th Cir. 2002) ("[T]he job of police officers requires a thick skin. Theirs is not a job for people whose feelings are easily hurt."); *Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) ("Police officers must be more thick skinned than the ordinary citizen….").

Additionally, these claims fail for the failure to "allege any facts related to the alleged harm they suffered." *Bucco v. Western Iowa Tech Community College*, 555 F.Supp.3d 628, 662 (N.D. Iowa 2021). Their only allegation is of "severe or extreme emotional distress, the full extent of which is yet unknown" with a laundry list of purported injuries. (CC ¶¶71, 76.) "These are conclusory allegations and are insufficient to meet the standard." *Id*. These claims must be dismissed.

## IV.   No Invasion of Privacy is Alleged to Have Occurred

Unreasonable intrusion into privacy occurs when a person "intentionally intrudes…upon the solitude or seclusion of another or his private affairs or concerns…if the intrusion would be highly offense to a reasonable person." *In re Marriage of Tigges*, 758 N.W.2d 824, 829 (Iowa 2008) (emphasis omitted). The two elements of this offense are "an intentional intrusion into a matter the plaintiff has a right to expect privacy" and an act "highly offensive to a reasonable person." *Koeppel*

*v. Spiers*, 808 N.W.2d 177, 180 (Iowa 2011).

Officers Winters and Wing claim their right to privacy was "unreasonable [sic] and offensively invaded through oral communication and written statements" from Tayvin. (CC ¶¶80, 85.) The only such communications and statements noted anywhere in the counterclaims are the videos of his seizure by Officers Winters and Wing. Nearly all of this occurred on a public road in Newton, which the officers themselves recorded. There is no invasion of privacy "if the plaintiff is already in the public view." *Stessman v. American Black Hawk Broadcasting Co.*, 416 N.W.2d 685, 687 (Iowa 1987). No liability arises from video of someone "while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Restatement (Second) of Torts §652B, cmt. c. (1977).

To the extent the video involved events happening at the police station, there is still no expectation of privacy in these circumstances. Again, this is footage recorded by law enforcement with the expectation it would be utilized in public proceedings. While no criminal charges arose, Officers Winters and Wing clearly expected them to, with all footage of Tayvin likely to become public through court proceedings. Given this, there is no allegation Officers Winters or Wing were "in a private place when the conduct occurred." *Davenport v. City of Corning*, No. 06-1156, 2007 WL 3085797, *8 (Iowa App. Ct. Oct. 24, 2007).

All the conduct in these videos, and the commentary associated with them, regard conduct of Officers Winters and Wing in their law enforcement capacity. Nothing about their private lives which wasn't already part of the public record was

implicated. Invasion of privacy concerns "the private, as distinguished from the public, life of the individual" with "'no liability when the defendant merely gives further publicity to information…that is already public.'" *Howard v. Des Moines Register and Tribune Co.*, 283 N.W.2d 289, 298 (Iowa 1979) (*quoting* Warren & Brandeis, *The Right to Privacy,* 4 HARV.L.REV. 193, 214 (1890). Officer Winters notes, without denial, that he has consented to a protective order for relief from domestic abuse being imposed against him. (CC ¶20.) There are no claims for invasion of privacy as no expectation of privacy was invaded. These claims must be dismissed.

## CONCLUSION

None of the Counterclaims raised by Officer Winters and Wing state claims which are facially plausible under the facts alleged. For the reasons set forth above, all must be dismissed.

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY: /s/ *Adam C. Witosky*
Matthew M. Boles           AT0001037
Adam C. Witosky            AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Facsimile:  (515) 243-3696
Email:      mboles@gbswlaw.com
            awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on March 2, 2023.  Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

/s/ *Tami Fairchild*

16