UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, ROB BURDESS, NATHAN WINTERS, CHRISTOPHER WING, individually and in their official capacities with the Newton Police Department,<br><br>      Defendants.<br><br>―――――――――――――――――――<br><br>NATHAN WINTERS and CHRISTOPHER WING,<br><br>      Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br><br>      Plaintiff/Counterclaim Defendant. | No. 4:23-cv-00044<br><br><br><br><br><br>**DEFENDANTS'/COUNTERCLAIM PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESISTANCE TO PLAINTIFF'S/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS** |

COMES NOW, the Defendants/Counterclaim Plaintiffs Nathan Winters, and Christopher Wing (collectively "Defendant Officers"), by and through the undersigned counsel, and for their Brief in Support of their Resistance to Plaintiff's/Counterclaim Defendant's ("Plaintiff") Motion to Dismiss hereby state as follows:

## I.      FACTUAL BACKGROUND

This matter arises from a traffic stop of Plaintiff on August 31, 2022. On said date, Plaintiff was operating his motor vehicle with his high-beam headlights engaged in a residential area in the

City of Newton, Iowa, in violation of both state and municipal codes. Defendant Officers stopped the Plaintiff due to this violation and proceeded with the business of the stop. While conducting that business, it became clear that Plaintiff's actions were slowed and impaired. Due to this outward indicator of impairment, the aforementioned Defendant Officers had probable cause to detain Plaintiff after a field sobriety test and other field observations. Once detained, Plaintiff was quickly released after follow-up observations and field sobriety tests were performed that resulted in the cessation of probable cause.

Despite this lawful arrest upon probable cause, Plaintiff proceed to accuse the aforementioned Defendant Officers of sexually assaulting him, of withholding necessary medical care, of having committed various crimes, of incompetence in their trade, and other false and defamatory statements that were published orally and through written communications online, despite Plaintiff knowing they were false. These statements subsequently caused damages to Defendant Officers.

These damages led Defendant Officers to file a Counterclaim along with their Answer. In response, Plaintiff filed a Motion to Dismiss seeking to dismiss Counts I-VIII of Defendant Officers' Counterclaim on February 9, 2023.

## II.    <u>LEGAL STANDARD</u>

Under Iowa Rule of Civil Procedure 1.421(1)(f), a motion to dismiss may be granted "only if the petition shows ***no right of recovery under any state of fact***." (Emphasis added). In order to sustain a motion to dismiss, the moving party must demonstrate that no state of facts is conceivable under which Plaintiff might show a right of recovery. *See State ex rel. Miller v. Phillip Morris, Inc.,* 577 N.W.2d 401, 403 (Iowa 1998). A motion to dismiss is sustainable only when it appears to a certainty that Plaintiff has failed to state a claim on which any relief may be granted under any

state of facts provable under the allegations. *See Curtis v. Board of Supervisors of Clinton County*, 270 N.W.2d 447, 448 (Iowa 1978).

If, in view of what is alleged, it reasonably can be conceived that Plaintiff can, upon trial, make a case entitling Plaintiff to some relief, the Petition should not be dismissed. *See Newton v. City of Grundy Center*, 70 N.W.2d 162, 165 (Iowa 1955). The filing or granting of motions to dismiss is generally not favored. *See Henry v. Shober*, 566 N.W.2d 190, 191 (Iowa 1997). The thrust of a motion to dismiss is directed at the pleadings and, consequently, facts not contained in the pleadings will not be considered. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 310 (Iowa 1982).

In addition, a motion to dismiss may be granted under the Federal Rule of Civil Procedure 8(a)(2), which only requires a ***"short and plain statement of the claim."*** (Emphasis added). "When the Plaintiff pleads factual content that allows the court to draw the ***reasonable inference*** that the defendant is liable for the misconduct alleged," a claim will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Emphasis added). "Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Siouxland Energy and Livestock Co-op. v. Gaylor*, 2002 WL 31749490 *2 (N.D. Iowa 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). This standard is no different when it involves a counterclaim. *See N. Valley Commun., LLC v. Sprint Commun. Co. Ltd. Partn.*, 618 F. Supp. 2d 1076, 1079 (D.S.D. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984)).

