IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, et al.,<br>    Defendants. | CASE NO. 4:23-cv-00044<br><br><br>PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS |
| NATHAN WINTERS AND CHRISTOPHER WING,<br>    Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>    Counterclaim Defendant. | [REDACTED PER R.DOC.43] |

COMES NOW the Plaintiff/Counterclaim Defendant and for this Brief in Support of Motion for Summary Judgment on Counterclaims states:

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 2

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENTS ...................................................................................................................... 2

    A.    Defamation ............................................................................................................ 3

        1.    Count I – Officer Winters .............................................................................. 4

            a.    Domestic abuse – ¶12(a), (b), and (e) ................................................ 4

            b.    Job fitness - ¶12(c) and (d) ................................................................ 7

    2.   Count II - Lt. Wing ................................................................................ 9

  B.  False-Light Invasion of Privacy – Counts V and VI .......................... 11

CONCLUSION ............................................................................................................ 14

## INTRODUCTION

Officer Winters and Lt. Wing complain of public statements made by Tayvin Galanakis. Tayvin admits to making them; however, each statement is substantially true or undirected at the person complaining about them, requiring summary judgment for Tayvin on the remaining counterclaims.

## STANDARD OF REVIEW

Summary judgment is granted if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). A dispute is genuine if evidence could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome. *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012). Non-movants' evidence is believed with justifiable inferences drawn in their favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Tayvin has the burden to identify evidence demonstrating no genuine issue of material fact. *Carter v. Chrysler Corp.*, 173 F.3d 693, 699 (8th Cir. 1999). The Court doesn't weigh evidence or determine truth, but only determines whether there is a genuine issue for trial. *Tolan*, 572 U.S. at 656.

## ARGUMENTS

On August 28, 2022, Newton Police Officer Nathan Winters and Lt. Christopher Wing stopped Tayvin Galanakis for using high beams in town and failing to dim them. (Statement of Undisputed Material Fact [SUF] ¶1.) Officer Winters

conducted field tests for intoxication on Tayvin in the rain, at the end of which Tayvin took a preliminary breath test which revealed a 0.00 blood alcohol content. (SUF ¶2.) Following the PBT, Officer Winters changed his allegations from alcohol intoxication to marijuana. (SUF ¶3.) ███████████████ ███████████████ (SUF ¶4.) Officer Andrew Shinkle, Newton Police Department's sole Drug Recognition Expert, subsequently determined Tayvin was not intoxicated, resulting in Tayvin being released without charges. (SUF ¶5.) ███████████ ████████████████████████████████████████████████████ ████████ (SUF ¶6.) Tayvin subsequently posted video of the stop and allegedly defamatory and privacy-invading comments on his social media. (SUF ¶7.)

### A.  Defamation

Defamation requires 1) a published statement, 2) that is defamatory, 3) false, 4) malicious, 5) against the concerned party, with 6) a resulting injury. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 46 (2018). Statements of opinion are "'absolutely protected under the First Amendment.'" *Andrew v. Hamilton County Pub. Hosp.*, 960 N.W.2d 481, 489 (Iowa 2021) (*quoting Kiesau v. Bantz*, 686 N.W.2d 164, 177 (Iowa 2004)). *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Opinions are not actionable. *Andrew*, 960 N.W.2d at 489. This is determined by considering whether it can be interpreted as stating actual facts and if those facts are capable of being proven true or false. *Id.* at 491 (*quoting Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006). This

involves four factors:

> The first relevant factor is whether the alleged defamatory statement "has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous." ...We characterized this factor as "the precision and specificity of the disputed statement."
>
> The second relevant factor is "the degree to which the [alleged defamatory] statements are ... objectively capable of proof or disproof [ ]." ...We related this factor to the first factor and noted that "if a statement is precise and easy to verify, it is likely the statement is fact."
>
> ...The third relevant factor is the context in which the alleged defamatory statement occurs. ..."[T]he context to be considered is both narrowly linguistic and broadly social." ...We characterized this factor as "the 'literary context' in which the disputed statement [is] made." ...The degree to which a statement is laden with factual content or can be read to imply facts depends upon the article or column, see id., or in this case the whole discussion.
>
> The last relevant factor is "the broader social context into which [the alleged defamatory] statement fits." ...Important here are the types of writing or speech in which the statement appears. ...We likewise characterized this factor as "the social context," and noted that this factor "focuses on the category of publication, its style of writing and intended audience." ...We also noted that we consider the " 'public context' or political arena in which the statements were made."

*Yates*, 721 N.W.2d at 770 (citations omitted). Opinions are actionable only if they imply a provably false fact or if the facts relied on are provably false. *Id.* at 771 (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994)).

