IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, et al.,<br>    Defendants. | CASE NO. 4:23-cv-00044<br><br>PLAINTIFF/COUNTERCLAIM DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS SUPPORTING MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS<br><br>[REDACTED PER R.DOC.43] |
| NATHAN WINTERS AND CHRISTOPHER WING,<br>    Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>    Counterclaim Defendant. | |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Statement of Undisputed Material Facts states:

1. On August 28, 2022, Newton Police Officer Nathan Winters and Lt. Christopher Wing stopped Tayvin Galanakis for using high beams in town and failing to dim them. (Appx. 4-5 [¶11-15], 10 [¶11-15], 79 [10:2-11], 81 [19:8-14].)

2. Officer Winters conducted field tests for intoxication on Tayvin in the rain, at the end of which Tayvin took a preliminary breath test which revealed a 0.00 blood alcohol content. (Appx. 6 [¶33], 11 [¶33], 102 [Video 05:42-16:20].)

3. Following the PBT, Officer Winters changed his allegations from alcohol intoxication to marijuana. (Appx. 102 [Video 15:59-16:20].)

4.      ████████████████████████████████
(Appx. 81 [18:1-5].)

5.      Officer Andrew Shinkle, Newton Police Departments sole Drug Recognition Expert, subsequently determined Tayvin was not intoxicated, resulting in Tayvin being released without charges. (Appx. 7-8 [¶45-49], 12 [¶45-49].)

6.      ████████████████████████████████
████████████████████████████ (Appx. 81 [19:8-15].)

7.      Tayvin made the allegedly defamatory statements on his social media. (Appx. 14 [¶12(a)-(e)], 16 [¶35(a)], 18 [¶12(a)-(e)], 20 [¶35(a)].)

8.      Tayvin subsequently publicly clarified, "[a]lthough the officer may not have been convicted nor any charges filed, he did consent to have a civil no-contact/protective order placed on him by a former girlfriend … *for* domestic abuse. The order has been modified to allow him to use a gun while at work." (Appx. 15 [¶20], 19 [¶20].)

9.      Between April 2020 and July 2021, Newton Police Officer Nathan Winters physically abused Courtney Van Der Hart, his then-girlfriend. (Appx. 21-22 [¶4-12], 34-40.)

10.     In April 2020, Officer Winters was sitting in his patrol car on duty when she leaned in to give him a kiss goodnight. He elbowed her in the chest so hard it pushed her backward into her car and left a bruise on her chest. Following this, they communicated via SnapChat and text message about him pushing her, which he admitted to doing. (Appx. 22 [¶11], 36.)

11.     In July 2020, while at his mother's house where he lived, Officer Winters refused to let her leave the bedroom. When she attempted to, he lifted her up, slammed her onto his bed, held her down by the wrists, and told her she could leave when he said she could leave. (Appx. 22 [¶12], 38.)

12.     Throughout the summer of 2020, Officer Winters would regularly drive past her house and other places she went. He would park down the road from her house, sitting in his car with the lights off. (Appx. 22 [¶10], 38.)

13.     In May 2021, while at a birthday party for one of her co-workers, she was walking behind another co-worker as they were all leaving for dinner when Officer Winters grabbed her wrist, pulled her back, and told her she wasn't allowed to be that close to the co-worker. (Appx. 22 [¶9].)

14.     In June 2021, during an argument at her home in her bedroom, Officer Winters blocked the door as she tried to leave while her kids were on the other side in the living room. (Appx. 21 [¶7], 38.)

15.     In June 2021, Officer Winters was giving her a shoulder rub while she lay on the bed. He put his hand on the back of her neck, squeezed slightly, and said, "You realize if I squeezed right now it would kill you." (Appx. 22 [¶8].)

16.     In July 2021, she was holding and looking at Officer Winters' cell phone, which he allowed her to do. When she started to walk while reading a message, he pushed her onto the bed, held her down, and grabbed and twisted her wrist until she dropped the phone. (Appx. 21 [¶6], 36.)

17.     In July 2021, Officer Winters' threatened to kill her if she cheated on

him, saying he would need three bullets, one for her, one for the "new" guy, and one for himself. (Appx. 21 [¶5], 35-36.)

