IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **TAYVIN GALANAKIS,**<br>    Plaintiff,<br><br>v.<br><br>**CITY OF NEWTON, IOWA, et al.,**<br>    Defendants. | CASE NO. 4:23-cv-00044<br><br><br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>*FILED UNDER SEAL* |
| **NATHAN WINTERS AND CHRISTOPHER WING,**<br>    Counterclaim Plaintiffs,<br><br>v.<br><br>**TAYVIN GALANAKIS,**<br>    Counterclaim Defendant. | |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Statement of Additional Material Facts states:

1. Tayvin Galanakis was released without charges after having been arrested by Officer Nathan Winters and Lt. Christopher Wing for operating while intoxicated when Officer Andrew Shinkle, the Newton Police Department's Drug Recognition Expert, determined there were no indications of intoxication. (Pltf.App. 4, 8, 11.)

2. As Tayvin looked for the documents Officer Winters' requested, he answered six questions from Officer Winters in about 55 seconds: 1) if it was his car (it was); 2) where he was going (home, giving its address); 3) whether he was new to

1

town (he was not); 4) why he had out of county plates (car was his grandfather's who lived in Greenfield); 5) where he was coming from (a friend's house); and 6) whether he had anything to drink (he had not). (Def.App. 6 [14:24-15:24][1].)

3. Tayvin responded clearly to each question as he actively looked for and reviewed documents. (Def.App. 6 [14:24-15:24].)

4. Tayvin looked for and reviewed documents in the dark at approximately 12:15 p.m., with the only being Officer Winters' flashlight. (Def.App. 6 [14:24-15:24].)

5. Tayvin did not have his contacts in. (Pltf.App. 17 [30:11-18].)

6. This was one of Tayvin's first times being stopped and he was unsure where the documents were. (Pltf.App. 15 [24:1-6].)

7. Believing he had a physical copy, Tayvin looked in the glove box for an insurance card, finding an expired physical copy on a white card. (Def.App. 6 [16:35-16:56].)

8. When he could not find a current physical copy, Tayvin produced the insurance card on his phone in approximately sixteen seconds. (Def.App. 6 [16:57-17:18].)

9. Tayvin did all this while trying not to make any sudden movements. (Pltf.App. 16 [26:19-27:17].)

10. Tayvin denied having consumed alcohol that night. (Def.App. 6 [15:17-15:20].)

---

[1] Def.App. 6 is Officer Winters' body camera video as submitted by Defendants with the time reference being to the video's top-right timestamp.

11. Tayvin did not have bloodshot and watery eyes. (Def. Appx. 6 [01:11-01:35, 02:04-02:07, 03:44-03:46, 10:00-12:11, 17:29-18:04, 22:10-22:14]; Pltf.App. 16 [28:6-17].)

12. Officer Winters had Tayvin take his gum out before exiting the vehicle because he had decided to field test Tayvin and needed his mouth empty for at least fifteen minutes to perform an accurate preliminary breath test. Def.App. 6 [17:42-17:47, 33:39-33:45], 14; Pltf.App. 77.)

13. Tayvin fully cooperated, was responsive to directions, and walked without impairment to the police vehicle. (Def.App. 6 [17:27-18:12].)

14. The only cognitive impairment Officer Winters observed in Tayvin was the finding and presentation of his registration and insurance documents, including after field testing. (Pltf.App. 22 [17:9-25].)

15. Lt. Wing was present at Tayvin's vehicle and observed the entire interaction between Officer Winters and Tayvin through opening the door for Tayvin to get in the police vehicle. (Pltf.App. 78 [14:00-18:05][2].)

16. While in the police vehicle, Tayvin spoke clearly and responsively to Officer Winters. (Def.App. 6 [18:30-19:25].)

17. In response to Officer Winters' questioning, Tayvin twice stated he had not consumed alcohol that night. (Def.App. 6 [19:26-19:35].)

18. Lt. Wing sat in the back of the police vehicle and observed the entire

---

[2] Pltf.App. 78 is Lt. Wing's body camera video as submitted on USB with the time reference being to the video's top-right timestamp.

interaction between Officer Winters and Tayvin in that vehicle. (Pltf.App. 78 [18:06-21:55].)

