## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **TAYVIN GALANAKIS,**<br>        Plaintiff,<br><br>v.<br><br>**CITY OF NEWTON, IOWA, et al.,**<br>        Defendants. | **CASE NO. 4:23-cv-00044**<br><br><br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT'S BRIEF RESISTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>***FILED UNDER SEAL*** |
| **NATHAN WINTERS AND CHRISTOPHER WING,**<br>        Counterclaim Plaintiffs,<br><br>v.<br><br>**TAYVIN GALANAKIS,**<br>        Counterclaim Defendant. | |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Brief Resisting Defendants' Motion for Summary Judgment states:

### TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 2

II. STANDARD OF REVIEW............................................................... 3

III. ARGUMENTS ................................................................................ 3

    A. Unconstitutional Seizure Under the Fourth Amendment ................ 3

        1. *Tayvin was Unconstitutionally Seized* ........................................... 3

        2. *No Entitlement to Federal Qualified Immunity* ........................... 8

            a. Clearly established law............................................................. 8

        b.    **No arguable reasonable suspicion/probable cause** ............ 8

        c.    **Qualified immunity doctrine must be overturned** ............. 9

    3.    *Monell Liability*.................................................................. 14

**B.**    **State Law Claims** ................................................................ 16

    1.    *Unconstitutional Seizure Under Art. I, §8* .................................. 16

        a.    **Negligence standard for Art. I, §8 violations** ..................... 16

        b.    **Federal standard**.................................................... 21

        c.    *Burnett*'s retroactive application deprives Tayvin of a vested cause of action in violation of due process ........ 22

    2.    *False Arrest* ................................................................. 28

    3.    *No Entitlement to State Qualified Immunity* ............................. 31

    4.    *Municipal Liability* ......................................................... 31

        a.    **Negligent training and supervision** .................................. 31

        b.    **Respondeat superior** ................................................. 33

**IV.**  CONCLUSION ..................................................................... 33

## I.   INTRODUCTION

Officer Nathan Winters and Lieutenant Cristopher Wing of the Newton Police Department stopped Tayvin Galanakis' vehicle for having his high beams on. Officer Winters, without reasonable suspicion and with Lt. Wing watching, pursued an investigatory stop for operating while intoxicated. When Tayvin's preliminary breath test returned a 0.00 blood alcohol, Officer Winters accused him of using marijuana, again with no basis. Lt. Wing stood silent. After Tayvin was cleared, Officer Winters continued to ask for him to be charged. The actions of Officer Winters and Lt. Wing

violated Tayvin's rights under the Fourth Amendment and Iowa law. Newton Police Chief Rob Burdess and the City of Newton are liable, directly and vicariously, for their part in the violations. Summary judgment must be denied.

## II.   STANDARD OF REVIEW

Summary judgment is granted if movants show there is no genuine dispute on material facts entitling them to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if evidence allows a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome. *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012). Tayvin's evidence is believed with all justifiable inferences drawn in his favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). The Court does not weigh evidence or determine truth. *Id.* at 656. Movant has the burden to show the absence of a genuine issue of material fact. *Carter v. Chrysler Corp.*, 173 F.3d 693, 699 (8th Cir. 1999). Summary judgment is appropriate only if there is no controversy. *Butler v. MFA Life Ins. Co.*, 591 F.2d 448, 451 (8th Cir. 1979).

## III.   ARGUMENTS

## A.   Unconstitutional Seizure Under the Fourth Amendment

### 1.   *Tayvin was Unconstitutionally Seized*

A Fourth Amendment seizure occurs if the circumstances of the incident would make a reasonable person believe he was not free to leave. *Davis v. Dawson*, 33 F.4th 993, 997 (8th Cir. 2022) (*quoting U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980)). A traffic stop is a Fourth Amendment seizure that "must be judged for its reasonableness in light of the circumstances." *Whren v. U.S.*, 517 U.S. 806, 809

(1996). Officer Winters and Lt. Wing seized Tayvin first for using high beams and then to investigate OWI. (Defs. Statement Undisputed Material Fact [DSF] ¶5; Pltf. Response to Statement of Fact [PRSF] ¶5.)

Tayvin does not dispute the stop's initial validity. Yet "[a] seizure justified only by a police-observed traffic violation…'become[s] unlawful if it is prolonged beyond the time reasonably required to complete'…issuing a ticket." *Rodriguez v. U.S.*, 575 U.S. 348, 350-51 (2015) (*quoting Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Authority for the seizure ends when this reasonably should have been completed. *Id.* It may be extended only if information leads to reasonable suspicion of another crime. *U.S. v. Marin*, 988 F.3d 1034, 1042 (8th Cir. 2021).

The question is whether detention for the OWI investigation was reasonable. *Davis*, 33 F.4th at 998. Even brief detention requires an officer "'to articulate something more than an inchoate and unparticularized suspicion or hunch.'" *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992) (*quoting Alabama v. White*, 496 U.S. 325, 329 (1990)). Investigative stops require "reasonable suspicion, based on objective facts, that the *individual* is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51 (1979) (emphasis added). Absent a "basis for suspecting…misconduct, the balance between the public interest and…right to personal security and privacy tilts in favor of freedom from police interference." *Id.* at 52.

To detain Tayvin beyond the issuance of a traffic ticket, Officer Winters and Lt. Wing had to have an objectively reasonable suspicion that Tayvin was intoxicated. He did not. While Officer Winters claimed Tayvin smelled of alcohol, Tayvin did not

as he had not been drinking, had a 0.00 BAC when breath tested, and Officer Shinkle, the Drug Recognition Expert who ultimately cleared Tayvin, did not smell alcohol during his testing. (Pltf. Statement of Additional Facts [PSAF] ¶1, 10, 17, 22.) *See Gaston v. Webster*, No. 5:11-cv-00094, 2012 WL 94677, *3 (E.D. Ark. Jan. 12, 2012) (evidence contradicting claimed odor of alcohol precluded summary judgment).

Tayvin did not have bloodshot eyes. (PSAF ¶11.) His speech was not slurred. (PSAF ¶2, 15.) He cooperated with Officer Winters. (PSAF ¶2-4, 8, 13, 16.)  When asked to exit the vehicle, he was steady on his feet. (PSAF ¶13.) Each of these contradicts the suspicion of intoxication. *See State v. Morgan*, 877 N.W.2d 133, 137 (Iowa Ct. App. 2016) (*quoting* 61A C.J.S. *Motor Vehicles* §1518 (2016)) ("'[C]ommon indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech and an uncooperative attitude.'") Reasonable suspicion rests on the claim that Tayvin showed impairment in finding documents in a dark car late at night without his contacts. (PSAF ¶2-9.) This alone cannot support an objectively reasonable suspicion. *State v. Stout*, 74 N.W.2d 208, 211 (Iowa 1956) (under the influence means losing "control in any manner or to any extent of his reason or faculties, or the control or motion of his person…, passions are visibly excited, or his judgment impaired[.]")

