**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| **TAYVIN GALANAKIS,**<br>Plaintiff,<br><br>**v.**<br><br>**CITY OF NEWTON, IOWA, et al.,**<br>Defendants. | **CASE NO. 4:23-cv-00044** |
| **NATHAN WINTERS AND CHRISTOPHER WING,**<br>Counterclaim Plaintiffs,<br><br>**v.**<br><br>**TAYVIN GALANAKIS,**<br>Counterclaim Defendant. | **PLAINTIFF/COUNTERCLAIM DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>**[REDACTED PER R.DOC.52]** |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Statement of Additional Material Facts states:

1. Tayvin Galanakis was released without charges after having been arrested by Officer Nathan Winters and Lt. Christopher Wing for operating while intoxicated when Officer Andrew Shinkle, the Newton Police Department's Drug Recognition Expert, determined there were no indications of intoxication. (Pltf.App. 4, 8, 11.)

2. As Tayvin looked for the documents Officer Winters' requested, he answered six questions from Officer Winters in about 55 seconds: 1) if it was his car (it was); 2) where he was going (home, giving its address); 3) whether he was new to

town (he was not); 4) why he had out of county plates (car was his grandfather's who lived in Greenfield); 5) where he was coming from (a friend's house); and 6) whether he had anything to drink (he had not). (Def.App. 6 [14:24-15:24][1].)

3. Tayvin responded clearly to each question as he actively looked for and reviewed documents. (Def.App. 6 [14:24-15:24].)

4. Tayvin looked for and reviewed documents in the dark at approximately 12:15 p.m., with the only being Officer Winters' flashlight. (Def.App. 6 [14:24-15:24].)

5. Tayvin did not have his contacts in. (Pltf.App. 17 [30:11-18].)

6. This was one of Tayvin's first times being stopped and he was unsure where the documents were. (Pltf.App. 15 [24:1-6].)

7. Believing he had a physical copy, Tayvin looked in the glove box for an insurance card, finding an expired physical copy on a white card. (Def.App. 6 [16:35-16:56].)

8. When he could not find a current physical copy, Tayvin produced the insurance card on his phone in approximately sixteen seconds. (Def.App. 6 [16:57-17:18].)

9. Tayvin did all this while trying not to make any sudden movements. (Pltf.App. 16 [26:19-27:17].)

10. Tayvin denied having consumed alcohol that night. (Def.App. 6 [15:17-15:20].)

[1] Def.App. 6 is Officer Winters' body camera video as submitted by Defendants with the time reference being to the video's top-right timestamp.

11. Tayvin did not have bloodshot and watery eyes. (Def. Appx. 6 [01:11-01:35, 02:04-02:07, 03:44-03:46, 10:00-12:11, 17:29-18:04, 22:10-22:14]; Pltf.App. 16 [28:6-17].)

12. Officer Winters had Tayvin take his gum out before exiting the vehicle because he had decided to field test Tayvin and needed his mouth empty for at least fifteen minutes to perform an accurate preliminary breath test. Def.App. 6 [17:42-17:47, 33:39-33:45], 14; Pltf.App. 77.)

13. Tayvin fully cooperated, was responsive to directions, and walked without impairment to the police vehicle. (Def.App. 6 [17:27-18:12].)

14. [redacted]

[redacted] (Pltf.App. [redacted].)

15. Lt. Wing was present at Tayvin's vehicle and observed the entire interaction between Officer Winters and Tayvin through opening the door for Tayvin to get in the police vehicle. (Pltf.App. 78 [14:00-18:05][2].)

16. While in the police vehicle, Tayvin spoke clearly and responsively to Officer Winters. (Def.App. 6 [18:30-19:25].)

17. In response to Officer Winters' questioning, Tayvin twice stated he had not consumed alcohol that night. (Def.App. 6 [19:26-19:35].)

18. Lt. Wing sat in the back of the police vehicle and observed the entire

[2] Pltf.App. 78 is Lt. Wing's body camera video as submitted on USB with the time reference being to the video's top-right timestamp.

interaction between Officer Winters and Tayvin in that vehicle. (Pltf.App. 78 [18:06-21:55].)

19. The field testing did not reveal any mental or physical impairment, but clues from a failure to follow instructions. (Pltf.App. 48-49 [13:21-14:6], 50 [18:13-19:3], 63, 67, 69.)

20. Officer Winters did not inquire into the degree of Tayvin's ankle injury before performing the field testing which could impact the testing. (Dep.App. 6 [26:13-26:26].)

21. [redacted] (Def.App. 6 [26:26-29:50]; Pltf.App. [redacted] 33-35, 44-45.)

22. [redacted] (Pltf.App. [redacted].)

23. [redacted] (Pltf.App. [redacted].)

24. Officer Wing observed all the field testing, including the PBT. (Def.App. 14.)

25. Officer Shinkle, the Drug Recognition Expert who ultimately cleared Tayvin, did not smell alcohol during his testing. (Pltf.App. 36-42.)

26. [redacted] (Pltf.App. [redacted].)



27. (Pltf.App. .)

28. (Def.App. 14; Pltf.App. .)

29. (Pltf.App. , 44.)

30. (Pltf.App. 45.)

31. (Pltf.App. 45.)

32. (Pltf.App. 45.)

33.



(Pltf.App. .)

34. (Pltf.App. 45.)

35. (Pltf.App. 75.)

36. (Pltf.App. 71-74.)

37. (Pltf.App. .)

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY: /s/ Adam C. Witosky
Matthew M. Boles AT0001037
Adam C. Witosky AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Facsimile: (515) 243-3696
Email: mboles@gbswlaw.com
awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on January 11, 2024. Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

/s/ Tami Fairchild