UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, ROB BURDESS, NATHAN WINTERS, CHRISTOPHER WING, individually and in their official capacities with the Newton Police Department,<br>    Defendants.<br><br>―――――――<br><br>NATHAN WINTERS and CHRISTOPHER WING,<br>    Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>    Plaintiff/Counterclaim Defendant. | No. 4:23-cv-00044-SHL-SBJ<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br><br><br><br><br><br><br>Removed from the District Court for Jasper County, Iowa, No. LACV123038 |

Under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.c., Defendants submit this Reply to Plaintiff Tayvin Galanakis's ("Galanakis") Statement of Additional Material Facts, Doc. 53-2.

## OBJECTION

The Court should not allow Galanakis to rely on the evidence contained in pages 71–78 of Galanakis's Appendix Resisting Defendants' Motion for Summary Judgment, Doc. 44-3, because Galanakis made no attempt to authenticate any of this evidence.

Under Local Rule 56.e., "a document included in an appendix must be authenticated properly, by affidavit or in some other lawful manner, or it may not be considered by the court in

1

ruling on a motion for summary judgment." LR 56.e.; *see also Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 981–982 (S.D. Iowa 2011) (concluding a party could not rely on certain unauthenticated evidence to oppose summary judgment).

Because Galanakis did not even attempt to properly authenticate pages 71–78 of Galanakis's Appendix Resisting Defendants' Motion for Summary Judgment, the Court should not allow him to rely on this evidence to resist summary judgment.

## REPLY

1.  Tayvin Galanakis was released without charges after having been arrested by Officer Nathan Winters and Lt. Christopher Wing for operating while intoxicated when Officer Andrew Shinkle, the Newton Police Department's Drug Recognition Expert, determined there were no indications of intoxication. (Pltf.App. 4, 8, 11.)

    **RESPONSE:** Admitted.

2.  As Tayvin looked for the documents Officer Winters' requested, he answered six questions from Officer Winters in about 55 seconds: 1) if it was his car (it was); 2) where he was going (home, giving its address); 3) whether he was new to town (he was not); 4) why he had out of county plates (car was his grandfather's who lived in Greenfield); 5) where he was coming from (a friend's house); and 6) whether he had anything to drink (he had not). (Def.App. 6 [14:24-15:24][1].)

    **RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis provided the answers to the listed questions in approximately 55 seconds. However, Defendants deny that Galanakis answered all of the listed questions at the same time as he was searching for documents requested by Officer Winters. Doc. 40-3, Def. Appx. 6 at 14:23–17:25.

3.  Tayvin responded clearly to each question as he actively looked for and reviewed documents. (Def.App. 6 [14:24-15:24].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis provided comprehensible answers to Officer Winters's questions recorded between 14:24 and 15:24 of Officer Winters's body camera recording, except Officer Winters did not hear Galanakis's answer to the question "any thing to drink over the?" Doc. 40-3, Def. Appx. 6 at 15:10–15:25. When Officer Winters said, "I didn't hear what you said," Galanakis did not respond. *Id*.

4. Tayvin looked for and reviewed documents in the dark at approximately 12:15 p.m., with the only being Officer Winters' flashlight. (Def.App. 6 [14:24-15:24].)

**RESPONSE:** Defendants' object to this statement of fact because it is apparently incomplete and incomprehensible. Subject to this objection, Defendants provide the following reply: admitted, in part, and denied, in part. Defendants admit Galanakis searched for documents requested by Officer Winters at approximately 12:15 a.m., not 12:15 p.m. Doc. 40-3, Def. Appx. 6 at 13:14–14:50, *et seq*. Defendants deny that the only light was Officer Winters's flashlight because there appear to be other lights, including a bright streetlight and lights inside Galanakis's vehicle. *Id*.

Defendants also contend these facts are not material.

5. Tayvin did not have his contacts in. (Pltf.App. 17 [30:11-18].)

**RESPONSE:** Admitted. However, Galanakis told Officer Winters he did not need his contacts to drive. Doc. 40-3, Def. Appx. 6 at 21:54–22:23.

