IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>  Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, et al.,<br>  Defendants. | CASE NO. 4:23-cv-00044<br><br><br>PLAINTIFF/COUNTERCLAIM DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS RESISTING MOTION COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS<br><br>*REDACTED* |
| NATHAN WINTERS AND CHRISTOPHER WING,<br>  Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>  Counterclaim Defendant. | |

**COMES NOW** the Plaintiff/Counterclaim Defendant and for this Statement of Additional Material Facts states:

1.  Tayvin made the allegedly defamatory statements about Officer Nathan Winters having been convicted of domestic abuse on his social media. (CCDef.App. 4-5 [¶12(a)-(e)], 8 [¶12(a)-(e)].)

2.  Tayvin subsequently publicly clarified, "[a]lthough the officer may not have been convicted nor any charges filed, he did consent to have a civil no-contact/protective order placed on him by a former girlfriend ... *for* domestic abuse. The order has been modified to allow him to use a gun while at work." (CCDef.App. 6 [¶20], 9 [¶20].)

3. On the YouTube page where the defamatory video is posted, the enlarged grey text box between the video and the comments includes the clarifying statement, "Officer Nathan Winters has a no contact order involving domestic abuse in 2021 after beating his ex girlfriend. The Chief of police Rob Burdess allowed Nathan Winters to keep his job as an officer even after the news of domestic abuse." (Winters.Appx. 2 [¶¶8-9], 7.)

4. Between April 2020 and July 2021, Newton Police Officer Nathan Winters physically abused Courtney Van Der Hart, his then-girlfriend. (CCDef.App. 10-15, 22-28.)

5. In April 2020, Officer Winters was sitting in his patrol car on duty when she leaned in to give him a kiss goodnight. He elbowed her in the chest so hard it pushed her backward into her car and left a bruise on her chest. Following this, they communicated via SnapChat and text message about him pushing her, which he admitted to doing. (CCDef.App. 11 [¶11], 13-15, 24.)

6. In July 2020, while at his mother's house where he lived, Officer Winters refused to let her leave the bedroom. When she attempted to, he lifted her up, slammed her onto his bed, held her down by the wrists, and told her she could leave when he said she could leave. (CCDef.App. 11 [¶12], 26.)

7. Throughout the summer of 2020, Officer Winters would regularly drive past her house and other places she went. He would park down the road from her house, sitting in his car with the lights off. (CCDef.App. 11 [¶10], 26.)

8. In May 2021, while at a birthday party for one of her co-workers, she

was walking behind another co-worker as they were all leaving for dinner when Officer Winters grabbed her wrist, pulled her back, and told her she wasn't allowed to be that close to the co-worker. (CCDef.App. 11 [¶9].)

9. In June 2021, during an argument at her home in her bedroom, Officer Winters blocked the door as she tried to leave while her kids were on the other side in the living room. (CCDef.App. 10 [¶7], 26.)

10. In June 2021, Officer Winters was giving her a shoulder rub while she lay on the bed. He put his hand on the back of her neck, squeezed slightly, and said, "You realize if I squeezed right now it would kill you." (CCDef.App. 11 [¶8].)

11. In July 2021, she was holding and looking at Officer Winters' cell phone, which he allowed her to do. When she started to walk while reading a message, he pushed her onto the bed, held her down, and grabbed and twisted her wrist until she dropped the phone. (CCDef.App. 10 [¶6], 24.)

12. In July 2021, Officer Winters' threatened to kill her if she cheated on him, saying he would need three bullets, one for her, one for the "new" guy, and one for himself. (CCDef.App. 10 [¶5], 23-24.)

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14. Ms. Van Der Hart filed a Petition for Relief from Domestic Abuse in August 2021. (CCDef.App. 22-28.)

15. A Temporary Protective Order was issued. (CCDef.App. 29-32.)

16. Officer Winters consented to the entry of a Protective Order against him protecting Ms. Van Der Hart. (CCDef.App.. 33-35, ███████.)

17. Language was included in the Protective Order to permit Officer Winters to continue working: "Nothing in this Order Prohibits the Respondent from conducting official police business." (CCDef.App. 34.)

18. Absent this language, Officer Winters would be prohibited from carrying a firearm: "WARNINGS TO RESPONDENT: ...Federal and state laws provide penalties for possessing, transporting, shipping, or receiving any firearm or ammunition." (CCDef.App. 33.)

19. A modified Protective Order was entered twelve days later specifying when Officer Winters could call dispatch and enter the building when Ms. Van Der Hart was on duty. (CCDef.App. 36-38.)

20. Officer Winters consented to the extension of the Protective Order until February 22, 2024. (CCDef.App. 39-42, ███████.)

21. Ms. Van Der Hart contacted Tayvin and told him Officer Winters had abused her and directed him to her civil action seeking the Protective Order, which he conflated with a conviction. (CCDef.App. 16-21, 45-47 [67:18-71:12, 72:11-74:24].)

22. Tayvin started a GoFundMe after he was falsely arrested to raise funds he believed were necessary to hire an attorney to pursue legal action. (Winters.Appx. 32-34 [96:21-98:8], 35 [99:7-15]; CCDef.App. 49.)

23. The only video on Tayvin's YouTube account is the one posted of his stop.

(CCDef.App. 91 - accessible at https://www.youtube.com/@tayvingalanakis/videos, last accessed on January 18, 2024.)

24. Before any ad revenue could be received from the YouTube video, it required Tayvin's account to have 1,000 subscribers with 4,000 valid public watch hours in the last 12 months. (CCDef.App. 93 - accessible at https://support.google.com/youtube/answer/72851?hl=en&ref_topic=9153642&sjid=17061516783357366761-NC, last accessed on January 18, 2024.)

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY: /s/ Adam C. Witosky
    Matthew M. Boles    AT0001037
    Adam C. Witosky    AT0010436
    2015 Grand Avenue, Suite 200
    Des Moines, Iowa 50312
    Telephone: (515) 235-0551
    Facsimile: (515) 243-3696
    Email:    mboles@gbswlaw.com
            awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on January 19, 2024. Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

/s/ Adam C. Witosky