UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>          Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, ROB BURDESS, NATHAN WINTERS, CHRISTOPHER WING, individually and in their official capacities with the Newton Police Department,<br>          Defendants.<br><hr><br>NATHAN WINTERS and CHRISTOPHER WING,<br>          Defendants/Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>          Plaintiff/Counterclaim Defendant. | No. <u>4:23-cv-00044-SHL-SBJ</u><br><br><br><br>**COUNTERCLAIM PLAINTIFFS NATHAN WINTERS AND CHRISTOPHER WING'S RESPONSE TO COUNTERCLAIM DEFENDANT TAYVIN GALANAKIS'S STATEMENT OF UNDISPUTED MATERIAL FACTS**<br><br><br><br>**FILED UNDER SEAL**<br><br><br><br><br><br>Removed from the District Court for Jasper County, Iowa, No. LACV123038 |

Under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.b.2., Counterclaim Plaintiffs Officer Nathan Winters ("Officer Winters") and Lieutenant Christopher Wing ("Lieutenant Wing") (together, "Counterclaimants") submit this Response to Counterclaim Defendant Tayvin Galanakis's ("Galanakis") Statement of Undisputed Material Facts Supporting Motion for Summary Judgment, Doc. 44-2.

**OBJECTION**

The Court should not allow Galanakis to rely on pages 21–70 and 101 of Galanakis's Appendix, Doc. 44-3, because Galanakis made no attempt to authenticate any of this evidence.

Under Local Rule 56.e., "a document included in an appendix must be authenticated properly, by affidavit or in some other lawful manner, or it may not be considered by the court in ruling on a motion for summary judgment." LR 56.e.; *see also Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 981–982 (S.D. Iowa 2011) (concluding a party could not rely on certain unauthenticated evidence to oppose summary judgment).

Because Galanakis did not even attempt to properly authenticate pages 21–67 and 101 of his Appendix, the Court should not allow him to rely on this evidence to support his Motion for Summary Judgment, Doc. 44.

**RESPONSES**

1.      On August 28, 2022, Newton Police Officer Nathan Winters and Lt. Christopher Wing stopped Tayvin Galanakis for using high beams in town and failing to dim them. (Appx. 4-5 [¶11-15], 10 [¶11-15], 79 [10:2-11], 81 [19:8-14].)

**RESPONSE:**  Admitted.

2.      Officer Winters conducted field tests for intoxication on Tayvin in the rain, at the end of which Tayvin took a preliminary breath test which revealed a 0.00 blood alcohol content. (Appx. 6 [¶33], 11 [¶33], 102 [Video 05:42-16:20].)

**RESPONSE:**  Admitted.  However, Counterclaimants contend these facts are not material. Further, Galanakis cited to page 102 of his Appendix to support this statement of fact, but his Appendix does not include 102 pages.  And to the extent Galanakis intended to cite page 101, he failed to authenticate the evidence included in that page, meaning he cannot rely on it.  *See* LR 56.e.

3.      Following the PBT, Officer Winters changed his allegations from alcohol intoxication to marijuana. (Appx. 102 [Video 15:59-16:20].)

**RESPONSE:**  Denied.  Galanakis cited to page 102 of his Appendix to support this statement of fact, but his Appendix does not include 102 pages.  And to the extent Galanakis intended to cite page 101, he failed to authenticate the evidence included in that page, meaning he cannot rely on it. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on page 101 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 3 as follows: admitted, in part, and denied, in part.  Counterclaimants deny that Officer Winters first affirmatively alleged Galanakis was intoxicated by alcohol, exclusively, and then later changed his mind to allege Galanakis was intoxicated by marijuana, exclusively.  Counterclaimants' Appx. 10; Counterclaimants' Appx. 11–14.  Counterclaimants admit that Officer Winters initially suspected Galanakis was impaired or intoxicated by alcohol, but not at the exclusion of all other drugs or substances.  Counterclaimants' Appx. 10; Counterclaimants' Appx. 11–14; Counterclaimants' Appx. 76, 87.  Counterclaimants admit that after Officer Winters administered a preliminary breath test ("PBT") to Galanakis, and after the PBT revealed that Galanakis was not under the influence of alcohol, Officer Winters no longer suspected Galanakis was intoxicated by alcohol, but Officer Winters still suspected Galanakis was impaired or intoxicated by another substance, including marijuana.  *Id*.

