## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **TAYVIN GALANAKIS,**<br>        Plaintiff,<br><br>v.<br><br>**CITY OF NEWTON, IOWA, et al.,**<br>        Defendants. | **CASE NO. 4:23-cv-00044**<br><br><br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT'S SUPPLEMENTAL REPLY APPENDIX FOR SUMMARY JUDGMENT ON COUNTERCLAIMS** |
| **NATHAN WINTERS AND CHRISTOPHER WING,**<br>        Counterclaim Plaintiffs,<br><br>v.<br><br>**TAYVIN GALANAKIS,**<br>        Counterclaim Defendant. | <br>***FILED UNDER SEAL*** |

**COMES NOW** the Plaintiff/Counterclaim-Defendant and for this Appendix

Resisting Counterclaim Plaintiff's Motion for Partial Summary Judgment provides:

### TABLE OF CONTENTS

**Second Affidavit of Courtney Van Der Hart** .......................................................... 3

**Excerpts from Deposition of Tayvin Galanakis** .................................................... 9

**Excerpts from Deposition of Nathan Winters (Confidential)**......................... 13

**Excerpts from Deposition of Lance Platt** ............................................................ 16

**Lance Platt Deposition Ex. 1** ................................................................................. 22

**Web Capture of Tayvin Galanakis' YouTube Page** ........................................... 24

**YouTube Partner Program overview & eligibility Page** .................................. 25

**Newton Police Department Policy Manual Preface**..........................................**29**

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY:_____*/s/ Adam C. Witosky*_____

Matthew Boles          AT0001037
Adam C. Witosky          AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Fax: (515) 243-3696
Email: mboles@gbswlaw.com
      awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**

<u>**PROOF OF SERVICE**</u>

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on January 19, 2024.  Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties can view and download the presented or filed document.

_____*/s/ Adam C. Witosky*_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>CITY OF NEWTON, IOWA, et al.,<br>Defendants/Counterclaim<br>Plaintiff. | CASE NO. 4:23-cv-00044<br><br><br>SECOND AFFIDAVIT OF<br>COURTNEY VAN DER HART |

**COMES NOW** the Affiant, Courtney Van Der Hart, and after being duly sworn the undersigned deposes and states:

1.     I am an adult and fully competent to make this Affidavit, which I do voluntarily.

2.     I am not a party to this action and do not have an interest in it.

3.     On August 29, 2022, I saw a post by Tayvin Galanakis on Facebook about his having been falsely arrested by Officer Nathan Winters of the Newton Police Department.

4.     After seeing the post, I contacted Mr. Galanakis via Facebook Messenger and told him about my having gotten a protective order for relief from domestic abuse against Officer Winters.

5.     I directed Mr. Galanakis to the Iowa Courts Online docket for my civil case.

6.     The screenshots attached to this Affidavit are true and accurate copies of messages I exchanged with Mr. Galanakis.

Further, the Affiant sayeth naught.

I, Courtney Van Der Hart, on this 17th day of January 2024, do hereby certify under oath that the contents set forth herein are true and correct.

_Courty VanDuHt_
Courtney Van Der Hart

STATE OF IOWA           )
                        )  ss:
COUNTY OF POLK          )

On this 17th day of January 2024, before me, a Notary Public in and for said County and State, personally appeared Courtney Van Der Hart, known by me to be the person in the above-entitled action.

_Michael Alter_
Notary Public - State of Iowa

MICHAEL EMANUEL ALTER
Commission Number 831181
My Commission Expires
4/5/24



Yep at the very bottom

Where it says petition for relief of domestic abuse. He has a protective order against him and still works as a cop



Oh I do see that

Thank you so much

Please dont put my name into any of this. Im the protected party and i work at the sheriffs office so its extremely messy but someone sent me your post and it made me so mad. Thats 100% nathan and hes always doing that shit. Violating peoples right. Treating people like shir. Its aggravating. I dealt with that for 2 years and it disgusts me hes able to treat the people he deals with like that also

Its all public information you just looked

Don't worry I won't

Thank you so much



I really appreciate it

 No problem!



Does this means its over now

Is that your name

Damn he abused you ?

I didnt file any charges or anything i petitoned for the no contact order civilly. Yeah after court was done it goes to closed or dismissed or whatever the outcome is. So thats why it shows closed. So he has it for a year from the d___ it was closed. So he still has it

Supp.Appx.5

I didnt file any charges or anything I petitoned for the no contact order civilly. Yeah after court was done it goes to closed or dismissed or whatever the outcome is. So thats why it shows closed. So he has it for a year from the date it was closed. So he still has it until October 1st

So basically he goes to domestics and arrests people for doing the same thing he does.

Hes able to have his gun while at work

Wow and the newton police department still allows him to go around

Yep.

It's caused a ton of issues. Our departments work together.

AUG 29, 2022 AT 5:33 PM

Thank you for that information. I wish my post was getting more publicity

AUG 29, ⬇ T 7:51 PM

AUG 29, 2022 AT 7:51 PM



Same. Thats why i figured i would message you. He just keeps getting away with acting like that. Im glad you spke out

AUG 29, 2022 AT 8:33 PM

I'm going to sue



Im glad you are apeaking up! I hope cheif is cooperative with you. This is not the first time winters has done this. I've thought for a long time he is violating peoples rights.

I doubt the chief will do anything. This guy has been complained about so many times. Plus he's still an officer after abusing you. They must have a good relationship

Winters hasn't been there long. Half the problem is you cant find police officers so its hard for departments to let them go. Last hiring they had 1 kid pass everything and hes already gone.

I will say and if you have a lawyer maybe ask him b·    ·ould not sign anything without      lawyers ok. I

```
 1              UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
 2                    CENTRAL DIVISION

 3
      - - - - - - - - - - - - - - - - -
 4   TAYVIN GALANAKIS,              :
                                    :        COPY
 5        Plaintiff,               :
     vs.                            : Case No.
 6                                  : 4:23-cv-000044
                                    :
 7   CITY OF NEWTON, IOWA, ROB     :
     BURDESS, NATHAN WINTERS,       :
 8   CHRISTOPHER WING, individually:
     and in their official         :
 9   capacities with the Newton    :
     Police Department,             :
10                                  :
          Defendants.              :
11    - - - - - - - - - - - - - - - - -
     NATHAN WINTERS and             :
12   CHRISTOPHER WING,              :
                                    :
13        Counterclaim Plaintiffs, :
                                    :
14   vs.                            :
                                    :
15   TAYVIN GALANAKIS,              :
                                    :
16        Counterclaim Defendant.  :
      - - - - - - - - - - - - - - - - -
17

18     VIDEO-RECORDED DEPOSITION OF TAYVIN GALANAKIS,

19   taken by the Defendants/Counterclaim Plaintiffs

20   before Jessi C. Lass, Certified Shorthand Reporter

21   of the State of Iowa, at 6701 Westown Parkway, Suite

22   100, Des Moines, Iowa, commencing at 2:14 p.m.,

23   Friday, November 10, 2023.

24

25        JESSI C. LASS - CERTIFIED SHORTHAND REPORTER
```