### III.  <u>ARGUMENT</u>

**A.  Plaintiff's Motion to Dismiss Should not be Considered in its Entirety**

First, Plaintiff's various sources of extrinsic evidence attached and otherwise referenced are not properly before this Court. In order to survive a motion to dismiss, Defendant Officers must only put forth a "short and plain statement of the claim." Federal Rule of Civil Procedure 8(a)(2). The Counterclaim in paragraph 12 states in part that "[o]n the following dates and occurrences, Counterclaim Defendant falsely and knowingly spoke and/or authored the following**, but not limited to the following**, defamatory statements concerning Counterclaim Plaintiff Officer Winters." (Counterclaim, pp. 13, 20) (emphasis added).

While it is certainly true that the Defendant Officers also included some examples of the false and defamatory statements that were made by Plaintiff, this by no means limited the pleadings to just the select statements. The entirety of the Counterclaim speaks of the false and defamatory statements that were made throughout any number of mediums, not all of which were expressly listed as examples in the Counterclaim. These included allegations of other oral statements, written statements, statements used to further a business enterprise to sell merchandise, direct communications with other third parties, and by other means. *See e.g.* (Counterclaim, pp. 17-18). The combination of giving specific examples of the conduct and then making short and plain statements of the claims are repeated throughout the Counterclaim.

This is due to the extensive material facts which are not present within the record. No discovery has been conducted in this matter. Defendant Officers have had no access to the full statements of Plaintiff due to him publicly restricting his statements about the incident in his social media platforms, being unable to find the details about his posts only found within his social media accounts, being unable to access any business information in regard to the merchandise sold, and

being unable to properly capture the statements the Plaintiff publicly posted without full access to the accounts, his public comments, and replies to others' comments. This lack of information requires the pleading to be open-ended at this early stage of litigation.

Second, the nature of a motion to dismiss relies on the allegations contained within the pleadings, and these attachments to the Motion to Dismiss would be improper to be considered by this Court. While the 8th Circuit has observed that:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

*Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

The dispute here lies not in the court records which Plaintiff supplied which may be properly admitted through judicial notice, but through the rest of the various website links to YouTube and TikTok which are not properly admitted into evidence. These links indicate statements that were made by the Defendant Officers' party opponent. In fact, videos that were edited, produced, and strategically enhanced through captioning to support the narrative which Plaintiff wishes to weave. *See e.g.* (Counterclaim, pp. 15-15, 20-21). The authenticity of edited, captioned, and party-opponent published produced videos may be reasonably questioned by the Defendant Officers.

The Eight Circuit has recognized that an authenticity dispute correctly forecloses the motion to dismiss standard. *See Zean v. Fairview Health Services*, 858 F.3d 520, 527 (8th Cir. 2017). Authenticity is governed by Federal Rule of Civil Procedure 901(a) which states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must

produce evidence sufficient to support a finding that the **item is what the proponent claims it is**." (emphasis added). The procedure to authenticate party-proposed social media posts and edited videos from original police videos may be demonstrated by the examples provided within Rule 901. Perhaps the broadest example of how to authenticate documents is Rule 901(4) which states that "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."

The Eight Circuit has already dealt with this issue in *BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). It held that when documents attached to the motion to dismiss were not the only relevant documents relevant to the claim, when their significance was in dispute, and the documents were only provided to oppose the pleading, they should not be considered within a motion to dismiss. *BJC,* 348 F.3d at 688. Ultimately, the Court concluded that the "alleged the existence of a contract, not a specific document, and the documents provided by Columbia were neither undisputed nor the sole basis for BJC's complaint." *Id.* at 688.

This authenticity concern is especially powerful considering the selective nature of the information presented by Plaintiff for review before this Court. Plaintiff chooses not to include any of the other sources of defamatory material from his Facebook, his website, or other digital platforms referenced throughout the Counterclaim. He, in fact, did not attach any of it in a reasonably tangible form, but only included live links which can only be edited and modified by Plaintiff. Authentic documents are not ones which can change and be altered at will by another party.