1. **Count I – Officer Winters**

   a. **Domestic abuse – ¶12(a), (b), and (e)**

Officer Winters asserts the statements that he was convicted of domestic abuse after beating up his ex-girlfriend are defamatory. It is true Officer Winters has not

been convicted of domestic abuse. As Officer Winters admits Tayvin clarified this by publicly stating: "the officer may not have been convicted nor any charges filed, he did consent to have a civil no-contact/protective order placed on him by a former girlfriend … *for* domestic abuse. The order has been modified to allow him to use a gun while at work." (SUF ¶8.) Officer Winters admits a protective order for relief from domestic abuse has been issued against him and extended by consent. (SUF ¶19-25.)

The facts establish Officer Winters physically abused his ex-girlfriend. (SUF ¶9-17.) Tayvin's statements are "substantially true," providing an "absolute defense." *Hovey v. Iowa State Daily Publication Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985). A statement "'is substantially true if…factually similar to the literal truth, and…differs from the truth by no more than immaterial details'" meaning "'if the statement does not harm the plaintiff's reputation more than would the pleaded truth.'" *Konchar v. Pins*, 989 N.W.2d 150, 161 (Iowa 2023) (*quoting* Meiring de Villiers, *Substantial Truth in Defamation Law*, 32 Am. J. Trial Advoc. 91, 99–100 (2008)).

The Court looks at the "gist or the sting of the defamatory charge" defined as "'the heart of the matter in question – the hurtfulness of the utterance.'" *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987) (*quoting Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987)). "If the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial truth as a matter of law." *Id.* (*quoting Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257, 1262 (Ariz. Ct. App. 1981)).

The sting of Tayvin's statements is the domestic abuse, not whether there was

5

a conviction. *See Walderbach v. Rompot*, No. 22-1245, 2023 WL 3092107 (Iowa Ct. App. Apr. 26, 2023) (admission "to using binoculars to spy on a neighbor approximates the common and historical understandings of what it means to be a 'peeping Tom,' even without admission to prurient purposes.") Officer Winters has offered no denial, no defense, nor any explanation for this abuse. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUF ¶18.)

The Fifth Amendment privilege can be asserted in a civil proceeding. *Cerro Gordo Charity v. Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471, 1480 (8th Cir. 1987). Yet a civil litigant "cannot hide behind a blanket invocation of the Fifth Amendment." *Koester v. American Republic Investments, Inc.*, 11. F.3d 818, 823 (8th Cir. 1993). Courts may respond to a civil invocation of the right "'to prevent unfair and unnecessary prejudice to the other side.'" *First Bank Capital, Inc. v. Agriprocessors, Inc.*, 2010 WL 300630, *7 (N.D. Iowa Jan. 19, 2010) (quoting *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008)). The Court may strike counterclaims and prevent a party "from offering evidence in support of positions on which he had invoked the Fifth Amendment." *S.E.C. v. Brown*, 579 F.Supp.2d 1228, 1234 (D. Minn. 2008) *aff'd by S.E.C. v. Brown*, 658 F.3d 858 (8th Cir. Oct. 13, 2011).

Officer Winters brought the counterclaims seeking damages for statements alleging he had committed domestic abuse. Falsity is an essential element. He cannot "refuse[ ] to provide discovery as to crucial elements of [his] counterclaim" and invoke the Fifth Amendment to rely on broad conclusory denials. *U.S. v. One Parcel of Real*

*Prop. Commonly Known as 901 N.E. Lakewood Drive, Newport, Or.*, 780 F. Supp. 715, 722 (D. Or. 1991). The Fifth Amendment is a "shield against compulsory self-incrimination" and cannot be used as "a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." *U.S. v. Rylander*, 460 U.S. 752, 758 (1983). Summary judgment must be granted as to these claims.

  b. **Job fitness - ¶12(c) and (d)**

It is further asserted Officer Winters was defamed by statements that "this guy is on the slow side of the spectrum" and "is not fit mentally for the job and physically." In context[1], these statements regarded Officer Winters' conduct during his stop of Tayvin and the performance of field testing. (SUF ¶27.) These are not statements having "a precise and verifiable meaning and are therefore less likely to give rise to clear factual implications." *Yates*, 721 N.W.2d at 773. It is similar to claims of being "substandard and poor performers" or "too much sloppy journalism", which are unlikely to be verifiable. *Id.* (*quoting Moldea*, 22 F.3d at 317). Reasonable readers of the comments "could conclude [Tayvin] was giving his personal conclusion or opinion" about the underlying circumstances. *Id.*