18. ███████████████████████████████████████████████ ███████████████████████████████████████ (Appx. ███████████████████████████████████████ ██████.)

19. Ms. Van Der Hart filed a Petition for Relief from Domestic Abuse in August 2021. (Appx. 34-40.)

20. A Temporary Protective Order was issued. (Appx. 41-44.)

21. Officer Winters consented to the entry of a Protective Order against him protecting Ms. Van Der Hart. (Appx. 45-47, ██████████.)

22. Language was included in the Protective Order to permit Officer Winters to continue working: "Nothing in this Order Prohibits the Respondent from conducting official police business." (Appx. 46.)

23. Absent this language, Officer Winters would be prohibited from carrying a firearm: "WARNINGS TO RESPONDENT: …Federal and state laws provide penalties for possessing, transporting, shipping, or receiving any firearm or ammunition." (Appx. 45.)

24. A modified Protective Order was entered twelve days later specifying when Officer Winters could call dispatch and enter the building when Ms. Van Der Hart was on duty. (Appx. 48-50.)

25. Officer Winters consented to the extension of the Protective Order until

February 22, 2024. (Appx. 51-53, ▬▬▬.)

26. Ms. Van Der Hart contacted Tayvin and told him Officer Winters had abused her and directed him to her civil action seeking the Protective Order, which he conflated with a conviction. (Appx. 63-66, 73-75 [67:18-71:12, 72:11-74:24].)

27. Tayvin's statements about Officer Winters' physical and mental fitness were insults regarding the stop of Tayvin and the performance of field testing. (Appx. 67-70, 76 [82:3-83:23].)

28. Officer Winters admits he arrested Tayvin after learning he had 0.00 blood alcohol content with Tayvin being ultimately released when Newton's own DRE officer determined Tayvin showed no signs of intoxication. (Appx. 6 [¶33], 7-8 [¶46-49], 11 [¶33], 12 [¶46-49].)

29. After Tayvin's release, Lt. Wing questioned Officer Winters' competence to perform stops and intoxication testing. (Appx. 54-56.)

30. Lt. Wing also admitted when Officer Winters accused Tayvin of having used marijuana after the preliminary breath test came back 0.00, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired." (Appx. 55, ▬▬▬.)

31. Lt. Wing admits that when he spoke with Officer Shinkle, the Drug Recognition Expert for the Newton Police Department, he was told Tayvin was the *third individual that shift* whom Officer Winters had requested Officer Shinkle examine. (Appx. 56, ▬▬▬▬▬.)

32. For the first two, Officer Shinkle declined to perform testing after

looking at and speaking with the individuals. (Appx. 56, ████████████ ████.)

33. This revelation caused Lt. Wing to state: "This worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him. I'm afraid this could happen again…" (Appx. 56, ████████.)

34. ████████████████████████████████████████████████████ ████████████████ (Appx. ████████████.)

35. After Tayvin had been cleared by Officer Shinkle, Officer Winters wanted to continue bringing charges against him. (Appx. 56, ████████████.)

36. ████████████████████████████████████████████████████ ████████████████████████████████████████████████ (Appx. █ ████████.)

37. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ (Appx. ████████.)

38. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Appx. ████████.)

39. ████████████████████████████████████████ (Appx. ████████].)

40. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

████████████████████████████████████████ (Appx. ████

████████████.)

41. Only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (Appx. 62, ████████.)

42. Chief Burdess bears "ultimate authority and responsibility for the release of information to the media[.]" (Appx. 61.)

43. Lieutenants within the Newton Police Department are second in the command structure, with only four officers of this rank, responsible for ensuring professional standards and involved in the process of setting department policy and staffing levels, amongst other duties. (Appx. 57-60, ████████████████.)

44. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████ (Appx. ████████
████████.)

                              **GRIBBLE, BOLES, STEWART & WITOSKY LAW**

                              BY: */s/ Adam C. Witosky*
                              Matthew M. Boles        AT0001037
                              Adam C. Witosky        AT0010436
                              2015 Grand Avenue, Suite 200
                              Des Moines, Iowa 50312
                              Telephone: (515) 235-0551
                              Facsimile: (515) 243-3696
                              Email:    mboles@gbswlaw.com

awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on December 14, 2023. Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

/s/ Adam C. Witosky