19. The field testing did not reveal any mental or physical impairment, but clues from a failure to follow instructions. (Pltf.App. 48-49 [13:21-14:6], 50 [18:13-19:3], 63, 67, 69.)

20. Officer Winters did not inquire into the degree of Tayvin's ankle injury before performing the field testing which could impact the testing. (Dep.App. 6 [26:13-26:26].)

21. Tayvin and Officer Winters were more interested in bickering than listening, with Officer Winters counseled for his poor communication during this stop. (Def.App. 6 [26:26-29:50]; Pltf.App. 22 [19:8-20], 28 [18:13-16], 33-35, 44-45.)

22. When given a preliminary breath test, Tayvin blew a 0.00 blood alcohol content. (Pltf.App. 20 [11:21-23].)

23. Following field testing there was no indication Tayvin was under the influence of alcohol. (Pltf.App. 20-21 [12:25-13:6].)

24. Officer Wing observed all the field testing, including the PBT. (Def.App. 14.)

25. Officer Shinkle, the Drug Recognition Expert who ultimately cleared Tayvin, did not smell alcohol during his testing. (Pltf.App. 36-42.)

26. Officer Winters is not qualified to determine intoxication by controlled substances and cannot distinguish the smell of marijuana, but admits it does not smell like alcohol. (Pltf.App. 21 [15:6-21], 22 [18:1-17].)

27. Officer Wing is one of Officer Winters' supervising officers, including to ensure proper testing is being performed in OWI traffic stops. (Pltf.App. 27 [15:17-16:1], 29 [23:19-24:23].)

28. Despite being present through the entire encounter, Officer Wing made no effort to ensure Tayvin's detention for field testing was proper, no effort to ensure Officer Winters properly conducted the field testing, or any assessment of whether Tayvin displayed signs of intoxication, despite a responsibility to do so. (Def.App. 14; Pltf.App. 27 [15:17-16:1], 29 [23:19-24:23].)

29. Lt. Wing also admitted when Officer Winters accused Tayvin of having used marijuana after the preliminary breath test came back 0.00, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired." (Pltf.App. 30 [27:1-14], 44.)

30. Lt. Wing admits that when he spoke with Officer Shinkle, he was told Tayvin was the *third individual that shift* whom Officer Winters had requested Officer Shinkle examine. (Pltf.App. 25 [8:8-15], 26 [9:6-9], 30 [25:18-24], 45.)

31. For the first two, Officer Shinkle declined to perform testing after looking at and speaking with the individuals. (Pltf.App. 28 [19:21-20:9], 30 [25:24-26:1], 45.)

32. This revelation caused Lt. Wing to state: "This worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him. I'm afraid this could happen again…" (Pltf.App. 30 [26:3-5], 45.)

33. It is known that Officer Winters frequently requests Officer Shinkle to

perform testing. (Pltf.App. 28 [19:10-12].)

34. After Tayvin had been cleared by Officer Shinkle, Officer Winters wanted to continue bringing charges against him. (Pltf.App. 21 [15:22-16:18], 45.)

35. Only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (Pltf.App. 27 [14:9-15], 75.)

36. Lieutenants within the Newton Police Department are second in the command structure, with only four officers of this rank, responsible for ensuring professional standards and involved in the process of setting department policy and staffing levels, amongst other duties. (Pltf.App. 25 [7:17-21], 27 [14:1-15], 71-74.)

37. Chief Burdess never discussed Lt. Wing's concerns about Officer Winters competency to make an OWI stop with Lt. Wing, and has no idea if Lt. Wing talked to Officer Winters. (Pltf.App. 30 [25:6-20], 31 [27:7-14].)

                          **GRIBBLE, BOLES, STEWART & WITOSKY LAW**

                          BY: /s/ *Adam C. Witosky*
                                Matthew M. Boles        AT0001037
                                Adam C. Witosky        AT0010436
                                2015 Grand Avenue, Suite 200
                                Des Moines, Iowa 50312
                                Telephone: (515) 235-0551
                                Facsimile: (515) 243-3696
                                Email:    mboles@gbswlaw.com
                                                 awitosky@gbswlaw.com
                                **ATTORNEYS FOR PLAINTIFF**

**PROOF OF SERVICE**

   The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on January 10, 2024.  Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

   Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

            */s/ Tami Fairchild*