Iowa law has a clear rule that a single, brief incident "absent more, is not enough to raise a reasonable suspicion" of intoxication. *State v. Gomez-Torres*, No. 23-0521, 2023 WL 8070023, *3 (Iowa Ct. App. Nov. 21, 2023) (*citing State v. Tague*, 676 N.W.2d 197, 205-06 (Iowa 2004)). *See also State v. Murphy* No. 21-0938, 2022 WL 1100904, *4 (Iowa Ct. App. Apr. 13, 2022) (*Tague*'s central point is "there must be

more than a single instance of poor driving…to distinguish between everyday drivers…and those who are reasonably suspected to be driving while impaired."); *State v. Lobo*, No. 17-1768, 2019 WL 762192, *7 (Iowa Ct. App. Feb. 20, 2019) (Tabor, P.J., dissenting) (collecting cases that found no reasonable suspicion for a traffic stop).

Ultimately, this is a question of credibility that is undecided and which this Court cannot decide. *See State v. Carlson*, 276 N.W. 770, 772 (Iowa 1937) (conflicting evidence makes question of intoxication "largely a question of the credibility of the witnesses"); *State v. Tucker*, No. 16-1241, 2017 WL 4049455, *6 (Iowa Ct. App. Sept. 13, 2017) ("The question of whether Turner showed signs of intoxication in his movements, speech, and conduct during the traffic stop is largely one of credibility.") As there was no reasonable suspicion to extend the stop, there was no basis for continuing to detain Tayvin for field testing.

Should the field testing be considered, it is disputed the testing established probable cause to arrest him. (PSAF ¶19, 21-23, 26, 29-34.) Probable cause to believe Tayvin was intoxicated was required to arrest him. *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). There was no indication of impairment due to intoxication in Tayvin's tests. (PSAF ¶23.) He had no blood alcohol content. (PSAF ¶22.) The clues from the testing arose from a failure to follow instructions, not impairment. (PSAF ¶19.) Tayvin and Officer Winters were both more interested in bickering than listening, with Officer Winters counseled for his poor communication during this stop. (PSAF ¶21.) Officer Winters had no basis to suspect marijuana, being unqualified and having no ability to distinguish the smell of marijuana, but

admitting it does not smell like alcohol. (PSAF ¶26.) Tayvin was released without charges as there were no indications of intoxication. (PSAF ¶1.)

Officer Winters' conduct during the stop and seizure of Tayvin led Lt. Wing to question Officer Winters' competence to even assess intoxication. (PSAF ¶29-34.) This question is heightened by Officer Winters' interest in charging Tayvin with OWI after being told he was not intoxicated. (PSAF ¶34.) Whether Officer Winters observed anything giving rise to probable cause is disputed requiring a credibility assessment to decide. *See Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008) (when facts on which suspicion is based may reasonably appear innocent, explanation on how "officer's training endowed seemingly innocent facts with criminal significance."); *Kent v. Katz*, 312 F.3d 568, 577 (2nd Cir. 2002) ("A factfinder… would not be required to credit Katz's assertions as to his observations….").

Lt. Wing was present and interacting with Tayvin throughout. (PSAF ¶15, 18, 24, 28.) When an officer participates in an arrest, they are an arresting officer liable for violating the constitution or common law. *See Seymour*, 519 F.3d at 799 (both officers involved in questioning and detaining individual violated constitution); *Davis v. Dawson*, 33 F.4th 993, 998 (8th Cir. 2022) (three officers detaining family in two cars liable). Whether Lt. Wing subjectively decided to arrest Tayvin is irrelevant. *U.S. v. Pratt*, 355 F.3d 1119, 1124 (8th Cir. 2004) ("An officer's uncommunicated subjective intent is irrelevant to…whether an individual has been seized.").

### 2. *No Entitlement to Qualified Immunity*

#### a. **Clearly established law**

Law is clearly established if an officer "knew or reasonably should have known the action he took…would violate the constitutional rights…affected." *Wood v. Strickland*, 420 U.S. 308, 322 (1975). If an objectively reasonable officer could anticipate his actions are unconstitutional under the circumstances, the law is clearly established. *O'Conner v. Donaldson*, 422 U.S. 563, 577 (1975). The focus is on whether the officer had fair notice. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right" there is fair notice. *Id*. at 199.

Absent reasonable suspicion of intoxication, it is clearly established that continuing to seize Tayvin for field testing violated the Fourth Amendment. *Rodriguez*, 575 U.S. at 350-51. Absent probable cause after field testing, it is clearly established that arresting Tayvin violated the Fourth Amendment. *Lambert*, 187 F.3d at 935. As argued above, there is at least a factual dispute either existed.

#### b. **No arguable reasonable suspicion/probable cause**

Arguable probable cause is "where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013). Arguable reasonable suspicion is when "a reasonable officer could have believed that he had a reasonable suspicion." *De La Rosa v. White*, 852 F.3d 740, 745-46 (8th Cir. 2017). Reasonableness is assessed objectively. *Id*. at 747. Disputed facts requiring credibility determinations

8

cannot be established either. *Shannon v. Koehler*, 673 F.Supp.2d 758, 779-80 (N.D. Iowa 2009) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

Minor difficulty in providing documents alone cannot support arguable reasonable suspicion justifying extending the stop. And if this Court gets to probable cause, the lack of physical impairment, the combative approach taken by Officer Winters, and the questions as to his ability to identify intoxicated individuals preclude even arguable probable cause.

### c.   Qualified immunity doctrine must be overturned

There is a preliminary question inherent in the assertion of qualified immunity: is qualified immunity a doctrine that should continue? *See Ziglar v. Abbasi*, 137 S.Ct. 4843, 4872 (2017) (Thomas, J., concurrence) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence."); *Kisela v. Hughes*, 138 S.Ct. 1148, 1162 (2018) (Sotomayor, J., dissent) ("one-sided approach to qualified immunity transforms the doctrine into an absolute shield for law enforcement officers, gutting the deterrent effect of the Fourth Amendment.")