6. This was one of Tayvin's first times being stopped and he was unsure where the documents were. (Pltf.App. 15 [24:1-6].)

**RESPONSE:** Denied. Def. Suppl. Appx. 5, 120:17–120:21. Galanakis testified at his deposition that he had been pulled over for having his headlight out three different times, suggesting he knew where his vehicle registration, proof of insurance, and license were located. *Id*.

3

7. Believing he had a physical copy, Tayvin looked in the glove box for an insurance card, finding an expired physical copy on a white card. (Def.App. 6 [16:35-16:56].)

**RESPONSE:** Admitted.

8. When he could not find a current physical copy, Tayvin produced the insurance card on his phone in approximately sixteen seconds. (Def.App. 6 [16:57-17:18].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis produced proof of insurance by showing Officer Winters an email on his phone. Defendants deny it took Galanakis sixteen seconds from the time he failed to produce a paper copy of his proof of insurance to produce an electronic copy of his proof of insurance. Doc. 40-3, Def. Appx. 6 at 16:55–17:18.

9. Tayvin did all this while trying not to make any sudden movements. (Pltf.App. 16 [26:19-27:17].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis testified at his deposition that he did not initially show Officer Winters the electronic copy of his proof of insurance because he "didn't want to make any sudden movements towards my phone." Pltf App. 16, 27:10–27:11. Defendants deny that this is credible testimony based on Galanakis's other movements and demeanor throughout his interactions with Officer Winters. *See*, *e.g.,* Doc. 40-3, Def. Appx. 6 at 13:58–17:40.

10. Tayvin denied having consumed alcohol that night. (Def.App. 6 [15:17-15:20].)

**RESPONSE:** Admitted.

11. Tayvin did not have bloodshot and watery eyes. (Def. Appx. 6 [01:11-01:35, 02:04-02:07, 03:44-03:46, 10:00-12:11, 17:29-18:04, 22:10-22:14]; Pltf.App. 16 [28:6-17].)

**RESPONSE:** Denied. Doc. 40-3, Def. Appx. 6 at 19:35–19:39.

12. Officer Winters had Tayvin take his gum out before exiting the vehicle because he had decided to field test Tayvin and needed his mouth empty for at least fifteen minutes to perform an accurate preliminary breath test. Def.App. 6 [17:42-17:47, 33:39-33:45], 14; Pltf.App. 77.)

**RESPONSE:** Admitted, in part, and denied, in part. Galanakis failed to authenticate the evidence included in page 77 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e. Subject to this objection, Defendants admit Officer Winters asked Galanakis to remove his chewing gum before Galanakis exited his vehicle. Defendants deny the remaining parts of this statement of fact. Doc. 40-3, Def. Appx. 6 at 17:40–17:45.

13. Tayvin fully cooperated, was responsive to directions, and walked without impairment to the police vehicle. (Def.App. 6 [17:27-18:12].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis complied with Officer Winters's request to accompany him to his police vehicle, that Galanakis responded to Officer Winters's directions to accompany him to his police vehicle, and that Galanakis appeared to walk to Officer Winters's police vehicle with exhibiting any signs of impairment while walking to the vehicle. Defendants deny that Galanakis did not previously exhibit signs of impairment and intoxication. Doc. 40-3, Def. Appx. 6 at 19:34–20:10.

14. The only cognitive impairment Officer Winters observed in Tayvin was the finding and presentation of his registration and insurance documents, including after field testing. (Pltf.App. 22 [17:9-25].)

**RESPONSE:** Denied. Doc. 40-3, Def. Appx. 6; *see also* Doc. 40-2 ¶¶ 5–83.

15. Lt. Wing was present at Tayvin's vehicle and observed the entire interaction between Officer Winters and Tayvin through opening the door for Tayvin to get in the police

vehicle. (Pltf.App. 78 [14:00-18:05][2].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in page 78 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on page 78 of his Appendix, Defendants admit this statement of fact.

16.   While in the police vehicle, Tayvin spoke clearly and responsively to Officer Winters. (Def.App. 6 [18:30-19:25].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Galanakis provided comprehensible answers to Officer Winters's questions. Defendants deny that Galanakis was responsive at all times. Doc. 40-3, Def. Appx. 6 at 18:20–21:55.