4.      Officer Winters cannot differentiate raw from burnt marijuana by smell. (Appx. 81 [18:1-5].)

**RESPONSE:**  Denied.  Galanakis Appx. 80, 18:1–15.  Officer Winters testified he did not know the difference between the *smell* of "burned marijuana" and "raw marijuana," not that he was incapable of determining the difference between the two.  *Id*.  Further, Galanakis's record citation does not support this statement of fact.

Counterclaimants also contend these facts are not material.

5.      Officer Andrew Shinkle, Newton Police Departments sole Drug Recognition Expert, subsequently determined Tayvin was not intoxicated, resulting in Tayvin being released without charges. (Appx. 7-8 [¶¶45-49], 12 [¶45-49].)

**RESPONSE:**  Admitted.

6.      Officer Winters received written counseling for his communication and demeanor with Tayvin during the stop. (Appx. 81 [19:8-15].)

**RESPONSE:**  Admitted, in part, and denied, in part.  Counterclaimants admit that Officer Winters received written counseling to be nicer to people.  Galanakis Appx. 80, 19:8–20. Counterclaimants deny that Officer Winters received written counseling regarding the propriety or manner in which he administered field sobriety tests to Galanakis.  *Id*.

7.      Tayvin made the allegedly defamatory statements on his social media. (Appx. 14 [¶¶12(a)-(e)], 16 [¶35(a)], 18 [¶¶12(a)-(e)], 20 [¶35(a)].)

**RESPONSE:**  Admitted, with the qualification that this statement of fact does not specify a particular alleged defamatory statement or particular social media platform.  Counterclaimants therefore admit that they allege Galanakis made several defamatory statements using various social media and internet platforms.

8.      Tayvin subsequently publicly clarified, "[a]lthough the officer may not have been convicted nor any charges filed, he did consent to have a civil no-contact/protective order placed on him by a former girlfriend … *for* domestic abuse. The order has been modified to allow him to use a gun while at work." (Appx. 15 [¶20], 19 [¶20].)

**RESPONSE:**   Admitted, in part, and denied, in part.   Counterclaimants admit that Galanakis retweeted the following comment on the social media platform Twitter: "[a]lthough the officer may not have been convicted nor any charges filed, he did consent to have a civil no-

4

contact/protective order placed on him by a former girlfriend … *for* domestic abuse. The order has been modified to allow him to use a gun while at work." Galanakis Appx. 15 ¶ 20; Galanakis Appx. 19 ¶ 20.   However, Counterclaimants deny that Galanakis clarified anything with this retweet or retracted or corrected his defamatory statements. *Id*.

9.     Between April 2020 and July 2021, ███████████████████████████████████████
███████████████████████████████████████. (Appx. 21-22 [¶4-12], 34-40.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 21–22 and 34–40 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 21–22 and 34–40 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 9 as follows: denied.  Counterclaimants' Appx. 16 ¶¶ 5–13.

10.     In April 2020, ███████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████. (Appx. 22 [¶11], 36.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 22 and 36 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 22 and 36 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 10 as follows: denied.  Counterclaimants Appx. 16 ¶ 7.

11.     In July 2020, ████████████████████████████████████
█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. (Appx. 22
[¶12], 38.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 22
and 38 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.
*See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 22 and 38 of his Appendix,
Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 11 as follows:
denied.  Counterclaimants Appx. 16 ¶ 8.

12.    Throughout the summer of 2020, ████████████████████████████
████████████████████████████████████████████████████████████
███████████████ (Appx. 22 [¶10], 38.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 22
and 38 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.
*See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 22 and 38 of his Appendix,
Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 12 as follows:
denied.  Counterclaimants Appx. 16 ¶ 9.

13.    In May 2021, ████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████. (Appx.
22 [¶9].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 22 of
his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

To the extent the Court permits Galanakis to rely on page 22 of his Appendix,

Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 13 as follows: denied. Counterclaimants Appx. 16 ¶ 10.

14.    In June 2021, ██████████████████████████████████

████████████████████████████████████████████████████████████

(Appx. 21 [¶7], 38.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 21 and 38 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 21 and 38 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 14 as follows: denied.  Counterclaimants Appx. 17 ¶ 11.