Case 4:23-cv-00044-SHL-SBJ    Document 71-2    Filed 01/19/24    Page 10 of 29

TAYVIN GALANAKIS vs CITY OF NEWTON, et al.
TAYVIN GALANAKIS  11/10/2023                                    Pages 2..5

Page 2

```
 1          A P P E A R A N C E S
 2  For the Plaintiff/Counterclaim Defendant:
 3       CHRISTOPHER C. STEWART, ESQ.
         GRIBBLE, BOLES, STEWART & WITOSKY LAW FIRM
 4       2015 Grand Avenue, Suite 200
         Des Moines, Iowa 50312
 5
 6  For the Defendants/Counterclaim Plaintiffs:
 7       NICHOLAS F. MILLER, ESQ.
         BRICK GENTRY PC
 8       6701 Westown Parkway, Suite 100
         West Des Moines, Iowa 50266
 9
10  Videographer:
         AMY COOPER
11       FIDELITY VIDEO SERVICES, INC.
12  Also present:
         NATHAN WINTERS
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1       T A B L E  O F  C O N T E N T S
 2  WITNESS: TAYVIN GALANAKIS                      PAGE
 3  Examination By Mr. Miller ........................5
 4  Examination By Mr. Stewart ....................120
 5
 6  EXHIBITS                               PAGE FIRST
                                           REFERENCED
 7  1  - Body cam video (City ID 00630) .............20
 8  2  - NAIA drug-testing policy manual ............56
 9  3  - Video (City ID 00627) ......................65
10  4  - 8/29/22 Facebook post by Galanakis .........75
11  5  - Facebook comment string ....................87
12  6  - 11/1/22 Facebook post by Galanakis .........91
13  7  - GoFundMe page for Galanakis ................96
14  8  - William Penn University "Drug Education ...114
           and Testing Program Policy"
15
    CERTIFICATE OF REPORTER.........................123
16
17  Reporter's Note:  The original exhibits were
    forwarded to Mr. Miller.
18
    (ph) indicates a phonetic spelling.
19  [sic] indicates the text is as stated.
    Quoted text is as stated by the speaker.
20
21
22
23
24
25
```

Page 4

```
 1          P R O C E E D I N G S
 2       (Exhibit Numbers 1 through 8 were marked
 3  for identification.)
 4       THE VIDEOGRAPHER:  Today's date is
 5  November 10th, 2023, and the approximate time is
 6  2:14 p.m.  This begins the video deposition of
 7  Tayvin Galanakis requested by the defendants and
 8  counterclaim plaintiffs regarding Case
 9  Number 423-cv-00044 in the United States District
10  Court for the Southern District of Iowa, Central
11  Division.  This deposition is being held in the
12  offices of Brick Gentry, located at 6701 Westown
13  Parkway, Suite 100, in West Des Moines, Iowa.
14       My name is Amy Cooper, certified legal
15  videographer of Fidelity Video Services,
16  Incorporated, West Des Moines, Iowa.
17       Counsel will please identify themselves
18  for the record.
19       MR. STEWART:  Chris Stewart for the
20  plaintiff/counterclaim defendant.
21       MR. MILLER:  Nicholas Miller for the
22  defendants and the counterclaim plaintiffs.
23       THE VIDEOGRAPHER:  The oath will now be
24  administered by Jessi Lass, certified shorthand
25  reporter of Susan Frye Court Reporting, Des Moines,
```

Page 5

```
 1  Iowa.
 2              TAYVIN GALANAKIS,
 3  the Plaintiff, being first duly sworn by the
 4  certified shorthand reporter, testified under oath
 5  as follows:
 6              EXAMINATION
 7  BY MR. MILLER:
 8    Q.  State your name.
 9    A.  My name is Tayvin Galanakis.
10    Q.  Can you spell your first and last name.
11    A.  First name, T-a-y-v-i-n, last name,
12  G-a-l-a-n-a-k-i-s.
13       MR. MILLER:  Thank you.
14    Q.  (Mr. Miller)  Where do you reside?
15    A.  I live in Newton, Iowa.
16    Q.  Are you employed?
17    A.  Yep.
18    Q.  Where?
19    A.  Self-employed, Amazon.
20    Q.  Are you employed by Amazon?  Or explain
21  that.
22    A.  I run a business for Amazon.
23    Q.  Explain that a little bit more.
24    A.  So I do wholesale.  It's my own business.
25  I don't have an LLC, but Dawn dish soap, wholesale
```

Case 4:23-cv-00044-SHL-SBJ    Document 71-2    Filed 01/19/24    Page 11 of 29

TAYVIN GALANAKIS vs CITY OF NEWTON, et al.
TAYVIN GALANAKIS  11/10/2023                                    Pages 26..29

Page 26

1    A.    (Nods head.)

2    Q.    But in any case, you had something on your
3  phone that you thought was proof of your auto
4  insurance?

5    A.    Yes.

6    Q.    So if you had proof of insurance on your
7  phone the whole time, why didn't you provide that to
8  Officer Winters when he first asked you for proof of
9  insurance?

10    A.    I knew there was an email version and
11  there was a physical version.  I just happened to
12  have the physical version as the expired insurance.

13    Q.    Is it possible that it just took you some
14  time to remember that you had an email on your phone
15  showing proof of insurance?

16    A.    No.

17    Q.    You knew you had it the whole time?

18    A.    Can you explain on that?

19    Q.    Well, you knew from the time Officer
20  Winters first asked you for proof of insurance that
21  you had an email version on your phone?

22    A.    I did not -- I did not know that.

23    Q.    You didn't know when he first asked you
24  for proof of insurance?

25    A.    I didn't know that I wouldn't have the

Page 27

1  physical version.  I knew I had an email version,
2  but I thought I would also have the physical
3  version.

4    Q.    And then -- so then it was once you
5  realized you didn't have the physical copy that you
6  resorted to the email version?

7    A.    Correct.

8    Q.    So why not just provide him the email
9  version from the beginning?

10    A.    I didn't want to make any sudden movements
11  towards my phone.  I just wanted --

12    (Reporter clarification.)

13    A.    -- any sudden movements toward my phone,
14  because I believe it was in my lap, and instead I
15  did what he told me, which was getting my
16  registration and insurance.  And, generally, that's
17  in the glove compartment, and that's what I did.

18    Q.    (Mr. Miller)  So the reason you didn't
19  initially provide him the email version of your
20  proof of insurance was because you didn't want to
21  make a sudden movement toward your phone?

22    A.    Can you repeat that question?

23    MR. MILLER:  Can you read that back.

24    (The pending question was read by the
25  reporter.)

Page 28

1    A.    That's not the initial reason.

2    Q.    (Mr. Miller)  What was the reason?

3    A.    The initial reason why I didn't go to the
4  email version was because I thought I had the
5  physical version.