Further, as explained in the prior paragraphs, the Defendant Officer's Counterclaim is based on general allegations, not wholly on the specific statements listed within. These videos were edited and provided in express opposition to the pleadings, and these videos and social media

posts do not constitute the entirety of the allegations as Plaintiff intentionally omitted statements featured on his Twitter, Facebook, and other accounts from his Resistance. He provided only these edited and selected materials to be considered, in opposition to the Counterclaims, as warned against by the Eight Circuit. *See BJC,* 348 F.3d at 688.

If this Court does consider this extrinsic evidence and converts this Motion to Dismiss into a motion for summary judgment, the Defendant Officers believe they should have the opportunity to conduct discovery and have notice of such. *See Kaestal v. Lockhart,* 746 F.2d 1323, 1324 (8th Cir. 1984). Defendant Officers have not had the appropriate opportunity to respond to the evidence presented because they have no access to these social media accounts which can be edited and accessed only by Plaintiff, at Plaintiff's pleasure. *See Nuclear Transp. & Storage, Inc. v. U.S.,* 890 F.2d 1348, 1351 (6th Cir.1989), *cert. denied,* 494 U.S. 1079, (1990) (cited by *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). Material facts are in dispute in this matter regarding these statements and the Defendants Officers should be offered an opportunity to respond to these offered facts. *Nuclear*, 890 F.2d at 1351.

**B.  Defendant Officers have Stated Claims Upon Which Relief May be Granted**

Defendant Officers have established claims upon which relief may be granted in whole throughout their pleadings.

i.    *Defendant Officers Have Stated a Claim Upon Which Relief May be Granted as to Allegations Regarding Domestic Abuse*

An action for defamation under Iowa law requires that the "plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). The Iowa Supreme Court has provided that there are "traditionally two types of libel: libel per se and libel per quod." *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996).

An Iowa Court will find a statement to be libel per se if it tends "to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule." *Nickerson,* 542 N.W.2d at 510. Further, the Iowa Supreme Court has explained that "[a]ccusations of indictable crimes of moral turpitude are libel per se." *Bierman v. Weier*, 826 N.W.2d 436, 464 (Iowa 2013) (citing *Huegerich v. IBP, Inc.,* 547 N.W.2d 216, 221 (Iowa 1996)).

Here, the Counterclaim met this requirement as both counts provide sufficient details and notice that Plaintiff has committed libel per se. "[A] claimant need not 'set out in detail the facts upon which he bases his claim.' Rather, the complaint need only provide the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" the factual allegations inside the pleadings remain the key points of analysis. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Defendant Officers plead that "Counterclaim Defendant caused these knowingly false and defamatory written and/or oral statements to be published to third parties through publicly accessible online platforms and other means which exposed the statements to the general public." (Counterclaim, pp. 18, 22). Defendant Officers set forth several grounds for defamation in the statements included throughout the Counterclaim and general aversion to other-like statements. The nature of the defamation committed against Defendant Officer Nathan Winters includes accusations that he committed "**crimes of moral turpitude**, of incompetence, and of lacking skill in the professional occupation in which he earns a living, and those communications tend to injure his ability to conduct a trade or business." (Counterclaim, p. 17) (emphasis added). It is the crimes of moral turpitude point that Plaintiff chose to target in his Motion to Dismiss.

Plaintiff admits that he has made public comments which accuse Defendant Nathan Winters of having been "convicted of domestic abuse after beating up his ex girlfriend." (Motion to Dismiss, p. 5). In fact, he admits that he knew they were untrue at one point—before or after

making the statement is unclear in his Motion to Dismiss. (Motion to Dismiss, p. 5). In order to avoid this clear libel per se per Iowa law, Plaintiff argues that the Counterclaim could be interpreted by some differently as to the meaning of the term "conviction." This argument misconstrues the standard of review for motions to dismiss.