Tayvin's comments arose from the admitted facts that Officer Winters arrested

---

[1] A screenshot of the post with the comments complained of is in the Appendix. For full context, the post and all 823 comments can be accessed at: https://www.facebook.com/tayvin.galanakis/posts/pfbid0HhthUjgJNB2vhYoZ5TWusf6ButWYuyNZepYQeVVTcopoAeGYFJEXcUNX3731bDeyl (last accessed 12/13/2023)

7

Tayvin after learning he had 0.00 blood alcohol content and was ultimately released when Newton's own DRE officer determined Tayvin showed no signs of intoxication. (SUF ¶28.) They are at most insults, which are "protected as rhetorical hyperbole": "For example, Brinkman additionally called Bauer a "piece of shit" in the Facebook comment. While the phrase is certainly capable of precise meaning and objective verification, it is obvious it was meant only as name-calling and an insult." *Bauer v. Brinkman*, 958 N.W.2d 194, 199 (Iowa 2021). (SUF ¶27.) This Facebook post and comment were Tayvin's "emotionally charged response to how [he] perceived [Winter's] actions in relation to" Tayvin's arrest, made in a tone "'pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage' thus alerting readers that the statements are expressions of personal judgment.'" *Id.* at 201 (*quoting Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Characterization of specific facts related to an individual's competence, such as these, cannot be false. *Andrew*, 960 N.W.2d at 492.

Given their context and assuming them subject to a precise meaning, these statements are not false. In the investigation into the stop, Lt. Wing questioned Officer Winter's competence in determining intoxication. (SUF ¶29.) Lt. Wing also admitted when Officer Winters accused Tayvin of having used marijuana after the preliminary breath test came back 0.00, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired." (SUF ¶30.)

Lt. Wing admits that when he spoke with Officer Shinkle, the Drug

Recognition Expert for the Newton Police Department, he was told Tayvin was the *third individual that shift* whom Officer Winters had requested Officer Shinkle examine. (SUF ¶31.) For the first two, Officer Shinkle declined to perform testing after looking at and speaking with the individuals. (SUF ¶32.) This revelation caused Lt. Wing to state: "This worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him. I'm afraid this could happen again…" (SUF ¶33.)

Additionally worrying is that even after Tayvin had been cleared by Officer Shinkle, Officer Winters wanted to continue bringing charges against him:

> After the DRE evaluation was complete Officer Shinkle and Winters came into the office and Officer Shinkle told me that he found no signs of impairment. Officer Winters asked if they should charge him [since] he had been arrested. I told them absolutely not that if a DRE evaluation showed no evidence that we weren't going to charge him and that we should give him his property back and take him to his car so he can be on his way.

(SUF ¶35, Appx. 56.)

Officer Winters' ability to perform his duties was questioned within the department due to his conduct toward Tayvin. Given this context, Tayvin's statements about Officer Winters' abilities were crasser than Lt. Wing's, but are hardly defamatory. ████████████████████████████████████████████████████████████████████████████████████████ (SUF ¶44.) Summary judgment must be granted as to these claims.

### 2. Count II - Lt. Wing

Lt. Wing's only claim for defamation concerns a statement that "his boss needs

to make a statement. He's the one allowing this guy to walk around with a gun after beating up a women [sic][.]" (SUF ¶27, Appx. 69.) This comment[2] was made in response to another comment: "If he's got domestic charges he's not allowed to carry a gun that's automatic jail time." (SUF ¶27, Appx. 69.)

For this to mean Officer Wing requires a tortured reading. The simplest interpretation is that it refers to the Newton Chief of Police, as he is Officer Winters' clearest boss, the one authorizing him to have a firearm, and the one most likely to make a statement under such circumstances.

The only reason Officer Winters is permitted to carry a gun is because of a specific exemption that had to be added to the No Contact Order against him, providing: "Nothing in this Order prohibits the Respondent from conducting official police business." (SUF ¶22.) But for this, Officer Winters would be subject to the warning: "Federal <u>and state</u> laws provide penalties for possessing, transporting, shipping, or receiving any firearm or ammunition." (SUF ¶23.)

This Court has previously stated Tayvin's comment was plausibly defamatory as it "could be interpreted as a factual assertion that Wing is 'allowing' Winters to continue working despite being aware that Winter's 'beat[] up a woman.'" (R.Doc. 16 at 19.) Addressing the second part first, it is at least substantially true that Lt. Wing was aware of Winters' abuse. ████████████████████████

████████████████████████████████████████

---

[2] These comments are a part of the same comment thread as that discussed above, ~~accessible through the link in Footnote 1.~~



██████████████ (SUF ¶40.) This is contrary to Iowa law "as the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). *See also* Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required.")

As to the first part, Newton Police Department policy does not give Lt. Wing the authority to impose discipline on an officer for domestic abuse. Only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (SUF ¶41.) Chief Burdess bears "ultimate authority and responsibility for the release of information to the media[.]" (SUF ¶42.) Chief Burdess is the "boss" who should have made a statement and who allows Officer Winters to continue as a Newton Police Officer. Summary judgment must be granted.