Section 1983 creates a species of tort liability in unqualified language without mentioning immunities. *Owen v. City of Indep., Mo.*, 445 U.S. 622, 636 (1980). It is "an important means of vindicating constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 809 (1982). Should government actors be free from liability "a suit under the Constitution could provide no redress…nor would it in any degree deter… constitutional wrongs." *Butz v. Economou*, 438 U.S. 478, 50d (1978). *Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 410 (1971)

(Harlan, J., concurring) ("For people in Bivens' shoes, it is damages or nothing.").

For decades "and continuing uninterrupted to this day, the Court has sedulously eviscerated the substance, procedures, and remedies essential to meaningful enforcement of…42 U.S.C. §1983." Harold S. Lewis, Jr., *Affirmative Distraction: Race Preference and Bias in the New South*, 9 J.S. LEGAL HIST. 1, 26 (2001). This is due to the expanded protections afforded under qualified immunity. *See* Avidan Y. Cover, *Reconstructing the Right Against Excessive Force*, 68 FLA. L. REV. 1773, 1785 (2016) (qualified immunity primary limitation on §1983).

Qualified immunity was created following "the defense of good faith and probable cause" found in common law and deemed "available" in §1983 actions. *Pierson v. Ray*, 386 U.S. 547, 557 (1967). The Court did so believing that protecting officers' reasonable conduct in legal gray areas was necessary. *Id.* at 555.

The language of qualified immunity then shifted to concerns about balance in civil rights litigation on the claim: "resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative." *Harlow*, 457 U.S. at 814. Balance was to be achieved through objective reasonableness and clearly established law. *Id.* at 818.

The law has shifted to protect officials above all: "Once, qualified immunity protected officers who acted in good faith. The doctrine now protects all officers, no matter how egregious their conduct, if the law they broke was not 'clearly established.'" *Jamison v. McClendon*, 476 F.Supp.3d 386, 404 (S.D. Miss. 2020). The ever-tightening specificity requirement has turned the once "qualified" immunity into

an increasingly pure "immunity from suit":

> …the Court began characterizing qualified immunity not as an affirmative defense, but as an immunity from suit. …To further its objective of facilitating prompt termination of qualified immunity claims…[i]t had to structure the doctrine in ways that would minimize or eliminate the importance of facts.

Alan K. Chen, *The Facts about Qualified Immunity*, 55 EMORY L.J. 229, 236 (2006).

Qualified immunity has continuously retreated from a "fair notice and apparent" approach toward requiring picture-perfect duplication: "It does not matter…'that we are morally outraged, or the fact that our collective conscience is shocked...[because it] does not mean necessarily that the officials should have realized that [the conduct] violated a constitutional right.'" *Jamison*, 476 F.Supp.3d 404-05 (*quoting Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994)). The pro-government tilt of qualified immunity undermines the premises from which it was conceived. The conclusion "qualified immunity 'is an immunity from suit rather than a defense to liability" is only justified by an interest in protecting officials. Joanna C. Schwartz, *How Qualified Immunity Fails*, 127 YALE L.J. 2, 18 (2017).

A decade of lost development in clearly established law must be accounted for. The qualified immunity test once had a "proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). A threshold question had to be answered: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. This was essential as "[t]he law might be deprived of this explanation were a court simply to skip ahead to the question" of clearly established law. *Id.*

And this is what happened when the Court retreated from *Saucier*. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). While resolving whether a right has been violated "is often beneficial," this benefit was seen as often not worth its "price." *Id*. at 236-37. This has led to a paradox:

> Plaintiffs must produce precedent even as fewer courts are producing precedent. Important constitutional questions go unanswered precisely because no one's answered them before. Courts then rely on that judicial silence to conclude there's no equivalent case on the books. No precedent = no clearly established law = no liability. An Escherian Stairwell. Heads government wins, tails plaintiff loses.

*Zadeh v. Robinson*, 928 F.3d 457, 479–80 (5th Cir. 2019) (Willett, J., concurring).

The impact is quantifiable:

> …Section 1983 plaintiffs also fare poorly compared to non-civil-rights plaintiffs. Pretrial judgment rates for plaintiffs are lower than in other classes of cases, pretrial dismissal rates are higher for other class of cases and have plaintiff trial win rates…lower than the rates for most classes of civil litigation. Constitutional tort cases have settlement rates well below the 70-80 percent rate in non-civil-rights cases. On appeal, plaintiffs in constitutional tort litigation who succeeded at trial suffer much higher reversal rates, over 50 percent, than defendants in constitutional tort cases who prevailed at trial, who suffer reversal in less than 20 percent of appeals by plaintiffs.

Theodore Eisenberg, *Four Decades of Federal Civil Rights Litigation*, 12 J. EMPIR. LEG. STUD. 4, 7 (2015). This shows "an unflinching willingness" to find immunity. *Kisela*, 138 S.Ct. at 1162 (Sotomayor, J., dissenting). *See also* William Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. 45, 87 (2018) ("The Court is not just maintaining the doctrine…as a matter of precedent, but doubling down on it…") This "one-sided approach to qualified immunity transforms the doctrine into an absolute shield for law enforcement officers, gutting the deterrent effect" the Constitution

provides. *Kisela*, 138 S.Ct. at 1162 (Sotomayor, J., dissenting).

Qualified immunity lacks a historical basis. *See Little v. Barreme*, 6 U.S. 170, 170 (1804) (an officer obeying instructions, "acts at his peril if those instructions are not strictly warranted by law he is answerable in damages to any person injured by their execution."); *Bates v. Clark*, 95 U.S. 204, 209 (1877) (good reason and good faith for constitutional violation "is no defence to the action."); *Myers v. Anderson*, 238 U.S. 368, 378 (1915) (liability not precluded by good-faith belief acts were constitutional). The Supreme Court understands the doctrine is not justified on its original basis. *See Anderson v. Creighton*, 483 U.S. 635, 645 (1987) (*Harlow* "reformulated qualified immunity along principles not at all embodied in the common law….").

Modern justifications don't support it. Officers rarely pay for their violations:

> Some jurisdictions must indemnify officers for actions taken in the course and scope of their employment as a matter of law. Some jurisdictions can indemnify officers, but are not required to do so. And some jurisdictions prohibit indemnification of officers under any circumstance. Yet these policy variations do not lead to variation in outcome--regardless of the underlying policies, officers virtually never pay.

Joanna C. Schwartz, *The Case Against Qualified Immunity*, 93 NOTRE DAME L. REV. 1797, 1806 (2018).

Iowa protects officials in this way. Iowa Code §670.8(1) (duty to defend and indemnify officers for acts in scope of employment except for punitive damages); Iowa Code §670.8(2) (duty to defend and indemnify includes cases under 42 U.S.C. §1983). Such indemnity has been grounds for denying immunity in other circumstances. *See Richardson v. McKnight*, 521 U.S. 399, 411 (1997) (denying private prison guards

qualified immunity as insurance coverage increases the likelihood of indemnification and reduces fear of unwarranted liability); *Owen*, 445 U.S. at 654 (personal liability "not implicated when the damages award comes…from the public treasury.")