17.   In response to Officer Winters' questioning, Tayvin twice stated he had not consumed alcohol that night. (Def.App. 6 [19:26-19:35].)

**RESPONSE:** Admitted.

18.   Lt. Wing sat in the back of the police vehicle and observed the entire interaction between Officer Winters and Tayvin in that vehicle. (Pltf.App. 78 [18:06-21:55].)

**RESPONSE:** Admitted.

19.   The field testing did not reveal any mental or physical impairment, but clues from a failure to follow instructions. (Pltf.App. 48-49 [13:21-14:6], 50 [18:13-19:3], 63, 67, 69.)

**RESPONSE:** Denied. Doc. 40-3, Def. Appx. 6 at 22:00–38:00.

20.   Officer Winters did not inquire into the degree of Tayvin's ankle injury before performing the field testing which could impact the testing. (Dep.App. 6 [26:13-26:26].)

**RESPONSE:** Denied. Doc. 40-3, Def. Appx. 26:13–26:30.

21. Tayvin and Officer Winters were more interested in bickering than listening, with Officer Winters counseled for his poor communication during this stop. (Def.App. 6 [26:26-29:50]; Pltf.App. 22 [19:8-20], 28 [18:13-16], 33-35, 44-45.)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Officer Winters was advised to speak more politely to others while on duty. Defendants deny that Officer Winters was interested in bickering, or more interested in bickering than listening. Doc. 40-3, Def. Appx. 6.

22. When given a preliminary breath test, Tayvin blew a 0.00 blood alcohol content. (Pltf.App. 20 [11:21-23].)

**RESPONSE:** Admitted.

23. Following field testing there was no indication Tayvin was under the influence of alcohol. (Pltf.App. 20-21 [12:25-13:6].)

**RESPONSE:** Denied. Doc. 40-3, Def. Appx. 84, 6 at 22:00–38:00. Galanakis showed indications he was under the influence of a substance, including alcohol. *Id*. Officer Winters and Lieutenant Wing only knew he was not influenced by alcohol after administering a preliminary breath test. *Id*.

24. Officer Wing observed all the field testing, including the PBT. (Def.App. 14.)

**RESPONSE:** Admitted.

25. Officer Shinkle, the Drug Recognition Expert who ultimately cleared Tayvin, did not smell alcohol during his testing. (Pltf.App. 36-42.)

**RESPONSE:** Admitted.

26. Officer Winters is not qualified to determine intoxication by controlled substances and cannot distinguish the smell of marijuana, but admits it does not smell like alcohol. (Pltf.App. 21 [15:6-21], 22 [18:1-17].)

**RESPONSE:** Denied. The evidence cited to support this statement of fact does not support the statement that Officer Winters is not qualified to determine intoxication by controlled substances or the statement that Officer Winters cannot distinguish the smell of marijuana. Pltf. App. 21, 15:6–21 & 22, 18:1–17; Doc. 40-3, Def. Appx. 7–13, 72–84.

27. Officer Wing is one of Officer Winters' supervising officers, including to ensure proper testing is being performed in OWI traffic stops. (Pltf.App. 27 [15:17-16:1], 29 [23:19-24:23].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Lieutenant Wing is Officer Winter's superior officer with discretion to intervene in Officer Winters's investigations in appropriate situations, including OWI investigations. Pltf App. 29, 2–3. Defendants deny that Lieutenant Wing has final policymaking authority with respect to the City of Newton Police Department's OWI investigations because there is no evidence to support that fact.

28. Despite being present through the entire encounter, Officer Wing made no effort to ensure Tayvin's detention for field testing was proper, no effort to ensure Officer Winters properly conducted the field testing, or any assessment of whether Tayvin displayed signs of intoxication, despite a responsibility to do so. (Def.App. 14; Pltf.App. 27 [15:17-16:1], 29 [23:19-24:23].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Lieutenant Wing was present during the stop of Galanakis and that he did not stop or inhibit Officer Winters's investigation. Defendants deny the remaining parts of this statement of fact. Doc. 40-3, Def. Appx. 6.