15.    In June 2021, ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ (Appx. 22 [¶8].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 22 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

To the extent the Court permits Galanakis to rely on page 22 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 15 as follows: denied.  Counterclaimants Appx. 17 ¶ 12.

16.    In July 2021, ██████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ (Appx. 21 [¶6], 36.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 21 and 36 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 21 and 36 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 16 as follows: denied. Counterclaimants Appx. 17 ¶ 13.

17.    In July 2021, ███████████████████████████████████████████████

██████████████████████████████████████████████████ (Appx. 21 [¶5], 35-36.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 21 and 35–36 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

To the extent the Court permits Galanakis to rely on pages 21 and 35–36 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 17 as follows: denied. Counterclaimants Appx. 17 ¶ 14; Galanakis Appx. 82, 25:12–14.

18.    ██████████████████████████████████████████████████

████████████████████████████████████ (Winters Ans. Rogs. 21, 22; Appx. 82 [21:19-24, 21:25-22:5, 23:24-24:22], 83-84 [25:15-21, 27:6-31:3], 85 [35:4-18, 36:10-16].)

**RESPONSE:** █████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███

19.    Ms. Van Der Hart filed a Petition for Relief from Domestic Abuse in August 2021. (Appx. 34-40.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 34–40 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 34–40 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 19 as follows: admitted, in part, and denied, in part. Counterclaimants Appx. 16–17; Galanakis Appx. 82, 25:12–14. Counterclaimants admit Ms. Van Der Hart filed a Petition for Relief from Domestic Abuse, but they deny the allegations contained in the Petition for Relief from Domestic Abuse. Counterclaimants Appx. 16–17; Galanakis Appx. 82, 25:12–14. No evidentiary proceeding was held to determine the truth of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse. Galanakis Appx. 52.

20. A Temporary Protective Order was issued. (Appx. 41-44.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 41–44 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 41–44 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 20 as follows: admitted, in part, and denied, in part. Counterclaimants Appx. 16–17; Galanakis Appx. 82, 25:12–14. Counterclaimants admit a Petition for Relief from Domestic Abuse was entered, but they deny the allegations contained in the Petition for Relief from Domestic Abuse. *Id*. No evidentiary proceeding was held to determine the truth of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse. Galanakis Appx. 52.

21.     Officer Winters consented to the entry of a Protective Order against him protecting Ms. Van Der Hart. (Appx. 45-47, 83 [25:22-24].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 45–47 and 83 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 45–47 and 83 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 21 as follows: admitted, in part, and denied, in part.  Counterclaimants Appx. 16–17; Galanakis Appx. 82, 25:12–14.  Counterclaimants admit Officer Winters consented to the entry of a Petition for Relief from Domestic Abuse, but they deny the allegations contained in the Petition for Relief from Domestic Abuse.  *Id*.  No evidentiary proceeding was held to determine the truth of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse.  Galanakis Appx. 52.

22.     Language was included in the Protective Order to permit Officer Winters to continue working: "Nothing in this Order Prohibits the Respondent from conducting official police business." (Appx. 46.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 46 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on page 46 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 22 as follows: admitted, in part, and denied, in part.  Counterclaimants Appx.16–17.  Counterclaimants admit the Protective Order by Consent Agreement states that "[n]othing in this Order prohibits the Respondent from conducting official police business," but they deny the allegations contained in

the Petition for Relief from Domestic Abuse. *Id.* No evidentiary proceeding was held to determine the truth or merit of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse. Galanakis Appx. 52.

23.     Absent this language, Officer Winters would be prohibited from carrying a firearm: "WARNINGS TO RESPONDENT: …Federal and state laws provide penalties for possessing, transporting, shipping, or receiving any firearm or ammunition." (Appx. 45.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in page 45 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on page 45 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 23 as follows: denied. Galanakis Appx. 45–46. Galanakis's Statement of Undisputed Material Fact No. 23 does not include a statement of fact but a legal conclusion based on the hypothetical absence of certain language from the Protective Order by Consent Agreement. *Id.*

Further, this statement is not at all material.