6    Q.    Why were your eyes red and watery when
7  Officer Winters pulled you over?

8    A.    To me they weren't red and watery.  That's
9  just opinion-based.

10    Q.    How do you know?

11    A.    How do I know they weren't red and watery?

12    Q.    Yes.

13    A.    There's a mirror, and it's like right --
14  it's connected to the glass of your screen.  It's
15  your rearview mirror.  And once he said that, I
16  mean, I could've easily just looked into that mirror
17  and seen that my eyes weren't red.

18    Q.    So if you at the time believe your eyes
19  weren't red and watery, why didn't you say that?

20    A.    I mean, I already knew.  I had nothing to
21  prove.

22    Q.    But why didn't you tell Officer Winters
23  that your eyes -- that you didn't believe your eyes
24  were red and watery after he had asked you why they
25  were?

Page 29

1    A.    I don't remember exactly what I told him
2  after he said my eyes were red and watery, but I'm
3  pretty sure that triggered a response in me to be
4  conflicted and say, "Wow, is this guy really -- does
5  he really think I'm drunk right now, or is
6  he really -- does he think I'm high?  Because I know
7  for a fact that I'm not either of that.  So why
8  would my eyes be red and watery?"  That's how I
9  would internally know or easily look into that
10  mirror and just see that my eyes are not red.  I
11  mean, the video shows my eyes are not red and
12  watery.

13    Q.    Well, you never told Officer Winters that
14  you didn't believe your eyes were red and watery
15  that night, did you?

16    A.    I don't remember.

17    Q.    You don't remember whether you told him
18  whether you believed your eyes were red or watery?

19    A.    No.

20    Q.    Do you remember what you did tell him?

21    A.    At the end of the night, towards the end
22  of the altercation, before I got arrested, I did
23  tell him it was -- the reason they could possibly be
24  watery is because I just got done looking up in the
25  sky while it was pouring out.  So when you're doing

TAYVIN GALANAKIS vs CITY OF NEWTON, et al.
TAYVIN GALANAKIS  11/10/2023                                                      Pages 122..123

Page 122

1    A.   Yes.
2         Q.   (Mr. Stewart)  Were you upset with the
3    defendants' actions in their transportation of you
4    and the interactions you had at the police station?
5              MR. MILLER:  Object to the form of the
6    question.
7    A.   Yes.
8         Q.   (Mr. Stewart)  Did you believe the conduct
9    of the defendants at both the scene and at the
10   station were improper or unlawful?
11             MR. MILLER:  Object to the form of the
12   question.
13   A.   Yes.
14             MR. MILLER:  These are all leading
15   questions.
16             Go ahead.
17   A.   Yes.
18             MR. STEWART:  Nothing further from me.
19             MR. MILLER:  I have nothing.
20             THE VIDEOGRAPHER:  Off the record, ending
21   the deposition at 5:17 p.m.
22
23
24
25

Page 123

1              C E R T I F I C A T E
2         I, the undersigned, a Certified Shorthand
3    Reporter of the State of Iowa, do hereby certify
4    that there came before me at the time, date, and
5    place hereinbefore indicated, the witness named on
6    the caption sheet hereof, who was by me duly sworn
7    to testify to the truth of said witness's knowledge,
8    that the witness was thereupon examined under oath,
9    the examination taken down by me in shorthand and
10   later reduced to a transcript through the use of a
11   computer-aided transcript device under my
12   supervision and direction, and that the deposition
13   is a true record of the testimony given and of all
14   objections interposed.
15        I further certify that I am neither attorney or
16   counsel for, nor related to or employed by any of
17   the parties to the action in which this deposition
18   is taken, and further that I am not a relative or
19   employee of any attorney or counsel employed by the
20   parties hereto or financially interested in the
21   action.
22        Dated this 19th day of November 2023.
23
24   _____
         CERTIFIED SHORTHAND REPORTER
25       Jessi C. Lass, Iowa CSR #1336

CONFIDENTIAL

**Page 1**

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
 2                   CENTRAL DIVISION

 3   TAYVIN GALANAKIS,      )CASE NO.: 4:23-cv-00044
                            )
 4       Plaintiff/Counterclaim )
         Defendant,         )DEPOSITION OF
 5                          )NATHAN WINTERS
     vs.                    )(CONFIDENTIAL)
 6                          )
     CITY OF NEWTON, IOWA,  )
 7   et al.,                )
                            )
 8       Defendants/Counterclaim )
         Plaintiffs.        )
 9   _____)

10          THE DEPOSITION OF NATHAN WINTERS, taken

11   before Emma L. Rosky, Certified Shorthand

12   Reporter and Registered Professional Reporter for

13   the State of Iowa, commencing at 1:17 p.m.,

14   October 27, 2023, at 2015 Grand Avenue,

15   Suite 200, Des Moines, Iowa.
```

CONFIDENTIAL

**Page 2**

```
 1                A P P E A R A N C E S

 2   Plaintiff/Counterclaim
     Defendants by:      MATTHEW BOLES
 3                       Attorney at Law
                         Gribble, Boles, Stewart &
 4                       Witosky Law
                         2015 Grand Avenue
 5                       Suite 200
                         Des Moines, IA 50312
 6

 7   Defendants/Counterclaim
     Plaintiffs by:      NICHOLAS F. MILLER
 8                       Attorney at Law
                         Brick Gentry, P.C.
 9                       6701 Westown Parkway
                         Suite 100
10                       West Des Moines, IA 50266
```

CONFIDENTIAL

**Page 3**

```
 1              INDEX OF EXAMINATION

 2   Examination by          Page

 3   Mr. Boles                4

 4   Mr. Miller              39

 5

 6              PREVIOUSLY MARKED
                   EXHIBITS
 7   Exhibit
     Name        Description              Page
 8   Exhibit 1   Internal Investigation    16

 9
10   Exhibit 4   Petition for Relief from
                 Domestic Abuse            25
```

```
16          INDEX OF ATTORNEY REQUESTS

17   Request by          Page      Line

18   Mr. Boles            32        8
```

CONFIDENTIAL

**Page 4**

```
 1                 NATHAN WINTERS,

 2   called as a witness, having been first duly

 3   sworn, testified as follows:

 4               DIRECT EXAMINATION

 5   BY MR. BOLES:

 6   Q.   ██████████████████████████████

 7

 8   A.   ███████████

 9   Q.   ████  ████████████  ████████

10   A.   ███████████████████████████

11   Q.   ███████████████████████████

12

13   A.   ██████████

14   Q.   ████████████████████████████

15

16   A.   ███████

17   Q.   ███████████████████████████

18   ████████████████████

19   A.

20   Q.   ██████████████████████████

21   ██████████████████

22   A.   ███████

23   Q.   ██████████████████████████

24   A.   ██████████████████████████
```

Supp.Appx 12

CONFIDENTIAL

1
2
3
4          MR. MILLER:
5
6     A.
7     Q.
8
9     A.
10    Q.
11    A.
12    Q.
13
14    A.
15    Q.
16
17
18    A.
19    Q.
20
21
22    A.
23    Q.
24
25

CONFIDENTIAL

1
2          MR. MILLER:
3
4     A.
5     Q.
6
7
8
9
10
11         MR. MILLER:
12
13    A.
14    Q.
15
16
17
18    A.
19    Q.
20
21
22    A.
23
24
25

CONFIDENTIAL

1
2     Q.
3
4
5     A.
6     Q.
7
8
9
10    A.
11
12
13
14
15
16    Q.
17
18
19         MR. MILLER:
20
21    A.
22    Q.
23
24
25

CONFIDENTIAL

1
2     A.
3     Q.
4
5     A.
6
7
8     Q.
9
10
11
12
13
14    A.
15    Q.
16
17
18    A.
19    Q.
20
21    A.
22    Q.
23    A.
24    Q.
25

**Supp.Appx 13**



1              C E R T I F I C A T E

2

3         I, Emma L. Rosky, a Certified Shorthand
          Reporter of the State of Iowa and Registered
4         Professional Reporter, do hereby certify that
          there came before me at the time, date, and place
5         hereinbefore indicated, the witness named on the
          caption sheet hereof, who was by me duly sworn to
6         testify to the truth of said witness's knowledge,
          touching and concerning the matters in
7         controversy in this cause; that the witness was
          thereupon examined under oath, the examination
8         taken down by me in shorthand, and later reduced
          to printed form under my supervision and
9         direction, and that the deposition is a true
          record of the testimony given and of all
10        objections interposed.

11        I further certify that I am neither attorney
          or counsel for, or related to or employed by any
12        of the parties to the action in which this
          deposition is taken, and further that I am not a
13        relative or employee of any attorney or counsel
          employed by the parties hereto or financially
14        interested in the action.

15

16        Dated at Des Moines, Iowa, this 11th day of

17        December, 2023.

18

19

20

21              /s/ Emma L. Rosky

22              CERTIFIED SHORTHAND REPORTER,
                and REGISTERED PROFESSIONAL
23              REPORTER

24

25

          SWEENEY COURT REPORTING (515) 244-6373
       320 Insurance Exchange Bldg., Des Moines, IA 50309

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

TAYVIN GALANAKIS,                     §
    Plaintiff,                    §
                                  §
V.                                    §  CASE NO. 4:23-cv-00044
                                  §
CITY OF NEWTON, IOWA, ROB BURDESS,§
NATHAN WINTERS, CHRISTOPHER WING,     §
INDIVIDUALLY AND IN THEIR             §
OFFICIAL CAPACITIES WITH THE          §
NEWTON POLICE DEPARTMENT,             §
    Defendants.                   §
                                  §
  ------------------------------    §
                                  §
NATHAN WINTERS AND CHRISTOPHER        §
WING,                                 §
    Defendants/Counterclaim       §
    Plaintiffs,                   §
                                  §
V.                                    §
                                  §  Removed from the
TAYVIN GALANAKIS,                     §  District Court for
    Plaintiff/Counterclaim        §  Jasper County, Iowa
    Defendant.                    §  No. LACV123038

_____

ORAL AND VIDEOTAPED DEPOSITION OF
LANCE PLATT
NOVEMBER 3, 2023
VOLUME 1 of 1

_____

    ORAL AND VIDEOTAPED DEPOSITION OF LANCE PLATT,
produced as a witness at the instance of the Defendants
City of Newton and Rob Burdess and Defendants/Counterclaim
Plaintiffs Nathan Winters and Christopher Wing and duly
sworn, was taken in the above-styled and numbered cause on
the 3rd day of November, 2023, from 9:07 a.m. to 11:56
a.m., before Laurin Rainer, Certified Shorthand Reporter
in and for the State of Texas, reported by computerized
stenotype machine, at the offices of Associated Court
Reporters, 1716 Briarcrest Drive, Suite 300, Bryan, Texas
77802, pursuant to the Federal Rules of Civil Procedure
and the provisions stated on the record or attached
hereto.

## LANCE PLATT - November 03, 2023

---

Page 2

```
1                    APPEARANCES
2 FOR THE DEFENDANTS CITY OF NEWTON AND ROB BURDESS AND
  DEFENDANTS/COUNTERCLAIM PLAINTIFFS NATHAN WINTERS AND
3 CHRISTOPHER WING:
4     Mr. Nicholas F. Miller
      Brick Gentry, P.C.
5     6701 Westown Parkway
      Suite 100
6     West Des Moines, Iowa 50266
      Telephone: (515)274-1450 - Fax: (515)274-1488
7     Email: nick.miller@brickgentrylaw.com
8 FOR THE PLAINTIFF/COUNTERCLAIM DEFENDANT TAYVIN GALANAKIS:
9     Mr. Matthew M. Boles
      Matthew M. Boles
10    Gribble, Boles, Stewart & Witosky Law
      2015 Grand Avenue
11    Suite 200
      Des Moines, Iowa 50312
12    Telephone:  (515)644-6852
      Email: mboles@gbswlaw.com
13
14 ALSO PRESENT:
15    Ms. Myra Thetford, Videographer
16
17
18
19
20
21
22
23
24
25
```

---

Page 3

```
1                     INDEX
2                                               PAGE
3 Appearances ........................................    2
4 LANCE PLATT
5     Examination by Mr. Nicholas F. Miller ..........    4
6 Reporter's Certificate .............................  102
7
8                    EXHIBITS
9 NO.  DESCRIPTION                                 PAGE
10 1   Platt and Associates Technical Report ........   13
11 2   Body cam video ...............................   20
12 3   William Penn University Sports Medicine Department
        Drug Education and Testing Program Policy ......   90
13
   4   National Association of Intercollegiate Athletics
14     National Administrative Council Drug Testing
        Policy Manual ..................................   93
15
16
17
18
19
20
21
22
23
24
25
```

---

Page 4

```
1                 P R O C E E D I N G S
2          THE VIDEOGRAPHER:  Today is Friday,
3 November 3rd, 2023.  We're on the record at 9:07 a.m.
4          THE REPORTER:  Pursuant to Federal Rules of
5 Civil Procedure 30(b)(5)(A)(i), this is the deposition of
6 Lance Platt.  Today's date is November 3, 2023, and the
7 time is 9:07.
8          My name is Laurin Rainer, Registered
9 Professional Reporter, Certified Shorthand Reporter in the
10 state of Texas, CSR No. 8307.  My business address is
11 Associated Court Reporters, 1225 North Loop West, Suite
12 327, Houston, Texas 77008.
13          This deposition is being conducted at the
14 offices of Associated Court Reporters, 1716 Briarcrest
15 Drive, Suite 300, Bryan, Texas 77802.
16          Those present at this deposition include
17 the following persons:  Mr. Nicholas Miller, Mr. Matthew
18 Boles, Dr. Lance Platt, and Ms. Myra Thetford.
19          I will now administer the oath.  Will you
20 raise your right hand for me?  Do you solemnly swear or
21 affirm that the testimony you are about to give in this
22 matter will be the truth, the whole truth, and nothing but
23 the truth, so help you God?
24          THE WITNESS:  Yes, ma'am.
25                          *
```

---

Page 5