Again, "[w]hen the [p]laintiff pleads factual content that allows the court to draw the ***reasonable inference*** that the defendant is liable for the misconduct alleged" a claim will survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678 (emphasis added). The term "conviction" patently means and refers to a criminal matter. *See "*Conviction," Black's Law Dictionary (11th ed. 2019). Plaintiff claims that the exact legalism of the term "conviction" is not important because the issuance of a civil protective order and a conviction of domestic abuse are commonly substituted terms. Plaintiff also attempts to couch his expressions as matters of "opinion" rather than fact and cites that the determining factor is whether the alleged defamatory statement can reasonably be interpreted as being capable of being proven true or false. Officer Defendants have provided sufficient information that Plaintiff's "opinion" regarding his "conviction" is false.

As to the defamation counterclaim brought by Defendant Lieutenant Christopher Wing, Plaintiff tries to conflate this issue by refusing to recognize the title which Defendant Lieutenant Christopher Wing holds, and the title upon which the entirety of the Defendant Officer's Counterclaim rests. (Motion to Dismiss, p. 7). Plaintiff states that a boss cannot possibly refer to Defendant Lieutenant Christopher Wing. (Motion to Dismiss, p. 7). But, it can be said without a doubt that a Lieutenant outranks and is in a leadership role over an officer on a city police force. But by leaving the title out, Plaintiff attempts to target the last prong of defamation, that the defamatory statement was targeted towards the person complaining of it. *See Taggart*, 549 N.W.2d at 802.

Again, since the Court could make a very reasonable inference that a boss of a police officer may in fact be his lieutenant, this count is properly pled. *Ashcroft*, 556 U.S. at 678. Regardless, if there is a feasible alternative reading of this statement or any other statements, this question must be submitted to the jury, not to this Court. *See Olson v. City of N. Liberty,* 451 F. Supp. 3d 1010, 1027 (S.D. Iowa 2020) ("When the language is unambiguous, whether an utterance was slander per se is a decision for the court. When the utterance can sustain two meanings, the jury decides which meaning the defendant conveyed.") (internal citations omitted).

Plaintiff attacks no other element of defamation in regard to Defendant Lieutenant Wing and thus Defendant Officers have both stated claims upon which relief may be granted by this Court.

ii.     *Defendant Officer Nathan Winters Has Stated a Claim Upon Which Relief May be Granted as to Allegations Regarding Sexual Harassment*

Plaintiff attempts to defend his claims by arguing that Defendant Officer Nathan Winter's Counterclaim is simply not true. *See e.g.* (Motion to Dismiss, pp. 8, 10, 11).  This is not proper. For a motion to dismiss, the moving party must "admit[] the well-plead[]facts in the pleading" and should only be "testing their legal sufficiency."  *Haupt v. Miller,* 514 N.W.2d 905, 907 (Iowa 1994) (citing *Jones v. Madison County*, 492 N.W.2d 690, 693–94 (Iowa 1992)); *see also Cohen v. U.S.*, 129 F.2d 733, 736 (8th Cir. 1942). The validity of this video is questioned by the City as edited videos produced by the other party, for public consummation, on a non-secure video-sharing platform, and made for the sole purpose of supporting his litigation cannot be said to be from a trustworthy and authenticate source. The video should not be viewed by this Court, and instead, the factual allegations should be accepted as stated in Counterclaim, as appropriately cited by Plaintiff.

> iii.   *Defendant Officers Have Stated a Claim Upon Which Relief May be Granted as to Allegations Regarding Officer Competence*

Again, Plaintiff misunderstands the nature of a motion to dismiss in making the claim that "[r]easonable readers of the comments 'could conclude [Tayvin] was giving his personal conclusion or opinion' about the underlying circumstances." (Motion to Dismiss, p. 9).  While it is certainly within the realm of possibility that a person may conclude such, that is not the question before this Court today. The question is whether the factual content stated in the Counterclaim, taken as true, would allow the Court to make the reasonable inference that Plaintiff could be held liable. *See Ashcroft,* 556 U.S. 662, 678; *see also Haupt,* 514 N.W.2d at 907.