C. **False-Light Invasion of Privacy – Counts V and VI**

Under Iowa law, the theory of false-light invasion of privacy is implicated when a person "gives publicity to a matter concerning another that places the other before the public in a false light...if (1) the false light...would be highly offensive to

reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bierman v. Weier*, 826 N.W.2d 436, 465 (Iowa 2013) (*quoting Kiesau*, 686 N.W.2d at 179).

This theory requires Tayvin to have "at the time of [his] statements, harbored any doubts whatsoever as to the veracity of the information in…[his] comments[.]" *Mills v. Iowa*, 924 F.Supp.2d 1016, 1035 (S.D. Iowa 2013). Tayvin first learned of Officer Winters committing domestic abuse from the woman he abused. (SUF ¶26.) She messaged Tayvin, informing him of the court order she had obtained. (SUF ¶26.) Tayvin, a layperson, construed the civil order with a conviction. (SUF ¶26.) While this was an error, it was neither knowing nor reckless:

> 'Reckless disregard' has been held to mean a 'high degree of awareness of probable falsity.' *Garrison v. Louisiana*, [379 U.S. 64, 74] (1964). It has also been said some suspicion as to the falsity of the statement must be shown to establish 'reckless disregard.' *Time, Inc. v. McLaney*, 406 F.2d 565, 573 (5th Cir.), *Cert. denied* [395 U.S. 922] (1969). 'Serious doubt' as to the truth of the statements published was required in the case of *St. Amant v. Thompson*, [390 U.S. 727, 731] (1968), where the court said:
>
> > '…There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'

*McCarney v. Des Moines Reg. & Trib. Co.*, 239 N.W.2d 152, 156 (Iowa 1976). Between the messages from the woman Officer Winters abused and the publicly available protective order, there was no reason for Tayvin to question the information.

Along these same lines, false-light invasion of privacy "applies only to publicity given to matters concerning the private, as distinguished from the public, life of an

individual and '(t)here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." *Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977). This includes "publicizing matters" contained in court filings, such as that resulting in the issuance of a protective order for relief from domestic abuse against Officer Winters. *Id.*

The publicity concerning Lt. Wing relates to his public conduct as a high-ranking police officer. *Compare McCarney*, 239 N.W.2d at 153 (police officer ranked as captain at time of alleged defamation considered a public official); *to Kiesau*, 686 N.W.2d at 178 (low ranking deputy "who does not have substantial responsibility over the conduct of governmental affairs is not a public official."). His position is second in the command structure, he is one of four officers of this rank, responsible for ensuring professional standards, and involved in the process of setting department policy and staffing levels, amongst other duties. (SUF ¶43.) Even if considered the "boss" who needed to make a statement, this would not involve Lt. Wing's private life, but his public duty. And given how Tayvin came to comment initially and the clarification he made as to the civil nature of the case against Officer Winters, there is no support for the idea he did so with actual malice, which Lt. Wing must establish. *Anderson v. Low Rent Housing Commission of Muscatine*, 304 N.W.2d 239, 249 (Iowa 1981) (*citing Time, Inc. v. Hill*, 385 U.S. 374, 387-91 (1967)). (SUF ¶8, ¶26.)

These claims further fail given the substantial truth of the statements as discussed above. Substantial truth applies to claims of false light invasion in the same way it does to defamation. *Gannon v. Halferty*, No. 18-2030, 2020 WL 1879690, *5

(Iowa Ct. App. 2020) (*citing Wilson v. IBP, Inc.*, 558 N.W.2d 132, 140 (Iowa 1996)). *See also Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F.Supp.2d 924 (S.D. Iowa 2011) (applying substantial truth to defamation and false light claims). As Tayvin's statements were substantially true, there is no liability. Summary judgment must be granted.

### Conclusion

The evidence establishes that Tayvin was substantially correct when he stated Officer Winters is a domestic abuser. Officer Winters has chosen to plead the Fifth rather than respond. Truth is the ultimate defense on this issue. Tayvin's insulting comments toward Officer Winters were just that: insults, protected as rhetorical hyperbole. Lt. Wing is not Officer Winters' "boss" to whom Tayvin wanted a statement, and even if so construed, Lt. Wing knew of the abuse. Summary judgment must be granted as to all remaining counterclaims.

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY: /s/ *Adam C. Witosky*

Matthew M. Boles     AT0001037
Adam C. Witosky     AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Facsimile: (515) 243-3696
Email:     mboles@gbswlaw.com
             awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on December 14, 2023. Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

*/s/ Adam C. Witosky*