Avoidance of extended litigation fails to justify the doctrine, which "is utterly miserable" and "poorly designed at achieving its goal." Schwartz, 93 NOTRE DAME L. REV. at 1809. Few cases are resolved before discovery because qualified immunity rarely disposes of all claims. *Id*. Nor is there evidence that officers consider a lawsuit before acting. *Id*. at 1812-13. What evidence there is suggests: "If the burdens of discovery and trial do…chill officers' behavior, qualified immunity doctrine can do little in practice to counteract these effects." *Id*. at 1814.

The justifications for the doctrine have no practical or historical support. The harm inflicted on the ability to seek redress is real. Society is losing belief in the courts as an avenue for redress. Qualified immunity must be overturned to allow those harmed by state actors to obtain justice.

### 3. *Monell Liability*

Government officers may be personally liable for actions that deprive a plaintiff of his constitutional rights. *Bishop v. Tice*, 622 F.2d 349, 353-54 (8th Cir. 1980). This includes a supervisor's failure to train or supervise the actor causing the deprivation. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994). Inadequate training and supervision are a basis for liability if the failure amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference is established when evidence shows the supervisor had notice of the

inadequacy likely to result in a constitutional violation. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1998). As the U.S. Supreme Court has stated: "[I]t may happen that …the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent. *City of Canton*, 789 U.S. at 390.   Knowledge "need not be particularized[,]" only that the conditions gave rise to a substantial risk. *Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014).

Liability arises if the policymaker makes a deliberate choice resulting in a constitutional violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A single decision by a municipal policymaker making a deliberate choice to follow a course of action can create liability. *Id*. at 483. This includes a superior authorizing an unconstitutional act:

> Pursuant to standard office procedure, the Sheriff's Office referred this matter to the Prosecutor and then followed his instructions. …In ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983.

*Id*. at 485.

Lt. Wing is a policymaker for the Newton Police Department. (PSAF ¶27.) He had concerns about Officer Winters' competence in assessing intoxication. (PSAF ¶32.) The moment Officer Winters began asking about marijuana, Lt. Wing knew, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired." (PSAF ¶29.) Despite his concerns and having been present through the entire encounter, Officer Wing made no effort

to ensure Tayvin's detention for field testing was proper, no effort to ensure Officer Winters properly conducted the field testing, or any assessment of whether Tayvin displayed signs of intoxication, despite a responsibility to do so. (PSAF ¶28.)

## B.   State Law Claims

### 1.   *Unconstitutional Seizure Under Art. I, §8*

Tayvin has brought a claim for money damages under Art. I, §8 of the Iowa Constitution from his seizure by Officer Winters and Lt. Wing. It is acknowledged that the Iowa Supreme Court stated in *Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023) that such claims are no longer recognized. It is also acknowledged that the Iowa Court of Appeals stated in *Dishman v. State*, No. 22-1491, 2023 WL 8068563 (Iowa Ct. App. Nov. 21, 2023) that *Burnett* was retroactive to all claims. As Defendants have not raised this issue, this Court should treat this issue as waived and address Tayvin's claim on its merits. *See U.S. v. Greene*, 513 F.3d 904, 906 (8th Cir. 2008) (routinely declining to address arguments not raised in the opening brief).

#### a.   Negligence standard for Art. I, §8

"The Iowa Constitution affords individuals greater rights than does the United States Constitution." *Schmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018). Iowa courts have actively "...sought to develop an Iowa search and seizure jurisprudence that prevents arbitrary exercise of government power in a realistic way in today's world." *State v. Baldon*, 829 N.W.2d 785, 823 (Iowa 2013). This stems from the duty to independently interpret the Iowa Constitution. *State v. Jackson*, 878 N.W.2d 422, 442 (Iowa 2016). This is true despite these clauses having "similarly worded search and

seizure provisions, [and] does not mean the two regimes and the cases under them may be conflated." *State v. Ingram*, 914 N.W.2d 794, 799 (Iowa 2018).

For Art. I, §8: "Proof of negligence, i.e., lack of due care, was required for comparable claims at common law at the time of adoption of Iowa's Constitution." *Baldwin v. City of Estherville*, 915 N.W.2d 259, 280 (Iowa 2018). While other "constitutional claims…may have a higher mens rea…embedded within the constitutional provision itself[,]" negligence suffices for Art. I, §8. *Id.* at 281.

*Baldwin* recognizes negligence as the standard for search and seizure violations under Art. I, §8. *Id.* It first discussed "the exceptional circumstances" of the warrantless search conducted in *McClurg v. Brenton*, which was performed "in a loud and boisterous manner, and with little regard for the sensibilities of the plaintiff and his family" with one searcher admitting "he was a 'little enthused'" and another searching for "'beer in the cellar.'" *Id.* (*quoting McClurg*, 98 N.W. 881, 881-82 (1904)). If this was the case, the plaintiff "has suffered a wrong for which the law will afford him substantial remedy." *Id.* (*quoting McClurg*, 98 N.W. at 882).

*McClurg* goes further into the violation, recognizing, "The mere fact that a man is an officer…gives him no more right…to break in upon the privacy of a home and subject its occupants to the indignity of a search…without a legal warrant[.]" *McClurg*, 98 N.W. at 882. The elements for an Art. I, §8 violation were discussed in comparison to two common-law claims:

> …[T]his is not an action for malicious prosecution or malicious arrest, but for an alleged wrongful and unauthorized trespass upon plaintiff's home and property. In a case of the former kind, an honest belief in the guilt of the person…and the facts and circumstances on

> which such belief is founded, are ordinarily proper matters of
> inquiry; and such circumstances, if amounting to probable
> cause…will constitute a complete defense…. But in a case like the
> one at bar the doctrine or rule of probable cause has no application.

*Id*. at 882-83. For such a violation, motive and intent were relevant only in mitigation of exemplary damages considered only after a jury finding "the wrongful search was made[.]" *Id*. Then, "[i]n mitigation of such damages, only, evidence may be received…to show that the act was done in good faith and without malice." *Id*.