29. Lt. Wing also admitted when Officer Winters accused Tayvin of having used marijuana after the preliminary breath test came back 0.00, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired."

(Pltf.App. 30 [27:1-14], 44.)

**RESPONSE:** Denied. Page 30 of Galanakis's Appendix in no way supports this statement of fact, and Galanakis failed to authenticate the evidence included in page 44 of his Appendix. Therefore, he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court concludes Galanakis adequately supported this statement of fact, Defendants provide the following reply: admitted, in part, and denied, in part. Defendants admit Lieutenant Wing wrote "I should have questioned Officer Winters as to what his observations were and how they lead him to believe he was impaired." Defendants deny that Lieutenant Wing wrote this statement at the time Officer Winters suspected Galanakis of being impaired, intoxicated, or otherwise under the influence of a substance. Pltf. App. 44.

Further, this statement of fact is not material. It is also inadmissible under Rule 402 of the Federal Rules of Evidence.

30. Lt. Wing admits that when he spoke with Officer Shinkle, he was told Tayvin was the third individual that shift whom Officer Winters had requested Officer Shinkle examine. (Pltf.App. 25 [8:8-15], 26 [9:6-9], 30 [25:18-24], 45.)

**RESPONSE:** Denied. Pages 25, 26, and 30 of Galanakis's Appendix do not support this statement of fact, and Galanakis failed to authenticate the evidence included in page 45 of his Appendix. Therefore, he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court concludes Galanakis adequately supported this statement of fact, Defendants provide the following reply: admitted Officer Shinkle told Lieutenant Wing that Galanakis was the third individual for whom Officer Winters requested Officer Shinkle to examine on August 28, 2022. The remaining parts of this statement of fact are denied. Pltf. 45.

Defendants contend this fact is not material. It is also inadmissible under Rule 402 of the Federal Rules of Evidence.

31.     For the first two, Officer Shinkle declined to perform testing after looking at and speaking with the individuals. (Pltf.App. 28 [19:21-20:9], 30 [25:24-26:1], 45.)

**RESPONSE:** Denied.  Pages 28 and 30 of Galanakis's Appendix do not support this statement of fact, and Galanakis failed to authenticate the evidence included in page 45 of his Appendix.  Therefore, he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court concludes Galanakis adequately supported this statement of fact, Defendants provide the following reply: Defendants admit Officer Shinkle told Lieutenant Wing that Officer Shinkle declined to perform a DRE analysis on two individuals for whom Officer Winters requested Officer Shinkle to examine.

Defendants contend this fact is not material.  It is also inadmissible under Rule 402 of the Federal Rules of Evidence.

32.     This revelation caused Lt. Wing to state: "This worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him. I'm afraid this could happen again…" (Pltf.App. 30 [26:3-5], 45.)

**RESPONSE:** Denied.  Page 30 of Galanakis's Appendix does not support this statement of fact, and Galanakis failed to authenticate the evidence included in page 45 of his Appendix.  Therefore, he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court concludes Galanakis can rely on page 45 of his Appendix, Defendants provide the following reply: admitted that Lieutenant Wing wrote "[t]his worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him.  I'm afraid this could happen again."

Defendants contend this fact is not material.  It is also inadmissible under Rule 402 of the Federal Rules of Evidence.

33.     It is known that Officer Winters frequently requests Officer Shinkle to perform testing. (Pltf.App. 28 [19:10-12].)

**RESPONSE:** Defendants object to this statement of fact as vague and ambiguous with respect to the phrase "[i]t is known" because Galanakis did not clarify to whom "it is known," leaving Defendants to guess. Subject to this objection, Defendants provide the following reply: admitted, in part, and denied, in part. Defendants admit Chief Burdess was aware that Officer Winters engaged the DRE expert, Officer Shinkle, frequently. Defendants deny the remaining parts of this statement of fact. Pltf. App. 28, 19:10–12.

Defendants contend this fact is not material. It is also not admissible under Rule 402 of the Federal Rules of Evidence.