24.     A modified Protective Order was entered twelve days later specifying when Officer Winters could call dispatch and enter the building when Ms. Van Der Hart was on duty. (Appx. 48-50.)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 48–50 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 48–50 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 24 as follows: admitted, in part, and denied, in part. Galanakis Appx. 48–50. Counterclaimants admit a Cancellation,

Modification, or Extension of Chapter 236 Order was entered on October 13, 2021, but they deny the allegations contained in the underlying Petition for Relief from Domestic Abuse. Counterclaimants Appx. 16–17. No evidentiary proceeding was held to determine the truth of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse. Galanakis Appx. 52.

25.    Officer Winters consented to the extension of the Protective Order until February 22, 2024. (Appx. 51-53, 83 [27:3-5].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 51–53 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 51–53 and 83 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 25 as follows: admitted, in part, and denied, in part. Galanakis Appx. 51–53 and 83. Counterclaimants admit Officer Winters consented to the entry of a Cancellation, Modification, or Extension of Protective Order on February 22, 2023, but they deny the allegations contained in the underlying Petition for Relief from Domestic Abuse. Counterclaimants Appx. 16–17. No evidentiary proceeding was held to determine the truth of the allegations in the Petition for Relief from Domestic Abuse, and no court made any findings with respect to the allegations in the Petition for Relief from Domestic Abuse. Galanakis Appx. 52.

26.    Ms. Van Der Hart contacted Tayvin and ███████████████ ██ directed him to her civil action seeking the Protective Order, which he conflated with a conviction. (Appx. 63-66, 73-75 [67:18-71:12, 72:11-74:24].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 63–66 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 63–66 and 73–75 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 26 as follows: admitted, in part, and denied, in part. Galanakis Appx. 63–66, 73–75. Counterclaimants admit Ms. Van Der Hart contacted Galanakis and notified him about the civil proceeding in which she sought a protective order. *Id.* Counterclaimants deny that Ms. Van Der Hart told Galanakis that Officer Winters abused her. *Id.* Counterclaimants also deny that Galanakis misunderstood or conflated the civil proceeding in which Ms. Van Der Hart sought a protective order with a criminal conviction because Ms. Van Der Hart told Galanakis "I didn't file any charges or anything i petitioned for the no contact order civilly." Galanakis Appx. 64–65.

27.     Tayvin's statements about Officer Winters' physical and mental fitness were insults regarding the stop of Tayvin and the performance of field testing. (Appx. 67-70, 76 [82:3-83:23].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in pages 67–70 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 67–70 and 76 of his Appendix to sufficiently support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 27 as follows: denied. Galanakis Appx. 76. The record citation does not support this statement of fact. Galanakis testified that his statement that Officer Winters was "on the slow side of the spectrum," specifically, was an "insult." *Id.*

28.     Officer Winters admits he arrested Tayvin after learning he had 0.00 blood alcohol content with Tayvin being ultimately released when Newton's own DRE officer determined

Tayvin showed no signs of intoxication. (Appx. 6 [¶33], 7-8 [¶46-49], 11 [¶33], 12 [¶46-49].)

**RESPONSE:**  Admitted, with the qualification that Officer Winters arrested Galanakis after administering several field sobriety tests, one of which was a preliminary breath test that showed Galanakis had a 0.00 blood alcohol content.  Counterclaimants Appx. 10, 11–14.

29.    After Tayvin's release, Lt. Wing questioned Officer Winters' competence to perform stops and intoxication testing. (Appx. 54-56.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 54– 56 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 54–56 of his Appendix, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 29 as follows: denied.  Galanakis Appx. 54–56; Counterclaimants Appx. 68–69.  The record citation does not support the statement that Lieutenant Wing questioned Officer Winters's competence to perform traffic stops or intoxication testing.  Galanakis Appx. 54–56.  Dr. Lance Platt, Galanakis's own expert witness, testified that Officer Winters's field sobriety tests were "administered correctly." Counterclaimants Appx. 68–69.

Further, this statement of fact is not material.

30.    Lt. Wing also admitted when Officer Winters accused Tayvin of having used marijuana after the preliminary breath test came back 0.00, "I should have questioned Officer Winters as to what his observations were and how they lead him to believe [Tayvin] was impaired." (Appx. 55, 92 [27:1-14].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 55 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e. Further, page 92 of Galanakis's Appendix in no way supports this statement of fact.  Galanakis Appx.