```
1                    LANCE PLATT,
2 having been first duly sworn, testified as follows:
3                   EXAMINATION
4 BY MR. MILLER:
5     Q.   State your name.
6     A.   Lance Platt, P-l-a-t-t.
7     Q.   Are you employed?
8     A.   I am.
9     Q.   Where?
10    A.   I am a self-employed consultant.  The name of my
11 company is Platt and Associates.
12    Q.   What would you consider your profession?
13    A.   I evaluate cases, criminal and civil cases,
14 mainly impaired driving, also police practices and
15 procedures, including use of force.
16    Q.   Is the curriculum vitae that you provided with
17 your expert report in this case current and up-to-date?
18    A.   Yes, sir.
19    Q.   How did you get into drug recognition or the
20 field that you're in now?
21    A.   I was a police officer in College Station,
22 Texas, which is right next to where we are, and left there
23 in 1999.  I went to work for the Texas Engineering
24 Extension Service, which is part of Texas A&M University.
25 While I was there, I served several capacities.  I was a
```

---

Supp.Appx.16

**LANCE PLATT - November 03, 2023**

Page 10

1  Q.    Now I'm asking about a ten-year.

2  A.    Okay.  Ten -- within the ten years, I would say
3  I probably have given five to ten depositions.  I don't
4  know the exact amount.  I do -- I did submit some -- the
5  cases that I've testified in, but I don't know the exact
6  number of depositions.  But I've testified as an expert
7  and been qualified well over 300 times.

8  Q.    Over the course of how many years?

9  A.    Since 2002.

10  Q.    In any of those cases, have you opined or
11  concluded that the person subject to the field sobriety
12  testing was impaired or intoxicated?

13  A.    That happens a lot when I do evaluations of
14  cases.  Now, I do -- I do up front evaluations of -- of a
15  case.  Many times -- and I say many times -- the case is
16  no good for me.  I mean, I -- I -- they hire me to look at
17  it, and I look at it, and I make a decision.  And if I
18  feel like I can help, I help.  If I can't, I can't.  But
19  I'm very forward with them, like, this is what this is,
20  this is what I see.  That's the only way that you can be
21  because there is no other way.

22         So I do an evaluation, you know, an up
23  front evaluation of the case.  The testimony and the
24  deposition is me.  I mean, I will not do it unless I want
25  to.  So it -- it's -- it's up to me, and the attorneys

Page 11

1  know that up front when I talk to them.

2  Q.    So for the cases in which you are deposed or the
3  cases in which you testify in court, how many of those --
4  in how many of those have you concluded that the person
5  subject to the field sobriety testing was impaired or
6  intoxicated?

7  A.    In court, it would be all of them.

8  Q.    You concluded that the person subject to the
9  testing was impaired or intoxicated?

10  A.    No, was -- was not impaired.

11  Q.    Was not.  Explain your process when you're
12  retained as an expert witness for evaluating the field
13  sobriety testing.

14  A.    Usually, it's a contact, you know, through the
15  phone or through the -- through the internet, and I'll
16  contact the attorney and tell them what I do.  It usually
17  takes some explanation because there's not a ton of people
18  out there that -- that do exactly what -- what I do.  And
19  we'll talk about the case, and I'll tell them up front I
20  do an up front evaluation, and there is no way around
21  that.  I mean, I do an evaluation up front, and this is
22  what it costs.  If you don't want to do it, then we can go
23  ahead and hang up.

24         I do that for two reasons.  Number one is
25  to protect the client.  Number two is to protect me.

Page 12

1  Because there may be times, like you said, when I see that
2  they're impaired, I'm like, "Here, here's my report, but I
3  I'm not going to testify."

4         I'll get the discovery in that they want me
5  to look at.  When I say "they," I'm talking about the
6  attorneys.  And I'll look at the discovery, and then I'll
7  compile a report, send the report back to the attorney,
8  and then we go from there.

9  Q.    When you say you look at the discovery, what
10  types of things are you talking about?

11  A.    I get case reports, video.  Mainly, my stuff
12  that I look at is what happened on the street.  You know,
13  it -- it's the arrest report, any supplemental arrest
14  reports to what happened on the street, if there were
15  field sobriety that was done out on the street, if there
16  was a drug recognition expert exam that was done away from
17  the street.  So my stuff is really contained to -- to the
18  actual enforcement -- the law enforcement out on the
19  street.  That -- that's my -- my scope.

20  Q.    So you -- you said arrest reports.  You would
21  review --

22  A.    Yes, sir.

23  Q.    -- those documents?  What other documents would
24  you review?

25  A.    Arrest reports, I look at toxicology reports

Page 13

1  sometimes, any supplemental reports that the officers turn
2  in, anything to do with booking.  Booking.  Anything like
3  that that has law enforcement related to it, I look at it.

4  Q.    Do you ever review videos?

5  A.    I do.

6  Q.    What kind?

7  A.    Arrest videos, in car, I've reviewed videos from
8  jails, but usually it's the in car video that I look at
9  because in -- with a OWI, you have the three phases.  You
10  know, and you have the video, and a lot of it starts when
11  the person is driving.  So I do look at the video from
12  start to finish.  Now, some cases don't have video.  You
13  know, those are difficult because there's really
14  nothing -- nothing to look at.  But the ones that have
15  video, I do.  I -- I look at the video from start to
16  finish, and that's what my report is based on.

17  Q.    What about officer body cam videos?  Do you
18  normally review those?

19  A.    Yes, any -- any -- any video.

20         (Exhibit 1 marked)

21  Q.    (BY MR. MILLER) Dr. Platt, I'm going to hand you
22  what's been marked as Defense Deposition -- I'm sorry --
23  Platt Deposition 1, Exhibit 1.  What is that?

24  A.    That is what I refer to as a Technical Report
25  for Mr. Matthew Boles for Tayvin Galanakis.

**LANCE PLATT - November 03, 2023**

Page 14

1    Q.    Did you create Platt Deposition Exhibit 1?

2    A.    Yes, I did.

3    Q.    Is Platt Deposition Exhibit 1 a true and

4 accurate copy of the report that you authored in this

5 case?

6    A.    Yes, sir.

7    Q.    In connection with your report in this case,

8 what resources did you review?

9    A.    I looked at the video of the scene, I believe,

10 and then I looked at the -- the arrest report that they

11 had out on the street.  Let's see.  The case report and

12 the video.  That's -- that's -- that's what I looked at.

13 I try to keep my scope tight.  I mean, that's -- that's --

14 that's what -- what I looked at.  That's what I --

15    Q.    Were there any pieces of literature or other

16 resources that you rely on when you're authoring your

17 report?

18    A.    I look at the -- the NHTSA, the National Highway

19 Traffic Safety Administration, or NHTSA, manuals, the --

20 the manuals that the officers use in their training.  I --

21 I reference from those and look at those, also, because

22 that's what the officers are trained out of.

23    Q.    You're referring to the NHTSA FSST manual [sic]?

24    A.    SFST.

25    Q.    What does SFST stand for?

Page 15

1    A.    Standardized field sobriety testing.

2    Q.    What version of the NHTSA SFST manual did you

3 rely on in authoring your report?

4    A.    I looked at the 2018 manual, as when the arrest

5 was made in 2022, the 2023 manual hadn't been released

6 yet, but there is a 2023 manual out there, but I

7 referenced the -- I usually reference the manual -- or

8 always reference the manual that the officers used at the

9 time that they were trained in and at the time that the

10 arrest was made.  So NHTSA spreads those manuals out.

11 Every four or five years, they a release a new one.  So at

12 the time this arrest was made, it was the 2018.

13    Q.    That would have been the most --

14    A.    The most recent.

15    Q.    -- current version?

16    A.    Yes, sir.

17    Q.    Are you familiar -- when did the 2023 version

18 get published?

19    A.    They had a -- they had a release of that to the

20 trainers, I think, in 02 of '23, but it wasn't released

21 out to the officers, gosh, until I think the -- the June

22 or July, maybe August of '23, or maybe even later than

23 that.  I know -- I think there were some problems with

24 some of the editing and stuff like that, so.