The relevant factual statements made by Plaintiff, stated in part, are that "officer winters, this guy is on the slow side of the spectrum," "[h]e sounded like a little kid who was roll playing a cop during recess. I'm thinking in my head no way this guy pass training," "Officer Winters is not fit mentally for the job and physically," "he seems to be slightly mental," "Winters did not get punished and has been working till this day. Let's make sure this guy never walks around any community with a gun again!," "[h]ear these mfs mocking me, lmao little did they know, " and "Wing and Winters look at each other and laugh in mockery." (Counterclaim, pp. 15-16); (Motion to Dismiss, p. 8).

These statements are not just defamatory attacks on the competency of Defendant Officers, but also bring up independent grounds of defamation. To assess these statements, defamation per quod must be considered along with defamation per se. In *Bierman*, the Iowa Supreme Court has explained that "[i]n libel per quod cases, by contrast, a plaintiff must ordinarily prove all the above six elements." *Bierman*, 826 N.W.2d at 444. Those elements are "(1) publication, (2) of a defamatory statement, (3) which was false and (4) malicious, (5) made of and concerning the plaintiff, (6) which caused injury.*" Id.*; *See also Johnson v. Nickerson*, 542 N.W.2d 506, 510

(Iowa 1996); *Vojak v. Jensen*, 161 N.W.2d 100, 104, 108 (Iowa 1968), *abrogated in part on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111, 119–21 (Iowa 2004).

The first element of publication is clearly pled and is not disputed by Plaintiff. *See e.g.* (Motion to Dismiss, p. 8). For the second defamatory element, "the imputation of certain physical and **mental attributes** such as disease **or insanity** are defamatory because they tend to deter third persons from associating with the person so characterized." Restatement (Second) of Torts § 559 (emphasis added). Iowa largely follows the Second Restatement on defamation. *See e.g. Bierman*, 826 N.W.2d at 464.

As to any of the other statements which pertain to training or skill in the trade in which Defendant Officers possess, Iowa law makes clear that an accusation that one has a "lack of skill in the trade, occupation, profession, or office by which one earns his living" are statements which constitute libel per se. *Suntken v. Den Ouden*, 548 N.W.2d 164, 167 (Iowa App. 1996) (citing *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968), *abrogated by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004)). "Iowa courts have held 'loathsome disease' and 'incompetence in occupation' constitute slander per se." *Olson*, 451 F. Supp. 3d at 1027 (quoting *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115 (Iowa 1984)).

Plaintiff appears not to dispute, by omission, that the Defendant Officers plead that these statements were false, made concerning Plaintiff, and caused injury as plain by the Counterclaim. (Motion to Dismiss, pp. 8-9). The entirety of the defamatory statements made by Defendant Officers is properly before this Court as the factual allegations align with the legal elements for each count.

iv.     *Defendant Officers Have Stated a Claim Upon Which Relief May be Granted as to Allegations Regarding False Arrest*

Plaintiff here supposes that each and every comment made by Plaintiff can be justified because he was falsely arrested, a legal conclusion that will be decided by this Court.[1] (Motion to Dismiss, pp. 8-9). Plaintiff is in error because defamation is its own cause of action under Iowa law. A cause of action which may be pled in a counterclaim. Those facts, that constitute a legal counterclaim, are plead with legal sufficiency, as has been laid out in the preceding paragraphs. If there is a question about the meaning of those statements, that is a question of fact for the fact finder. If those statements are unclear as Plaintiff contends, they must be properly submitted to the jury. *See Olson*, 451 F. Supp. 3d at 1027; (Motion to Dismiss, pp. 9-10).

v.     *Other Non-Defamatory Statements*

A similar premise as the defamation claims runs through these claims. To the issue of the video, Defendant Officers repeat their prior argument on the admissibility of the Plaintiff's made and edited video attached solely as a link. Regardless, the interpretation of a statement which is presumed true on its face is a jury question if its meaning is not plain on its face, which it is. This same principle holds true for Plaintiff's accusation that Defendant Officers "kidnapped and raped him" as even Plaintiff admits that this is "inflammatory language." (Motion to Dismiss, p. 10). Inflammatory language that constitutes an accusation of one having committed a crime is defamation per se pursuant to Iowa law. *See Bierman*, 826 N.W.2d at 464. Reasonable inferences could certainly be made to say that Defendant Officers have stated a claim upon which relief may be granted.