*Baldwin* also discussed the "egregious misconduct in connection with a search" in *Krehbiel v. Henkle*, where it was stated violation of Art. I, §8, "'*without reasonable ground therefor* gives the injured party a right of action[.]'" *Baldwin*, 915 N.W. at 275 (*quoting Krehbiel*, 121 N.W. 378, 379 (Iowa 1909)) (original emphasis). *Krehbiel* addressed not just a search, but also the "fil[ing] [of] an information before a justice of the peace" alleging theft, with the warrant issued based on such allegations. *Krehbiel*, 121 N.W. at 379. It was argued a directed verdict was required due to insufficient evidence "to sustain a finding of malice…or want of probable cause in suing out the writ[.]" *Id*. It was for the malicious prosecution claim, not the Art. I, §8 violation, that "evidence of malice and want of probable cause for the *prosecution* must be shown in order to sustain a recovery for damages[.]" *Id*. at 380. It is from the violation of Art. I, §8 through "unreasonable invasion…which gives the injured party a right of action for damages[.]" *Girard v. Anderson*, 257 N.W. 400, 403 (Iowa 1934)).

Following its discussion of what was necessary to find a *violation*, *Baldwin* rejected imposing strict *liability* for violations. *Baldwin*, 915 N.W.2d at 277. While a violation occurs from an unreasonable search or seizure, this was found to be

18

insufficient for imposing liability. *Id*. at 276. Art. I, §8 reasonableness is assessed considering "historical Iowa common law as appreciated by our framers[.]" *Baldwin*, 915 N.W.2d at 280. *See also State v. Ochoa*, 792 N.W.2d 260, 289 (Iowa 2010) (admonition against wrenching Art. I, §8 reasonableness "from its text and context"); Restatement (Second) of Torts §874A, cmt. f and j (constitutional torts ordinarily assimilate "the most similar common law tort" with liability standard "depend[ing] primarily upon construction of the" provision itself).

Art. I, §8 reasonableness is assessed as negligence with a search or seizure "without reasonable ground" being grounds for "right of action[.]" *Krehbiel*, 121 N.W. at 379-80. Whether a seizure was reasonable is assessed just as with anyone else as "the same principles of liability apply to officers and employees of municipalities as to any other tort defendants, except as expressly modified or limited." *Harryman v. Hayles*, 257 N.W.2d 631, 638 (Iowa 1977) *overruled on other grounds, Miller v. Boone County Hospital*, 394 N.W.2d 776 (1986). As police activity "is not normally performed by private individuals the question is whether a private individual doing what the government was doing would be liable for negligence." *Wagner v. State*, 952 N.W.2d 843, 854 (Iowa 2020) (*quoting Adams v. State*, 380 N.W.2d 716, 724 (Iowa 1986)).

*Baldwin* is clear that negligence is the mens rea needed to violate Art. I, §8, stating: "constitutional claims other than unlawful search and seizure may have a higher mens rea requirement… In other words, it may take more than negligence just to violate the Iowa Constitution." *Baldwin*, 915 N.W.2d at 281. It is here where *Baldwin*'s recognition that "the right to recover damages…does not need to be

congruent with the constitutional violation" is critical. *Id*. at 278.

"All due care" immunity is not directly concerned with if a seizure was reasonable, as is an element for the plaintiff. *Id*. at 275 (*quoting Krehbiel*, 121 N.W. at 380). If the plaintiff proves a negligent seizure violating Art. I, §8, the defendant then must show "they exercised all due care to conform to the requirements of the law." *Id*. at 279. The focus on "due care to conform" is distinct from negligence for the violation, as the authorities *Baldwin* cites on immunity establish. The first addressed "a claim against a justice of the peace and constable for wrongly taking away the plaintiff's oxen." *Id*. at 276 (*citing Hetfield v. Towsley*, 3 Greene 584, 585 (Iowa 1852)). While they "acted erroneously" in the taking, no liability arose "[u]nless they exceeded their jurisdiction, or acted corruptly, or without authority of law[.]" *Hetfield*, 3 Greene at 585. It was noted officers are "not liable in trespass for the erroneous exercise of official acts, unless he exceed his authority or act corruptly." *Baldwin*, 915 N.W.2d at 276 (*quoting Howe v. Mason*, 12 Iowa 202, 203 (1861)).

"All due care" immunity is intended to provide "straightforward 'protection for reasonable error.'" *Id*. at 281 (*quoting* John C. Jeffries Jr., *The Liability Rule for Constitutional Torts*, 99 VA. L. REV. 207, 260 (2013)). The question for liability is whether the *use* of the PIT was negligent. The question for immunity is whether Officer Eral was negligent in *deciding* to use the PIT. In this distinction, "the threshold of proof to *stop* an unconstitutional course of conduct [is] less than the proof required to *recover damages* for it." *Id*. at 278-79.

In applying Art. I, §8, reasonableness is assessed differently from the Fourth

Amendment. Art. I, §8 must be applied:

> …with due regards to the legitimate needs of law enforcement, but
> with a recognition that our constitutional limitations on searches and
> seizures…protect fundamental values of liberty and human dignity
> and are a bulwark against arbitrary governmental intrusions into
> the lives of citizens.

*State v. Pals*, 805 N.W.2d 767, 773 (Iowa 2011). This "potential for arbitrary
government action on the state's roads" has been a concern throughout Art. I, §8 cases
with "a common feature of demanding compliance with Iowa constitutional
commands in the traffic-stop context." *State v. Coleman*, 890 N.W.2d 284, 300 (Iowa
2017) (collecting cases). *See also State v. Gaskins*, 866 N.W.2d 1, 6 (Iowa 2015)
(warrantless vehicle search not justified by search incident to arrest); *State v. Taylor*,
830 N.W.2d 288, 294 (Iowa 2013) (mistake of law cannot justify a traffic stop).

A jury could find Officer Winters and Lt. Wing were negligent in seizing Tayvin
to perform field testing, and negligent in his arrest following the same. As discussed
above, the facts are disputed that there was no objective basis for reasonable
suspicion or probable cause, actual or arguable. Summary judgment must be denied.

**b.  Federal standard**

Should *Baldwin* be disregarded, and the federal standard applied, dismissal
was still erroneously granted. Even with the application of a federal test, it is not
applied to Art. I, §8 in the same manner, with the Iowa Supreme Court having
"repeatedly declined to follow the approach of the United States Supreme Court in its
interpretation of…an ever-shrinking Fourth Amendment." *Ingram*, 914 N.W.2d at
800. The standard's principles may be applied differently even without a substantive

distinction between constitutional provisions. *State v. Breuer*, 808 N.W.2d 195, 200 (Iowa 2012). It is the persuasiveness of the reasoning, considered against not just majority decisions, but concurring and dissenting opinions as well, which determines how a standard applies to the Iowa Constitution. *Gaskins*, 866 N.W.2d at 34 (Appel, J., concurring) (collecting cases).