34.     After Tayvin had been cleared by Officer Shinkle, Officer Winters wanted to continue bringing charges against him. (Pltf.App. 21 [15:22-16:18], 45.)

**RESPONSE:** Denied. Page 21 of Galanakis's Appendix does not support this statement of fact, and Galanakis failed to authenticate the evidence included in page 45 of his Appendix. Therefore, he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court concludes Galanakis can rely on page 45 of his Appendix, Defendants provide the following reply: denied. Pltf. App. 45. Lieutenant Wing stated Officer Winters *asked* if Galanakis should be charged, not the Officer Winters *wanted* to charge Galanakis. *Id*.

35.     Only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (Pltf.App. 27 [14:9-15], 75.)

**RESPONSE:** Galanakis failed to authenticate the evidence included in page 75 of his Appendix. Therefore, he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Defendants otherwise admit that Chief Burdess has disciplinary authority over the City of Newton Police department officers.

36.    Lieutenants within the Newton Police Department are second in the command structure, with only four officers of this rank, responsible for ensuring professional standards and involved in the process of setting department policy and staffing levels, amongst other duties. (Pltf.App. 25 [7:17-21], 27 [14:1-15], 71-74.)

**RESPONSE:** Denied. Pages 25 and 27 do not support this statement of fact, and Galanakis failed to authenticate the evidence included in pages 71–74 of his Appendix. Therefore, he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court concludes Galanakis may rely on pages 71–74 to support this statement of fact, Defendants reply as follows: admitted, in part, and denied, in part. Defendants admit lieutenants within the City of Newton Police Department are second in the organizational structure of the police department and that the City of Newton Police Department has four lieutenants. Defendants further admit that lieutenants are responsible for ensuring the officers under their command are aware of revisions to the City of Newton Police Department's Policy Manual, that lieutenants are responsible for forwarding suggested revisions to the Policy Manual to command staff, and that lieutenants are responsible for establishing minimum staffing levels. Defendants deny the remaining parts of this statement of fact, including that lieutenants are responsible for ensuring professional standards and for setting any policies. Pltf. App. 71–74.

37.    Chief Burdess never discussed Lt. Wing's concerns about Officer Winters competency to make an OWI stop with Lt. Wing, and has no idea if Lt. Wing talked to Officer Winters. (Pltf.App. 30 [25:6-20], 31 [27:7-14].)

**RESPONSE:** Admitted, in part, and denied, in part. Defendants admit Chief Burdess did not talk to Lieutenant Wing about whether Officer Winters was competent to conduct OWI stops.

Defendants also admit that Chief Burdess did not know if Lieutenant Wing talked to Officer Winters about certain statements Lieutenant wrote in a report. Defendants deny the remaining parts of this statement of fact. Pltf. App. 30, 26:15–20.

Dated: January 17, 2024.

By:   */s/ Nicholas F. Miller*
      Matthew S. Brick, AT0001081
      Erin M. Clanton, AT0002592
      Douglas A. Fulton, AT0002672
      Nicholas F. Miller, AT0015361
      **BRICK GENTRY, P.C.**
      6701 Westown Parkway, Suite 100
      West Des Moines, IA 50266
      T: (515) 274-1450
      F: (515) 274-1488
      matt.brick@brickgentrylaw.com
      erin.clanton@brickgentrylaw.com
      doug.fulton@brickgentrylaw.com
      nick.miller@brickgentrylaw.com

      Counsel for Defendants CITY OF NEWTON, IOWA, ROB BURDESS, CHRISTOPHER WING, and NATHAN WINTERS

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, a true copy of DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS was electronically filed using the Court's CM/ECF system, which sent notice to counsel of record, as follows:

      Matthew M. Boles
      Adam C. Witosky
      GRIBBLE, BOLES, STEWART & WITOSKY LAW
      2015 Grand Avenue, Suite 200
      Des Moines, Iowa 50312
      mboles@gbswlaw.com
      awitosky@gbswlaw.com
      Counsel for Plaintiff/Counterclaim Defendant

      */s/    Nicholas F. Miller*
      **Nicholas F. Miller, AT0015361**