92. And to the extent Galanakis intended to cite page 91 of his Appendix to support this statement of fact, it also provides no support. Galanakis Appx. 91, 27:1–14. Page 91, lines 1 through 14 include testimony from Chief Rob Burdess that he did not have a conversation with Lieutenant Wing about a particular subject. *Id.* The language quoted by an attorney in lines 1 through 14 lacks foundation and authentication and is improper testimony from counsel. *Id.*

Further, this statement of fact is not material.

31.     Lt. Wing admits that when he spoke with Officer Shinkle, the Drug Recognition Expert for the Newton Police Department, he was told Tayvin was the third individual that shift whom Officer Winters had requested Officer Shinkle examine. (Appx. 56, 88 [8:8-15], 89 [9:6-9], 92 [25:18-24].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in page 56 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e. Further, pages 88, 89, and 92 of Galanakis's Appendix in no way support this statement of fact. Galanakis Appx. 88, 89, 92.

Only to the extent the Court permits Galanakis to rely on pages 56, 88, 89, and 92 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 31 as follows: Counterclaimants admit that at some point Wing was advised that Officer Winters asked Officer Shinkle to conduct three DRE evaluations during one of Officer Winters's shifts. Counterclaimants deny the remaining statements of fact included in Galanakis's Statement of Undisputed Material Fact No. 31. Galanakis Appx. 56.

Further, this statement of fact is not material.

32.     For the first two, Officer Shinkle declined to perform testing after looking at and speaking with the individuals. (Appx. 56, 91 [19:21-20:9], 92 [25:24-26:1].)

**RESPONSE:** Denied. Galanakis failed to authenticate the evidence included in page 56 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact. *See* LR 56.e.

Further, pages 91 and 92 of Galanakis's Appendix in no way support this statement of fact.  Galanakis Appx. 88, 89, 92.

Only to the extent the Court permits Galanakis to rely on pages 56, 91, and 92 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 32 as follows: Counterclaimants admit that Officer Shinkle did not conduct a DRE evaluation on two individuals for which Officer Winters requested testing.  However, Counterclaimants deny the remaining statements of fact included in Galanakis's Statement of Undisputed Material Fact No. 32.  Galanakis Appx. 56.

Further, this statement of fact is not material.

33.    This revelation caused Lt. Wing to state: "This worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him. I'm afraid this could happen again…" (Appx. 56, 92 [26:3-5].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 56 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e. Further, page 92 of Galanakis's Appendix in no way supports this statement of fact.  Galanakis Appx. 92.

Only to the extent the Court permits Galanakis to rely on pages 56 and 92 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 33 as follows: Counterclaimants admit that at some point, Officer Wing wrote "[t]his worries me as Officer Winters does a lot of OWI's and I have had a lot of faith in him.  I'm afraid this could happen again, and plan on meeting with Officer Winters to discuss this concern."  However, Counterclaimants deny the remaining statements of fact included in Galanakis's Statement of Undisputed Material Fact No. 33.  Galanakis Appx. 56.

Further, this statement of fact is not material.

34.     It is known that Officer Winters frequently requests Officer Shinkle to perform testing. (Appx. 91 [19:10-12].)

**RESPONSE:**  Denied.  Page 91 of Galanakis's Appendix does not support this statement of fact.  Galanakis Appx. 91.

Only to the extent the Court permits Galanakis to rely on page 91 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 34 as follows: Counterclaimants admit Officer Winters engages with Officer Shinkle frequently, but Counterclaimants deny that it is generally "known" that Officer Winters "frequently requests Officer Shinkle to perform testing."  Galanakis Appx. 90, 19:10–12.

Further, these facts are not material.

35.     After Tayvin had been cleared by Officer Shinkle, Officer Winters wanted to continue bringing charges against him. (Appx. 56, 80 [15:22-16:18].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 56 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.  Further, page 80 of Galanakis's Appendix in no way supports this statement of fact.  Galanakis Appx. 80.