25    Q.    Since its publication, have you reviewed the

Page 16

1 2023 version of the NHTSA SFST manual?

2    A.    I have.  I actually taught a class, a 2023

3 class.

4    Q.    Are there meaningful differences between the

5 2023 version and the 2018 version?

6    A.    No, not really.  I mean, if you look at field

7 sobriety testing as -- as a whole, they really can't

8 change anything because if you did, you would have to

9 revalidate, and NHTSA is not going to do that, in my

10 opinion.  So other than there being some -- they changed

11 some definitions of some words, some of the stuff is

12 changed, and I'm -- the statistics are changed.  In 2018,

13 they were really heavy on cannabis.  They like to -- they

14 they're -- they're moving towards a drugged driving.

15        So there were a few minor changes that were

16 made; but as far as the tests go and the validity of the

17 tests, that's been the same since 1977.  That hasn't

18 changed at all, and they're still alcohol tests.

19    Q.    What other resources or pieces of literature did

20 you review in preparing your report in this case?

21    A.    I looked at the NHTSA manuals, mainly.  That's

22 about all that I used.  After the report was done and

23 turned in, another -- a -- a peer reviewed and published

24 study came out from the Journal of the American Medical

25 Association, and I did look at that, and I believe I told

Page 17

1 Mr. Boles about that, that study.

2    Q.    To prepare your report and your opinions in this

3 case, did you review or consult any Advanced Roadside

4 Impaired Driving Enforcement manuals?

5    A.    I may have looked at the ARIDE manual kind of,

6 but it was mainly SFST because that's what happened out on

7 the street.

8    Q.    When you say "ARIDE," that's the Advanced

9 Roadside --

10    A.    Yeah.  I'm sorry.

11    Q.    -- Impaired Driving Enforcement?

12    A.    Yes, sir.  I'm sorry.  That's what that stands

13 for, A-R-I-D-E.

14    Q.    No worries.  Just making a record.  Okay.  And

15 remind me:  Why did you not consult that piece of

16 literature?

17    A.    I looked -- I looked at it.  I know that some of

18 the tests that he did were from the ARIDE protocol, but I

19 was familiar with that anyway.  I knew the protocol.  The

20 main tests that he did -- the horizontal gaze, walk and

21 turn, and one leg stand -- are alcohol specific tests.

22 Standardized field sobriety tests.  So that -- that's why

23 I looked at the SFSTs mainly.

24    Q.    Did you review or consult any manuals other than

25 drug recognition expert manuals, particularly ones from

Page 18

1 the IACP?

2　**A.　No, sir, I -- I kept it in -- all within the**

3 **NHTSA -- NHTSA realm.**

4　Q.　What is the IACP?

5　**A.　Internal Association of Chiefs of Police.**

6　Q.　Did you review Matt Bruner's expert report that

7 was authored in this case?

8　**A.　I did.  I did look at that, yes.**

9　Q.　Based on all the information, literature, and

10 materials you reviewed in connection with this case, did

11 you reach any opinions?

12　**A.　I did.**

13　Q.　Specifically, what are your opinions?

14　**A.　My opinion specifically is that on this night,**

15 **Mr. Galanakis was not under the influence of cannabis.**

16　Q.　Did you reach any other opinions?

17　**A.　As far as being under the influence?  No.  I**

18 **don't believe he -- he shouldn't have been arrested.  He**

19 **was not under the influence and -- which was proven later**

20 **by the drug recognition person, but that was my -- that**

21 **was my end result, was that he shouldn't have been**

22 **arrested.  I didn't see a loss of mental or physical**

23 **faculty that I believe rose to the level of a drug.  I**

24 **didn't believe he was under the influence of cannabis,**

25 **which I have seen people under the influence of**

Page 19

1 **cannabis -- cannabis before.  I believe they got into an**

2 **argument, and this was the end result of the argument.  So**

3 **that's -- that was my opinion.**

4　Q.　Any other opinions?

5　**A.　No, sir.**

6　Q.　Do you plan on forming any additional opinions?

7　**A.　I don't plan on it, no.**

8　Q.　To prepare your expert report, which has been

9 previously marked as Platt Deposition Exhibit 1, did you

10 review any videos?

11　**A.　Yes.  There was a video of the scene, the stop**

12 **video.**

13　Q.　What kind of video was that?

14　**A.　That was the video where they had stopped him**

15 **and -- and got him out and were -- were conversing and**

16 **talking with him, where you actually saw all three of**

17 **the -- the people on video.**

18　Q.　Was it a body camera?

19　**A.　I believe it was a body cam.  There was also a**

20 **dashcam, but the body cam was the one that got the most**

21 **interaction between the two.**

22　Q.　There were two officers on the scene --

23　**A.　Right.**

24　Q.　-- is that right?

25　**A.　Right.**

Page 20

1　Q.　Do you remember which officer's body cam video

2 you reviewed?

3　**A.　I believe it was the -- I don't think it was the**

4 **lieutenant.  I believe it was the -- the -- the arresting**

5 **officer that I looked at.**

6　Q.　Would that be Officer Nathan Winters?

7　**A.　Winters is his last name, yeah.  And I think**

8 **Wing was the lieutenant.  Lieutenant Wing.**

9　Q.　Do you recall if the body cam video from Officer

10 Winters' body was identified by a Bates number?

11　**A.　I don't know.**

12　　　　(Exhibit 2 marked)

13　Q.　(BY MR. MILLER) Dr. Platt, I'm going to show you

14 a thumbnail of Officer Winters' -- the beginning

15 of Officer --

16　**A.　Uh-huh.**

17　Q.　-- Winters' body cam video.  Does that, to you,

18 look like an accurate thumbnail of the very beginning of

19 the video that you reviewed?

20　**A.　Based on my recollection, yeah, it looks -- it**

21 **looks familiar.  But, yes, his body cam activated inside**

22 **of the vehicle.  It looks -- it looks familiar, yes.**

23　Q.　In the bottom left-hand corner of the video

24 screen there, do you see a Bates number?

25　**A.　When you say "Bates," what are you talking**

Page 21

1 about?

2　Q.　Do you see a reference down there, City I.D. --

3　**A.　Yeah, City I.D. 00630.**

4　Q.　Was the video that you reviewed to prepare your

5 report similarly marked with that identifier?

6　**A.　You know what?  I don't remember.**

7　Q.　Okay.  I'm handing you back Platt Deposition

8 Exhibit No. 1 [sic], which is the body cam video from

9 Officer Winters.  Can you go ahead and play through that

10 and let me know if that's a copy of the video that you

11 reviewed to prepare your report in this case?

12　**A.　Yeah, I --**

13　Q.　Go ahead.

14　**A.　Just here?**

15　Q.　It's touch, or you can use -- I'm sorry.

16 It's -- what I'm showing you is Platt Deposition Exhibit

17 2, not Deposition Exhibit 1.

18　**A.　Okay.**

19　Q.　Which I'll just note for the record.  So go

20 ahead and play through that until you can confirm that's a

21 copy of the video that you reviewed in connection with

22 this case.

23　**A.　It's not playing.  Do you need a Mac?  Sorry.  I**

24 **have a Mac, Mac Book.**

25　Q.　And you can skip to different portions of that

Page 102

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
 2                    CENTRAL DIVISION
 3  TAYVIN GALANAKIS,              §
        Plaintiff,                 §
 4                                 §
    V.                             § CASE NO. 4:23-cv-00044
 5                                 §
    CITY OF NEWTON, IOWA, ROB BURDESS,§
 6  NATHAN WINTERS, CHRISTOPHER WING, §
    INDIVIDUALLY AND IN THEIR       §
 7  OFFICIAL CAPACITIES WITH THE    §
    NEWTON POLICE DEPARTMENT,       §
 8      Defendants.                §
                                   §
 9  ----------------------------   §
                                   §
10  NATHAN WINTERS AND CHRISTOPHER  §
    WING,                          §
11      Defendants/Counterclaim    §
        Plaintiffs,                §
12                                 §
    V.                             §
13                                 § Removed from the
    TAYVIN GALANAKIS,              § District Court for
14      Plaintiff/Counterclaim     § Jasper County, Iowa
        Defendant.                 § No. LACV123038
15
             _____
16
                    REPORTER'S CERTIFICATION
17          ORAL AND VIDEOTAPED DEPOSITION OF
                       LANCE PLATT
18                   NOVEMBER 3, 2023
             _____
19
20      I, LAURIN RAINER, Certified Shorthand Reporter in and
21  for the State of Texas, hereby certify to the following:
22      That the witness, Lance Platt, was duly sworn by the
23  officer and that the transcript of the oral deposition is
24  a true record of the testimony given by the witness;
25
```