---

[1] Defendant Officers would state that this issue was submitted by both parties with lawful jury demands.

vi.      *Officer's Bill of Rights Claims*

Iowa Code § 80F.1 is titled the "Peace Officers, Public Safety, and Emergency Personnel Bill of Rights." In this provision, it allows that "[a]n officer shall have the right to bring a cause of action against any person, group of persons, organization, or corporation for damages arising from the filing of a false complaint against the officer or any other violation of this chapter including but not limited to actual damages, court costs, and reasonable attorney fees." Iowa Code § 80F.1(13). The crux of this matter is what constitutes a complaint. A complaint is expressly defined under Iowa Code § 80F.1 as "a formal written allegation signed by the complainant or a signed written statement by an officer receiving an oral complaint stating the complainant's allegation." The difficulty in interpreting this clear language is the lack of case law interpreting the revision to Iowa Code § 80F.1(13) which went into effect in July 2021. This change was made sometime after the Iowa Court of Appeals held that the prior version of 80F.1 did not provide a private right of action in district court by officers. *See Dautovic v. Bradshaw*, 800 N.W.2d 755, 2011 WL 1005432 *1 (Iowa App. 2011).

This was clearly changed in 2021 by the addition of the "officer shall have the **right to bring a cause of action** against any person, group of persons, organization, or corporation for damages arising from the filing of a false complaint." Iowa Code § 80F.1(13) (emphasis added). This revision of the statutory language provides a right of action to officers who are aggrieved by a false complaint that is: (1) formal, (2) written, (3) an allegation, and (4) signed by the complainant. *See* Iowa Code § 80F.1(13).

The Counterclaim meets these requirements from the plain statutory language. Despite Plaintiff's statement that nothing within the Counterclaim allege a complaint was made per the statute, Plaintiff made and published the statements within the Counterclaim but also included

many of them in his Complaint, which was formal, written, expressed allegations, and was signed

by the complainant. Plaintiff also admits that they made a "claim" regarding false arrest already in

their Motion to Dismiss. (Motion to Dismiss, p. 9).

Pursuant to the short and plain statement of the claims standard, Defendant Officers did

not list the medium in which Plaintiff fielded his complaint, just that he had a duty pursuant to

Iowa Code 80f(13) and that he violated the duty he had by alleging the various false accusations,

which were substantially included in Plaintiff's Complaint. (Counterclaim, pp. 24-30). This forms

a prima facia case pursuant to Iowa Code § 80F.1. Defendant Officers posit that a lawful complaint

has been made for the purpose of Iowa Code § 80F.1.

vii.    *Defendant Officers Have Stated a Claim Upon Which Relief May be Granted as to*
        *Allegations Regarding Intentional Infliction of Emotional Distress*

Plaintiff asserts that the entirety of Defendant Officers' Counts V and VI regarding the

intentional infliction of emotional distress caused by Plaintiff are insufficient because the

allegations, which are proffered as "commentary," "amounts to 'mere insults, bad manner, and

hurt feelings' insufficient for outrageous conduct." (Motion to Dismiss, p. 12).

Before discussing the relevant legal standard for an intentional infliction of emotional

distress action, it is important to clarify what is listed in the Counterclaims. As simple highlights,

Defendant Officer Winters lists that Plaintiff "[m]ade knowingly false statements accusing

Counterclaim Plaintiff Officer Winters of committing a crime or having committed crimes" and

"[p]ublicly published knowingly heinous, inflammatory, and untrue statements including accusing

one or more of Counterclaim Plaintiffs of having sexually assaulted, raped, and kidnapped him."

(Counterclaim, p. 30).  As far as Defendant Lieutenant Christopher Wing, the Counterclaim states

that Plaintiff "[m]ade knowingly false statements accusing Counterclaim Plaintiff Lt. Wing of

committing a crime or having committed crimes" and "[p]ublicly published knowingly heinous,

inflammatory, and false statements including accusing one or more of Counterclaim Plaintiffs of having sexually assaulted, raped, and kidnapped him." (Counterclaim, p. 32). It is alleged that these and other stated accusations and statements constitute "outrageous conduct and were done with the intent of causing emotional distress or with reckless disregard for the result of such." (Counterclaim, pp. 30-32).