Even when applied as discussed above, Officer Winters and Lt. Wing are not entitled to summary judgment as several material facts are in genuine dispute. Whether sufficient grounds existed to seize and arrest Tayvin is a question for the jury. Summary judgment must be denied.

### c. *Burnett*'s retroactive application deprives Tayvin of a vested cause of action in violation of due process

Over six years ago, the Iowa Supreme Court recognized damages claims under the Iowa Constitution, including from violations of Art. I, §8. *Godfrey v. State*, 898 N.W.2d 844, 862 (Iowa 2017). Nearly one year ago, it "decided to overrule *Godfrey* and to restore the law as it existed in this state before 2017." *Burnett*, 990 N.W.2d at 290. Meanwhile, Tayvin had accrued his claim. While *Burnett* overruled *Godfrey*, retroactive application deprives Tayvin of a vested action.

Plaintiff recognizes the recent Iowa Court of Appeals decision holding: "Iowa no longer recognizes *Godfrey* constitutional tort claims, whether on file before *Burnett* or not[.]" *Dishman*, 2023 WL 8068563 at *3. However, it is unclear if due process protection of vested causes of action was raised with the decision noting only that the appellee asserted "there remains a question whether *Burnett* applies retroactively. So, she argues, she is entitled to litigate the retroactivity question[.]" *Id*. at *2.

Under Iowa law, "the cause of action accrues when an aggrieved party has a right to institute and maintain a suit." *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 460 (Iowa 1989). *See also Nixon v. State*, 704 N.W.2d 643, 646 (Iowa 2005) (Iowa Tort Claims Act claims accrue when a plaintiff discovers or should have discovered the injury); *Connelly v. Paul Ruddy's Equipment Repair & Services Co.*, 200 N.W.2d 70, 72 (Mich. 1972) (tort action "accrues when all of the elements…have occurred and can be alleged in a proper complaint."). Once accrued, interest in the cause of action vests. *Thorp*, 446 N.W.2d at 461. Once vested, it cannot be taken: "'A law can be repealed…but the rights which have been acquired…while it was in force, do not thereby cease. It would be an…absolute injustice to abolish with the law all the effects which it had produced.'" *Lewis v. Pennsylvania R. Co.*, 69 A. 821, 823 (Penn. 1908) (*quoting* Sutherland on Statutory Construction, §164).

The vested right to an accrued cause of action precludes applying *Burnett* retroactively. Decisions overruling precedent "generally operate both retroactively and prospectively." *Matter of Estate of Weidman*, 476 N.W.2d 357, 361 (Iowa 1991). Yet retroactivity is not automatic: "Court's may hold…a particular overruling decision should in fairness have only prospective application." *Beeck v. S.R. Smith Co.*, 359 N.W.2d 482, 484 (Iowa 1984). This conforms with how "[a] new rule of constitutional law generally applies prospectively only." 20 Am. Jur. 2d Courts §147.

*Burnett* is not a case "in which the decision on retroactiveness-prospectiveness is made[.]" *Beeck*, 359 N.W.2d at 484. *Beeck* considered whether "our overruling decision in *Wietl v. Moes*, 311 N.W.2d 259 (Iowa 1981)]" recognizing a child's cause of

action for consortium "reaches back and governs" or if precedent controlled. *Id. Wietl*
overruled a prior decision and the claim proceeded in that litigation. *Wietl*, 311
N.W.2d at 269-270. The application of a new precedent to the case at bar is not a
ruling on retroactivity. *Beeck*, 359 N.W.2d at 484. All *Burnett*, like *Wietl*, did was
apply the "returned" precedent to itself, without discussing retroactivity. *Burnett*,
2023 WL 3261944 at *16. *See also State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000)
(decision overruling applied prospectively as retroactivity "would be unfair in the face
of" reliance on precedent and the "court should avoid such an inequitable result[.]")

Nor has this been addressed by cases applying *Burnett*. *See White v. Harkrider*,
No. 21-1992, 2023 WL 3395946 (Iowa May 12, 2023); *Carter v. State*, No. 21-0909,
2023 WL 3397451 (Iowa May 12, 2023); *Venckus v. City of Iowa City*, No. 22-0581,
2023 WL 3555505 (Iowa May 19, 2023); *Richardson v. Johnson*, No. 22-1727, 2023
WL 4036138, *1 (June 16, 2023). In each case, *Burnett* was applied to affirm the
dismissal of *Godfrey* claims without considering the merits or vesting of the actions.

The three-factor test established in *Chevron Oil Co. v. Huson*, 404 U.S. 97
(1971) determines whether a new rule is retroactive. *Id*. These factors are:

> First, the decision to be applied nonretroactively must establish a
> new principle of law…by overruling clear past precedent on which
> litigants may have relied…. Second, …'we must…weigh the merits
> and demerits in each case by looking to the prior history of the rule
> in question, its purpose and effect, and whether retrospective
> operation will further or retard its operation.' …Finally, we have
> weighed the inequity imposed by retroactive application, for '(w)here
> a decision of this Court could produce substantial inequitable results
> if applied retroactively, there is ample basis in our cases for avoiding
> the 'injustice or hardship' by a holding of nonretroactivity.'

*Chevron Oil Co.*, 404 U.S. at 106-07. *Chevron Oil Co.* addressed whether to apply a

new statute of limitations interpretation where the injury occurred over three years before the decision and the lawsuit filed over a year before. *Id*. at 355. The new precedent "was not only a case of first impression" but also "overruled a long line of" Fifth Circuit decisions that "…represented the law governing his case. It cannot be assumed that he did or could foresee that this consistent interpretation…would be overturned. The most [he] could do was to rely on the law as it then was." *Id*. at 356.

Retroactive application "would deprive the respondent of any remedy whatsoever on the basis of superseding legal doctrine that was quite unforeseeable" producing "the most 'substantial inequitable results[.]'" *Id*. at 108 (citation omitted). "[N]onretroactive application here simply preserves his right to a day in court." *Id*.