Only to the extent the Court permits Galanakis to rely on pages 56 and 80 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 35 as follows: Counterclaimants deny that Officer Winters wanted to continue bringing charges against Galanakis.  Galanakis Appx. 56.  Officer Winters simply asked Lieutenant Wing if charges should be brought.  *Id*.

Further, these facts are not material.

36.     At the time Officer Winters stopped and tested Tayvin, he had been disciplined approximately five months earlier for a motor vehicle accident. (Appx. 81 [19:25-20:3].)

**RESPONSE:** Denied. Page 81 of Galanakis's Appendix in no way supports this statement of fact. Galanakis Appx. 81

Only to the extent the Court permits Galanakis to rely on page 81 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 36 as follows: Admitted, in part, and denied, in part. Counterclaimants admit that Officer Winters was disciplined in April 2022 for failing to properly secure a vehicle, but Counterclaimants deny the remaining facts stated in Galanakis's Statement of Undisputed Material Fact No. 36. Galanakis Appx. 80, 19:21–20:3.

Further, these facts are not material. They are also inadmissible under Rule 402 of the Federal Rules of Evidence.

37.    At the time Officer Winters stopped and tested Tayvin, he had been disciplined twenty-five days earlier for failing to secure a vehicle from which $600.00 went missing. (Appx. 81 [19:21–24].)

**RESPONSE:** Denied. Page 81 of Galanakis's Appendix in no way supports this statement of fact. Galanakis Appx. 81

Only to the extent the Court permits Galanakis to rely on page 81 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 37 as follows: Admitted, in part, and denied, in part. Counterclaimants admit that Officer Winters was suspended in August 2022 in connection with a motor vehicle accident, but Counterclaimants deny the remaining facts stated in Galanakis's Statement of Undisputed Material Fact No. 37. Galanakis Appx. 80, 19:21–20:3.

Further, these facts are not material. They are also inadmissible under Rule 402 of the Federal Rules of Evidence.

38.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████ (Appx. 28, 30, 31.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 28, 30, and 31 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 28, 30, and 31 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 38 as follows:  Admitted, in part, and denied, in part.  Counterclaimants admit that Lieutenant Wing knew that Ms. Van Der Hart filed a complaint about Officer Winters and that she alleged Officer Winters engaged in inappropriate conduct toward her, including inappropriate physical conduct that she alleged was abusive.  Counterclaimants deny the remaining statements of fact contained in Galanakis's Statement of Material Fact No. 38.  Galanakis Appx. 28–33.

Further, these facts are not material.

39.    Chief Burdess was informed of this as well. (Appx. 27, 31, 93 [31:3-8].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 27 and 31 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on pages 27 and 31 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 39 as follows:  Admitted, in part, and denied, in part.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Counterclaimants deny the remaining statements of fact contained in Galanakis's Statement of Material Fact No. 38.  Galanakis Appx. 27, 31, 92.

█

Further, these facts are not material.

40.    Her complaint was not sustained because Newton's investigator decided, "Someone was telling the truth and someone was lying," and that she said/he said cases meant there was no probable cause to file charges.  (Appx. 33, 94 [34:2-35:25], 95 [37:16-38:2].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 33 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e. Further, pages 94 and 95 of Galanakis's Appendix do not support this statement of fact.

Only to the extent the Court permits Galanakis to rely on pages 33, 94, and 95 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 40 as follows: denied.  Galanakis Appx. 33, 94, 95.  The statement that "[s]omeone is telling the truth and someone is lying" appears in an unauthenticated document in Galanakis's Appendix, and it was made in connection with a specific incident at Corn Fed Crossfit.  This statement was not the sole basis for not sustaining Ms. Van Der Hart's complaint, as stated in Galanakis's Statement of Undisputed Material Fact No. 40.  Also, there is no support in Galanakis's Appendix for the statement of fact that the City of Newton's investigator decided that he said/she said cases mean there is no probable cause to file charges.  Galanakis Appx. 33.

Further, these facts are not material.

41.    Only Chief Burdess has disciplinary authority: "Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed." (Appx. 62, 90 [14:11-15].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 62 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e. Further, page 90 of Galanakis's Appendix does not support this statement of fact.