Page 103

```
 1      That the original deposition transcript was delivered
 2  to Mr. Nicholas F. Miller;
 3      That a copy of this certificate was served on all
 4  parties and/or the witness shown herein on
 5  November 17, 2023.
 6      I further certify that pursuant to FRCP No. 30(e)(2)
 7  that the signature of the deponent:
 8      _____ was requested by the deponent or a party before
 9  the completion of the deposition and that the signature is
10  to be returned within 30 days from the date of receipt of
11  the transcript.  If returned, the attached Correction Page
12  contains any changes and the reasons therefor;
13      __X__ was not requested by the deponent or a party
14  before the completion of the deposition.
15      I further certify that I am neither counsel for,
16  related to, nor employed by any of the parties in the
17  action in which this proceeding was taken, and further
18  that I am not financially or otherwise interested in the
19  outcome of the action.
20      Certified to by me this 17th day of November, 2023.
21          /s/ Laurin Rainer, CSR

             _____
22          Laurin Rainer, CSR, RPR
            Texas CSR No. 8307, expires 05/31/2024
23          Associated Court Reporters
            Firm Register No. 29
24          Waco, Texas 76701
            Telephone: (254)753-3330
25
```

# PLATT and ASSOCIATES

**IMPAIRED DRIVING CONSULTING**
**4343 Carter Creek Parkway, Suite 120**
**Bryan, TX 77802**

979 846-3950 - office                                   web: www.impaireddrivingexpert.com
979 412-2346 - cell                                     email: lance@impaireddrivingexpert.com

**July 1, 2023**

**Mr. Matthew Boles**
**Attorney at Law**

| Re: | Re: | **Tayvin Galanakis** |
| --- | --- | --- |
| | Agency/Case Number | **Newton Police Department/22-25845** |
| | Court | |
| | County | **Jasper** |
| | Offense | **Operating While Intoxicated (OWI drugs)** |
| | Date of Offense | **August 28, 2022** |

Dear Mr. Boles:

At your request, I have reviewed the OWI case report and video; I have analyzed Mr. Galanakis' performance on the three phases of OWI detection including the standardized field sobriety tests that were given to him in the field by the officer. I have, also, evaluated the officer's performance, regarding the administrative requirements that are required by the National Highway Traffic Safety Administration (NHTSA) and the International Association of Chiefs of Police (IACP) in order for the tests to be considered standardized in accordance with the test battery protocol.

Attached to this letter, you will find a detailed technical report based upon the information that was provided in the officer's case report and video submitted on the night of the arrest. The technical report will outline the activities of the officer and the defendant as the events unfold. My comments will follow.

If you need clarification of any point, please feel free to contact me.

If there is anything further that Platt and Associates can do for you in the future, please feel free to contact us at your convenience. It was a pleasure to assist you; and we look forward to a continued relationship with you and your legal practice.

Sincerely,

**Lance A. Platt, Ph.D.**

Lance A. Platt, Ph.D.
Platt and Associates


EXHIBIT
Platt Depo
1

**Observations of Examiner:** Based upon my observation of the submitted video and case report, it is my opinion that Mr. Galanakis does not exhibit physical and/or mental difficulty while being contacted by the officer that I would associate with any type of drugs or alcohol including Cannabis.

Lieutenant Wing whom I believe to have been on scene with officer Winters wrote in his supplemental report that after the DRE evaluation he was told by officer's Shinkle and Winters (who has just arrested him right in front of Lieutenant Wing) that officer Shinkle found no signs of impairment, officer Winters asked Lieutenant Wing if he should charge him, he had been arrested. Lieutenant Wing allegedly told officer Winters absolutely not, that if a DRE evaluation showed no evidence, then we weren't going to charge him and that we should give him his property back and take him to his car so he can be on his way." This is the same police officer (supervisor) who witnessed the entire event at the scene including the arrest of Mr. Galanakis for OWI, some of the same "tests" (Romberg, FTN, LOC, HGN) were administered to Mr. Galanakis in the field which were observed by Lieutenant Wing, the same tests were administered on the DRE evaluation by officer Shinkle. Lieutenant Wing stated in his supplemental report that Mr. Galanakis was released to his mom with no charges.