Now with the factual contentions clear, Iowa case law supports that these claims are properly plead. In order to recover for intentional infliction of emotional distress, a litigant must plead facts that demonstrate "(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress." *Barreca v. Nickolas*, 683 N.W.2d 111, 123–24 (Iowa 2004) (quoting F*uller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997)).

The Iowa Supreme Court has recognized that there is some overlap between the torts of defamation and infliction of emotional distress. *See Smith v. Iowa State U. of Sci. and Tech*., 851 N.W.2d 1, 25-26 (Iowa 2014). The Iowa Supreme Court distinguished federal case law to find that intentional infliction of emotional distress was properly distinguishable from defamation when there was other wrongful conduct **beyond just merely false statements**. *See Smith,* 851 N.W.2d 25-26 (citing *Limone v. U.S.,* 579 F.3d 79, 93 (1st Cir. 2009)) (emphasis added).

The first element of intentional infliction of emotional distress is outrageous conduct. *See Barreca,* 683 N.W.2d at 123-124. It is true that the court determines, as a matter of law, if the activity complained of is outrageous based on the reasonable jury standard. *See Smith,* 851 at 26 (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2.d 178, 183 (Iowa 1991). But critically,

the Iowa Supreme Court has cited that "[w]here reasonable men may differ, **it is for the jury**, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Smith*, 851 N.W.2d at 26 (citing Restatement (Second) of Torts § 46, cmt. *h,* at 77 (1965) (emphasis added).

The Iowa Supreme Court has said that the "differences between mere bad conduct and outrageousness" is that:

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and **lead him to exclaim, "Outrageous**!"

*Smith*, 851 N.W.2d at 26 (quoting *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156–57 (Iowa 1996)) (internal quotations omitted) (emphasis added). With this standard in mind, reasonable inferences support the claims by Defendant Officers.

The factual allegations are supported by other conduct as shown throughout the Counterclaim. The Defendant Officers expressly re-alleged and incorporated the entirety of the Counterclaim into each count. While Counts V and VI relate, by way of summary, examples of outrageous conduct, other parts of the Counterclaim describe examples of it in detail. Defendant Officers asserted that Plaintiff sold merchandise which defamed them, advertised his products using false defamatory statements involving their character and reputation, and encouraged others to contact them directly regarding these false and in his own words here "inflammatory statements" which included accusations of rape and kidnapping. (Counterclaim pp, 18, 22, 30, and 32); (Motion to Dismiss, p. 10). The emotional distress which was caused from those contacts was extreme as to put these accusations, that many online assumed to be true, in the public eye caused them emotional and reputational damage.

Each point does not have to be replead in extensive detail as the "Court agrees it must read the pleading as a whole, rather than 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Summers Mfg. Co., Inc. v. Tri-County AG, LLC,* 300 F. Supp. 3d 1025, 1034 (S.D. Iowa 2017) (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Plaintiff's attempt to isolate and parse up the Counterclaim fails as the Court must look at the entirety of the pleadings. These pleadings indicate that the conduct set out exemplifies outrageous conduct.

viii.   *Defendant Officers Have Stated a Claim Upon Which Relief May be Granted as to Allegations Regarding Invasion of Privacy*

Causes of actions for invasion of privacy vary under Iowa law. Plaintiff attempts to narrow Iowa law to restrict it to just one type of invasion of privacy—unreasonable intrusion upon seclusion. (Motion to Dismiss, pp. 14-16). Plaintiff fails to explain that there are four types of invasion of privacy claims recognized under Iowa law. The Iowa Supreme Court has expressly "adopted the definition of invasion of privacy recognized by the Restatement (Second) of Torts, including unreasonable intrusion upon seclusion." *Koeppel v. Speirs,* 808 N.W.2d 177, 181 (Iowa 2011) (citing *Winegard v. Larsen,* 260 N.W.2d 816, 822 (Iowa 1977)). The Iowa Supreme Court provides that "[f]our types of invasion of privacy were recognized: 'unreasonable intrusion upon the seclusion of another, . . . appropriation of the other's name or likeness, . . . unreasonable publicity given to the other's private life, . . . [and] publicity that unreasonably places the other in a false light before the public.'" *Koeppel*, 808 N.W.2d at 181 (citing Restatement (Second) of Torts, § 652A(2), at 376).