*Burnett*, though styled as "restor[ing] the law as it existed…before 2017[,]" overruled the *Godfrey* precedent on which litigants like Plaintiffs relied. *Burnett*, 990 N.W.2d at 291. *Godfrey* was clear that actions for damages arose from violation of Art. I, §8. *Godfrey*, 898 N.W.2d at 862. Plaintiffs relied on this in bringing their claims. They are not the only ones, as *Burnett* itself identifies twelve cases raising *Godfrey* claims. *Burnett*, 990 N.W.2d at 302. This does not include the five cases the Iowa Supreme Court dismissed after *Burnett*. Nor does it include *Dishman* or at least two other federal cases where such claims were dismissed. *Nelson v. Waalk*, No. 4:22-cv-00331, 2023 WL 8364496 (S.D. Iowa Oct. 19, 2023); *Maser v. City of Coralville, Iowa*, No. 3:23-cv-00028, 2023 WL 8526724 (S.D. Iowa Nov. 2, 2023). This means litigants relied on *Godfrey* claims over twenty times in six years to protect their rights under the Iowa Constitution. Chief Justice Christensen openly complained about

having analyzed *Godfrey*-related issues "ad nauseam since the court issued that decision." *Burnett*, 990 N.W.2d at 307. This suggests substantial reliance.

*Burnett* seeks to restore pre-*Godfrey* law. *Burnett*, 2023 WL 3261944 at *1. Retroactivity admittedly furthers this. Yet, when retroactivity results in hardship, avoiding hardship "'is an ample basis for nonretroactive application.'" *Weidman*, 476 N.W.2d at 362 (*quoting Hanesworth v. Johnke*, 783 P.2d 173, 177 (Wyo. 1989)).

Hardship would result from retroactive application. Tayvin has a property right in his vested cause of action. *Thorp*, 446 N.W.2d at 463. The U.S. Supreme Court holds "that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause" which "protect[s] civil litigants who seek recourse in the courts[.]" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982) (*citing Mullane v. Central Hanovar Bank & Tr. Co.*, 339 U.S. 306 (1950)). *See also Mills v. Wong*, 155 S.W.3d 916, 921 (Tenn. 2005) (citation omitted) ("Vested rights of action in tort may be classified as constitutionally-protected property interests. '[A] vested right of action is as much property as are tangible things...and enjoys the full protection of the due process clauses of the Federal and State Constitutions.'"); 16A C.J.S. *Constitutional Law* §486 (existing accrued "right of action…is a vested property right in the same sense in which tangible things are property[.]").

Retroactively destroying that right is a "violation of due process under both the federal and state constitutions." *Thorp*, 446 N.W.2d at 463. *See also Thoeni v. City of Dubuque*, 88 N.W. 967, 968 (Iowa 1902) ("[T]he right to sue within the existing statute of limitations is property, which cannot be thus summarily destroyed."). Retroactive

application of new precedent violates due process when it substantively changes the law to deprive a plaintiff of a vested cause of action. *Thorp*, 446 N.W.2d at 462.

The change *Burnett* causes does not "merely affect[ ] the remedy or the procedural law[.]" *Id. Burnett* expressly negates an existing cause of action: "[W]e no longer recognize a standalone cause of action for money damages under the Iowa Constitution[.]" *Burnett*, 2023 WL 3261944 at *16. It is a substantive change "that takes away a cause of action 'that previously existed and does not give a remedy where none or different one existed previously[.]'" *Thorp*, 446 N.W.2d at 461 (*quoting Vinson v. Linn-Marr Community School Dist.*, 360 N.W.2d 108, 121 (Iowa 1984)).

This is not a curative change designed "'to cure defects in prior law, or to validate legal proceedings'" *Id.* at 462 (*quoting* 2 N. Singer, *Sutherland Statutory Construction* §41.11, at 410 (4th ed. 1986)). Nor was *Burnett* decided in response to an emergency justifying "deprivation of property without due process" such as war or the Great Depression. *Id. Burnett* substantively changed the law. To permit the change to destroy vested causes of action deprives litigants of substantive due process. Such an inequitable result is avoided by prospective application.

The bulk of the above authority admittedly focuses on legislative action taken toward either statutory or common-law causes of action. But rather than being a distinguishing factor, this difference highlights the importance of applying *Burnett* prospectively. While the legislature can change statutory actions, once that cause is vested, the legislature cannot take it away. *Id.* The legislature can also "deprive one of a common law action[.]" *Fabricius v. Montgomery Elevator Co.*, 121 N.W.2d 361,

366 (Iowa 1963) *superseded by statute*, *Clark v. Ins. Co. State of Pennsylvania*, 927 N.W.2d 180, 186 (Iowa 2019). Yet in neither case may the legislature "destroy claims that were fully matured…prior to the effective date[.]" *Veasley v. CRST Intern., Inc.*, 553 N.W.2d 896, 901 (Iowa 1996). "[A] legislature may not abolish…existing common-law rights of action for injuries[.]" 16A C.J.S. *Constitutional Law* §486.

Had the legislature done what *Burnett* did, the statute would apply prospectively. *Burnett*'s retroactive application deprives those affected of their right to due process. It cannot be presumed the Iowa Supreme Court intended to violate the very constitution it upholds. *Burnett* is best-given effect prospectively to ensure vested causes of action receive their day in court.

### 2.   *False Arrest*

False arrest requires "(1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint unlawful detention or restraint against one's will." *Children v. Burton*, 331 N.W.2d 673, 678–79 (Iowa 1983). Its essential elements are. *Id*. It is "the unlawful restraint of an individual's personal liberty or freedom of locomotion." *Sergeant v. Watson Bros. Transp. Co.*, 52 N.W.2d 86, 92 (Iowa 1952). "Every confinement of the person is an imprisonment…even by forcibly detaining one in the public streets." *Fox v. McCurnin*, 218 N.W. 499, 501 (Iowa 1928) (*quoting* 2 Blackstone, Comm. book 3, p. 171). An arrest is defined as taking a person into custody. *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 769 (Iowa 2002). An arrest is defined as "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa

Code §804.5. As it is an objective question, Iowa law looks at whether a statutory arrest occurred. *Richards v. City of West Des Moines*, No. 22-0895, 2023 WL 4759456, *5 n.2 (Iowa Ct. App. July 26, 2023).

The lawfulness of detention is determined under the objective standard of Iowa Code §804.7. *Veatch v. City of Waverly*, 858 N.W.2d 1, 7 (Iowa 2015). Under §804.7, warrantless arrests are permitted: "1. For a public offense committed or attempted in the peace officer's presence[;] 2. Where a public offense has in fact been committed, and the peace officer has reasonable ground for believing that the person to be arrested has committed it." Iowa Code §807.4(1)-(2).