Only to the extent the Court permits Galanakis to rely on pages 62 and 90 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 41 as follows: admitted, in part, and denied, in part.  Counterclaimants admit that Chief Burdess, in his capacity as the City of Newton's Chief of Police, has the authority to appropriately discipline Newton police officers for certain conduct.  Counterclaimants deny the remaining statements of fact in Galanakis's Statement of Undisputed Material Fact No. 41.  Galanakis Appx. 62, 90.

Further, these facts are not material.

42.     Chief Burdess bears "ultimate authority and responsibility for the release of information to the media[.]" (Appx. 61.)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in page 61 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.

Only to the extent the Court permits Galanakis to rely on page 61 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 42 as follows: admitted.

However, this fact is not material.

43.     Lieutenants within the Newton Police Department are second in the command structure, with only four officers of this rank, responsible for ensuring professional standards and involved in the process of setting department policy and staffing levels, amongst other duties. (Appx. 57-60, 88 [7:17-21], 90 [14:1-15].)

**RESPONSE:**  Denied.  Galanakis failed to authenticate the evidence included in pages 57–60 of his Appendix, meaning he cannot rely on that evidence to support this statement of fact.  *See* LR 56.e.  Further, pages 88 and 90 of Galanakis's Appendix do not support this statement of fact.

Only to the extent the Court permits Galanakis to rely on pages 57–60, 88, and 90 of his Appendix to support this statement of fact, Counterclaimants respond to Galanakis's Statement of Undisputed Material Fact No. 43 as follows: admitted, in part, and denied, in part.  Counterclaimants admit lieutenants within the City of Newton Police Department are second in the organizational structure of the police department and that the City of Newton Police Department has four lieutenants.  Counterclaimants further admit that lieutenants are responsible for ensuring the officers under their command are aware of revisions to the City of Newton Police Department's Policy Manual, that lieutenants are responsible for forwarding suggested revisions to the Policy Manual to command staff, and that lieutenants are responsible for establishing minimum staffing levels.  Counterclaimants deny the remaining statements of fact in Galanakis's Statement of Undisputed Material Fact No. 43.  Galanakis Appx. 57–60.

44.     Officer Winters and Chief Burdess agree the public has the right to criticize and complain about the officers of the Newton Police Department, and the Department itself, including calling for the public to contact the Department about an officer, and even be rude or profane while doing it. (Appx. 84-85 [32:18-65:2], 92-93 [27:15-29:20].)

**RESPONSE:**  Admitted, in part, and denied, in part.  Counterclaimants admit that Officer Winters and Chief Burdess testified the public has a right to criticize and complain about a police officers' job performance and the City of Newton Police Department, including using rude and profane language.  Counterclaimants further admit Officer Winters and Chief Burdess testified individuals may encourage the public to contact the City of Newton Police Department about certain complaints or criticisms.  Counterclaimants deny that individuals may defame police officers or the City of Newton Police Department.  Galanakis Appx. 92, 29:4–29:20; Galanakis Appx. 84, 33:5–34:1.

Dated: January 18, 2024.

By:   */s/ Nicholas F. Miller*
        Matthew S. Brick, AT0001081

Erin M. Clanton, AT0002592
Douglas A. Fulton, AT0002672
Nicholas F. Miller, AT0015361
**BRICK GENTRY, P.C.**
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
T: (515) 274-1450
F: (515) 274-1488
matt.brick@brickgentrylaw.com
erin.clanton@brickgentrylaw.com
doug.fulton@brickgentrylaw.com
nick.miller@brickgentrylaw.com

Counsel for Counterclaim Plaintiff
NATHAN WINTERS

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2023, a true copy of COUNTERCLAIM PLAINTIFFS NATHAN WINTERS AND CHRISTOPHER WING'S RESPONSE TO COUNTERCLAIM DEFENDANT TAYVIN GALANAKIS'S STATEMENT OF UNDISPUTED MATERIAL FACTS was electronically filed using the Court's CM/ECF system, which sent notice to counsel of record, as follows:

Matthew M. Boles
Adam C. Witosky
GRIBBLE, BOLES, STEWART &
WITOSKY LAW
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
mboles@gbswlaw.com
awitosky@gbswlaw.com
Counsel for Plaintiff/Counterclaim Defendant

/s/    *Nicholas F. Miller*
       **Nicholas F. Miller, AT0015361**