*All opinions stated herein are stated to a reasonable degree of professional certainty within the fields of my expertise of law enforcement training and procedures including the NHTSA standardized field sobriety testing, drug evaluation and classification and advanced roadside impaired driving enforcement programs administration, scoring and training protocols required in the successful completion of the student and instructor courses, including both standardized and non-standardized tests, the conduct and training of impaired driving investigations, and the NHTSA standardized protocols involving both alcohol and/or drugs other than alcohol.*

Sincerely,

**Lance A. Platt, Ph.D.**

Lance A. Platt, Ph.D.
Platt and Associates



# YouTube Partner Program overview & eligibility



We're expanding the YouTube Partner Program (YPP) to more creators with earlier access to fan funding and Shopping features. The expanded YouTube Partner Program is available to eligible creators in these countries/regions. The expansion is rolling out over the next month to eligible creators in AE, AU, BR, EG, ID, KE, KY, LT, LU, LV, MK, MP, MT, MY, NG, NL, NO, NZ, PF, PG, PH, PT, QA, RO, RS, SE, SG, SI, SK, SN, TC, TH, TR, UG, VI, VN, and ZA. If you're in one of the countries/regions above, check out this article to learn more about the changes to YPP.

If you're not in one of the countries/regions above, there are no changes to the YouTube Partner Program for you.

Check your eligibility for the expanded YouTube Partner Program. If you're not eligible yet, select **Get notified** in the Earn    area of YouTube Studio. We'll send you an email once we've rolled the expanded YPP program to you and you've reached the eligibility thresholds.

The YouTube Partner Program (YPP) gives creators greater access to YouTube resources and monetization features, and access to our Creator Support teams. It also allows revenue sharing from ads being served on your content. Learn more about the features, eligibility criteria, and application details in this article.



Want to apply to YPP, but need help building an audience first? Check out our tips to establish your fanbase, and our tips for the YouTube Partner Program.

# What you need to join

1. Follow the YouTube channel monetization policies.

a. These are a collection of policies and guidelines that allow you to monetize on YouTube, and compliance with them is required when you accept a partner agreement with YouTube.

2. Live in a country/region where the YouTube Partner Program is available.
3. Have no active Community Guidelines strikes on your channel.
4. Make sure 2-Step Verification is turned on for your Google Account.
5. Have advanced features access on YouTube.
6. Have one active AdSense account that you'll link to your channel, or be ready to set one up in YouTube Studio if you don't already have one (only create a new AdSense account in YouTube Studio – learn more).

## How you can become eligible

Once you understand what you need to join, your channel can become eligible for YPP with either Shorts or long-form video. If you'd like us to notify you when you're eligible, click **Notify me when I'm eligible** in the Earn area of YouTube Studio. You'll get an email once you've met either of the below eligibility thresholds.

1. Get 1,000 subscribers with 4,000 valid public watch hours in the last 12 months, **or**
2. Get 1,000 subscribers with 10 million valid public Shorts views in the last 90 days.

# YouTube Partner Program Eligibility



Keep in mind that any public watch hours from Shorts views in the Shorts Feed won't count towards the 4,000 public watch hours threshold.

## More on eligibility thresholds

These thresholds help us make a more informed decision about whether your channel meets our policies and guidelines. Once you apply, your channel will go through a standard review process to see whether your channel meets our policies and guidelines. If it meets our policies and guidelines, we'll accept your channel into YPP. Keep in mind we continuously check channels in YPP to make sure they continue to meet our policies and guidelines over time.

## Where to apply

Once you have what you need and your channel is eligible to apply, sign up for YPP from either a desktop computer or a mobile device:

Computer    Android    iPhone & iPad

1. Sign in to **YouTube**
2. In the top right, click your profile picture  ›  **YouTube Studio**
3. In the left menu, click **Earn**
4. Select **Apply** to get started
5. Click **Start** to review and **Accept** Base terms
6. Click **Start** to set up an AdSense account, or link an existing active one

Once done, you'll see **In Progress** in the Get Reviewed step, which means we have your application!

## How we review your application

Once you accept YPP terms and link an active AdSense account, your channel will automatically be put in a review queue. Our automated systems and human reviewers will review your channel as a whole to make sure your channel follows all of our policies and guidelines. Check back in the **Earn** section of YouTube Studio anytime to see the status of your application.

> We'll get back to you with a decision once your channel is reviewed (**typically in about 1 month**).
>
> Keep in mind delays are possible due to higher-than-usual application volumes, system issues, or resource limitations. All YPP applications are serviced in the order they're received by us. Sometimes channels require multiple reviews, especially when several reviewers disagree on your channel's suitability for YPP. This may increase the time required for a decision to be made.

If your first application wasn't successful, don't worry - you can appeal the decision within 21 days or keep uploading original content and you'll be able to re-apply after a 30-day period. If this isn't your first application to be rejected, or you've previously re-applied, you can try again after a 90-day period. Our reviewers likely found that a significant portion of your channel doesn't currently follow our policies and guidelines, so be sure to review those against your channel's overall content and adjust your channel before re-applying. Learn more about steps you can take to strengthen your application for next time.

## Choose how to earn and get paid

Once you're in YPP, get started in YouTube Studio with Watch Page Ads, Shorts Feed Ads, Memberships, Supers, Shopping, and more. To turn on monetization features, you'll need to review and accept the relevant module terms. Learn more about the modules and their options here.

After choosing how you want to monetize, you'll be able to manage ad preferences, turn on monetization for your uploads, and more. Here's a list of FAQs that we get from creators who have just joined YPP.

**Getting paid**

Visit our Help Center for an easier understanding of your earnings as a YouTube partner, learn all about AdSense (Google's program that lets creators in YPP get paid), and troubleshoot common payment issues.

**Stay active to keep making money**

As the YouTube Partner Program continues to grow, it's important to maintain a healthy, active ecosystem of channels. To focus our support for creators who are active and engaged with the community, we may turn off monetization on channels that haven't uploaded a video or posted to the Community tab for **6 months or more**.

## FAQs around applying and more

**Supp.Appx 26**

What if I don't meet the program threshold?

What do "valid public watch hours" and "valid public Shorts views" mean?

If I meet the threshold, do I automatically get into YPP?

What happens if my counts drop below the threshold after I apply?

I'm no longer in YPP (or I was never in the program) and I'm seeing ads on my videos. Am I earning revenue from those ads?

## Newton Police Department
### Policy Manual

**CHIEF OF POLICE PREFACE**

The Newton Police Department Policy Manual represents the best practices of modern police procedures. These policies serve to establish and communicate expectations, provide guidelines for daily operations, and validate the principles and our core values of "Excellence and Integrity" which guide individual and collective performance.

No policy manual can adequately address every conceivable scenario, nor should it. The policies contained herein are to provide a framework for decision making that will foster a constructive culture internally and allow employees to be successful  in fulfilling their mission. This manual contains a significant amount of information that reflects the latest statutory requirements and the current goals and functions of the Department.

All employees are required to abide by these policies, but should not feel that they are so constrained by them as to eliminate creativity in problem solving. These policies are a tool used when making decisions so that the outcome is aligned with Department expectations and are in the best interest of the community. It is important that each employee know and apply these policies in order to ensure the very best team approach to policing in the City of Newton.

Rob Burdess, Chief of Police

Copyright Lexipol, LLC 2023/04/28, All Rights Reserved.
Published with permission by Newton Police Department

**Supp.Appx 28**

CITY RFP 01400