The Iowa Supreme Court has clarified that these "[t]hese four distinct forms of invasion each represent an interference with the plaintiff's right to be left alone, but they are **otherwise unrelated.**" *Koeppel*, 808 N.W.2d at 181 (citing Restatement (Second) of Torts, § 652A cmt. b, at

337.)

While three out of the four acknowledged variations of invasion of privacy causes of actions have occurred here, to survive a motion to dismiss, Defendant Officers will focus on just one of the variations which was factually plead in their Counterclaim.[2] The Iowa Supreme Court adopts the Restatement definition of the invasion which happens when one unreasonably places the other in a false light before the public and sets forth the test that this occurs when: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Winegard,* 260 N.W.2d at 823 (quoting Restatement (Second) of Torts, §652(E)).

With this definition in mind, invasion of privacy of this type is clearly plead in the Counterclaim. The Counterclaim for invasion of privacy for the Defendant Officers explicitly incorporates and realleges all preceding paragraphs. (Counterclaim, pp. 33-34). With the proper incorporation of those paragraphs, the Counterclaim sets out that the Defendant Officers had a reasonable expectation of privacy in their personal lives and that their privacy was invaded through oral and written communications from Plaintiff. (Counterclaim, pp. 33-34). Because of the express incorporation, the allegations that are incorporated herein are that Plaintiff had no interest in the truth in the defamatory statements which are peppered throughout the entirety of the pleadings. (Counterclaim, pp. 17, 22). The various false statements are set out throughout the pleadings and the damages that publicizing these matters has had on the Defendant Officers. *See e.g.* (Counterclaim pp. 13-14). The incorporation of the defamation counts is clear because the Iowa Supreme Court has provided this type of invasion of privacy "overlaps the law of defamation."

---

[2] Defendant Officers have laid no factual grounds for asserting that an appropriation of their name or likeness has occurred at this time.

*Winegard*, 260 N.W.2d at 823 (citing Restatement, § 652(E); Prosser on Torts § 117 (Fourth Edition, 1971), at 813).

The factual grounds laid out within the entirety of the pleadings meet the various forms of invasion of privacy recognized by Iowa law. Defendant Officers have stated claims on which relief may be granted with all reasonable inferences being made in their favor.

## IV.   CONCLUSION

WHEREFORE, Defendant Officers request that the Court deny Plaintiff's Motion to Dismiss in its entirety and afford them the costs of defending said motion, including attorney's fees and expenses, be assessed against Plaintiff.

Respectfully submitted,

By:   */s/ Matthew S. Brick*
      Matthew S. Brick, AT0001081
      Erin M. Clanton, AT0002592
      Douglas A. Fulton, AT0002672
      **BRICK GENTRY, P.C.**
      6701 Westown Parkway, Suite 100
      West Des Moines, IA 50266
      T: (515) 274-1450
      F: (515) 274-1488
      matt.brick@brickgentrylaw.com
      erin.clanton@brickgentrylaw.com
      doug.fulton@brickgentrylaw.com

      Counsel for Defendants
      CITY OF NEWTON, ROB BURDESS,
      NATHAN WINTERS and CHRISTOPHER
      WING

      Counsel for Counterclaim Plaintiffs
      NATHAN WINTERS and CHRISTOPHER
      WING

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 16, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which, pursuant to Local Rule 5A(k), will send a notice of electronic filing to the parties of record, including:

> Matthew M. Boles
> Adam C. Witosky
> GRIBBLE, BOLES, STEWART &
> WITOSKY LAW
> 2015 Grand Avenue, Suite 200
> Des Moines, Iowa 50312
> mboles@gbswlaw.com
> awitosky@gbswlaw.com
> Counsel for Plaintiff/Counterclaim Defendant

> /s/     *Matthew S. Brick*
> Matthew S. Brick, AT0001081