For either, the officer must have probable cause. *See Young v. City of Des Moines*, 262 N.W.2d 612, 619 (Iowa 1978) (adopting probable cause requirement for misdemeanors committed in officer's presence) *overruled on other grounds, Parks v. City of Marshalltown*, 440 N.W.2d 377 (Iowa 1989); *Veatch*, 858 N.W.2d at 7 ("reasonable grounds" in Iowa Code §870.4 equivalent to probable cause). This is not "identical to the federal constitutional standard" and arrests consistent with the Fourth Amendment probable cause standard do not automatically satisfy §804.7. *Id.*

In a civil context, "if an officer acts in good faith and with a reasonable belief that a crime has been committed and the person arrested committed," the arrest is justified. *Children*, 331 N.W.2d at 680. This must be based on facts within the officer's knowledge at the time the arrest was made. *Id.* In this context, reasonable grounds has the same meaning as reasonable suspicion, which requires "specific and articulable facts, which taken together with rational inferences…to believe criminal

activity may have occurred" as determined by the information available at the time. *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). These terms have been used interchangeably by the Iowa Court: "Yet, this protection does not prohibit police from temporarily detaining an individual when they have reasonable grounds to believe criminal activity is afoot. …Thus, when police temporarily detain an individual pursuant to a reasonable suspicion of a crime." *State v. Dewitt*, 811 N.W.2d 460, 468 (Iowa 2012). *See also Bousman v. Iowa Dist. Court for Clinton County*, 630 N.W.2d 789, 799 (Iowa 2001) (nontestimonial identification order requiring brief detention at police station "could be constitutionally based upon a finding of reasonable grounds to suspect rather than upon a showing of probable cause.").

Physical force nor its threat is needed as an arrest can "result from submission to asserted legal authority." *Zohn v. Menard, Inc.*, 598 N.W.2d 323, 327 (Iowa Ct. App. 1999). Submission to an asserted authority and purpose to arrest is an arrest. *State v. Johnson-Hugi*, 484 N.W.2d 599, 601 (Iowa 1992). Lack of charges or booking does not preclude an arrest. *State v. Rains*, 574 N.W.2d 904, 910 (Iowa 1998) *overruled on other grounds, State v. Williams*, 895 N.W.2d 856 (Iowa 2017).

Tayvin was detained against his will. Once a warrantless seizure is shown, "the burden of proof shifts to the defendant to show justification[.]" *Children*, 331 N.W.2d at 679. This justification must come from "facts within the officers' knowledge *at the time the arrest is made*." *Id.* at 680 (original emphasis). When Officer Winters and Lt. Wing seized Tayvin for field testing, reasonable suspicion was required; and when Tayvin was arrested by them, they had to have probable cause to believe he

had committed a crime. There are factual disputes on whether either existed at the time of the respective acts. Summary judgment must be denied.

### 3.    *No Entitlement to State Qualified Immunity*

Iowa Code §670.4A provides that municipal officers are immune from monetary damages if:

> The right…secured by law was not clearly established at the time of the alleged deprivation, or at the time…the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law.

Iowa Code §670.4A(1)(a).

To the extent Tayvin has "shown the existence of a clearly established right under the United States Constitution…the same right also would be 'clearly established' for purposes of the Iowa Constitution given the overlap between state and federal constitutional rights." *Dunn v. Doe 1-22*, No. 4:21-cv-00053, 2023 WL 3081611, *17 (S.D. Iowa April 24, 2023). This is true even where Art. I, §8 is subject to the broader independent interpretation argued above. *Id*.

Freedom from false arrest is clearly established common law. *Fox*, 218 N.W. 501. It is clearly established that even brief confinement can be a false arrest. *Id*. *See also Zohn*, 598 N.W.2d at 327 (brief detention against individuals will without reasonable grounds was false arrest). Absent reasonable suspicion or probable cause, Tayvin's detention violated his clearly established right against false arrest.

### 4.    *Municipal Liability*

#### a.    **Negligent training and supervision**

Iowa law recognizes the tort of negligent training, retention, and supervision,

under which an employer must exercise reasonable care in the training and supervision of "individuals, who, because of their employment, may pose a threat of injury to members of the public." *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999). These elements are required:

1) an employment relationship existed between the employee and the defendant employer;

2) defendant employer knew, or in the exercise of ordinary care should have known, of the employee's incompetence, unfitness, or dangerous characteristics; and

3) the employee's incompetence, unfitness, or dangerous characteristics were a cause of damage to the plaintiffs.

*Id.* at 708-09. This tort includes the wrongful act committed by the employee as an underlying element in the sense that: "...an employer cannot be held liable for negligent supervision or training where the conduct that proper supervision and training would have avoided is not actionable against the employee." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999).

Defendants argue Chief Burdess is from liability as an individual. Tayvin disagrees, as only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (PSAF ¶35.) An investigation into Officer Winters was clear about concerns he was not competent to conduct OWI investigations. (PSAF ¶21, 29-33.) Chief Burdess took no action to address it. (PSAF ¶37.)

There is no argument the City avoids liability for the acts of its employees.

Officer Winters, Lt. Wing, and Chief Burdess are all employees of the City of Newton. (DSF ¶1-4; PSRF ¶1-4.) Lt. Wing and Chief Burdess are responsible for supervising officers such as Officer Winters. (PSAF ¶28, 35, 38.) Lt. Wing had the opportunity and authority to act in the moment and chose not to. (PSAF ¶28, 29.) Chief Burdess did not address either Lt. Wing's concerns about Officer Winters or Lt. Wing's inaction in the moment. (PSAF ¶37.) Genuine questions as to the City of Newton's training and supervision of Officer Winters preclude summary judgment.

### b.   Respondeat superior

An employer is liable for the negligence of an employee while the employee is acting within the scope of his or her employment. Godar v. Edwards, 588 N.W.2d 701 (Iowa 1999).  Scope of employment includes acts: "so closely connected with…and so fairly and reasonably incidental to" the employment "that they may be regarded as methods, even though quite improper ones, of carrying [its] objectives[.]" Jones v. Blair, 387 N.W.2d 349 (Iowa 1986). Officer Winters and Lt. Wing were employed with the Newton Police Department and acting in that capacity when they falsely arrested Tayvin. (DSF ¶1, 3, 4; PRSF ¶1, 3, 4.) Summary judgment should be denied.

## IV.   CONCLUSION

There were never reason to suspect Tayvin was intoxicated. Officer Winters and Lt. Wing falsely detained and arrested Tayvin anyway, violating his rights under the Fourth Amendment and Iowa law. These violations resulted because the City of Newton, through Chief Burdess and Lt. Wing, allowed someone of Officer Winters' questionable competence to conduct such work. Summary judgment must be denied.

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY:  */s/ Adam C. Witosky*

Matthew M. Boles                 AT0001037
Adam C. Witosky                  AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Facsimile: (515) 243-3696
Email:        mboles@gbswlaw.com
              awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

<u>**PROOF OF SERVICE**</u>

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on January 10, 2024.  Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

*/s/ Tami Fairchild*