IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TAYVIN GALANAKIS,<br><br>        Plaintiff,<br><br>  vs.<br><br>CITY OF NEWTON, IOWA; and ROB BURDESS, NATHAN WINTERS, and CHRISTOPHER WING, individually and in their official capacities with the Newton Police Department,<br><br>        Defendants.<br><hr>NATHAN WINTERS,<br><br>        Counterclaim Plaintiff,<br><br>  vs.<br><br>TAYVIN GALANAKIS,<br><br>        Counterclaim Defendant. | 4:23-cv-00044-SHL-SBJ<br><br><br>**ORDER GRANTING MOTION TO BIFURCATE TRIAL OF CLAIMS AND COUNTERCLAIMS** |

## I.    INTRODUCTION.

This case involves two sets of analytically distinct claims: (i) state and federal law claims by Plaintiff Tayvin Galanakis for allegedly being arrested without probable cause, and (ii) state law defamation and invasion of privacy claims by Defendant Nathan Winters based on Galanakis's statements on social media that Winters was "convicted of domestic abuse after beating up his ex-girlfriend." Defendants argue—and the Court agrees—that the claims and counterclaims should be bifurcated for trial to avoid the risk of prejudice to Winters and his co-Defendants from having the evidence on Galanakis's claims infected by evidence of Winters's alleged domestic abuse. The Court therefore GRANTS their Motion to Bifurcate Trial of Claims and Counterclaims. (ECF 98.) Trial will proceed in two phases before a single jury, with the first phase addressing Galanakis's claims and the second phase addressing Winters's counterclaims.

## II.    BACKGROUND.

### A.  Procedural History.

Galanakis originally filed this case in state court alleging that Winters and Wing unlawfully arrested him without reasonable suspicion or probable cause. (ECF 1-1, ¶¶ 9–54.) His claims against Winters and Wing arose under 42 U.S.C. § 1983; article I, section 8 of the Iowa Constitution; and Iowa common law. (Id., ¶¶ 55–76, 93–102.) He also brought claims against the City of Newton and Chief of Police Rob Burdess. (Id., ¶¶ 77–92, 103–116.) Following removal of the case to federal court, Winters and Wing filed counterclaims against Galanakis for defamation, making false complaints, invasion of privacy, and intentional infliction of emotional distress. (ECF 1; ECF 3.) The Court dismissed some of the counterclaims on a motion to dismiss but left partially intact Winters's and Wing's claims for defamation (Counts I and II) and invasion of privacy (Counts V and VI). *See Galanakis v. City of Newton* (*Galanakis I*), No. 4:23-cv-00044-SHL-SBJ, 2023 WL 3479167, at *15 (S.D. Iowa May 8, 2023).

Defendants later moved for summary judgment on Galanakis's claims based, among other things, on qualified immunity. The parties also cross-moved for summary judgment on Winters's and Wing's counterclaims. The Court denied Defendants' motion for summary judgment on Galanakis's § 1983 and state law false arrest claims against Winters and Wing (Counts I and IV), as well as his state law *respondeat superior* claim against the City of Newton (Count VI). *See Galanakis v. City of Newton* (*Galanakis II*), No. 4:23-cv-00044-SHL-SBJ, 2024 WL 606235, at *1 (S.D. Iowa Feb. 8, 2024). The Court granted Defendants' motion for summary judgment on Galanakis's remaining claims. *See id.* It also granted in part and denied in part Galanakis's motion for summary judgment on the counterclaims, allowing part of Winters's claims for defamation (Counterclaim Count I) and false light invasion of privacy (Counterclaim Count V) to proceed but dismissing the rest. *See id.* Winters and Wing appealed the qualified immunity aspects of the ruling, but the Eighth Circuit affirmed. *See Galanakis v. City of Newton* (*Galanakis III*), 134 F.4th 998, 1006 (8th Cir. 2025). The case is set for jury trial on June 1, 2026. In anticipation of trial, Winters and Wing have filed a Motion to Bifurcate Trial of Claims and Counterclaims (the "Motion to Bifurcate"). (ECF 98.)

   B. *Factual Background.*

In its summary judgment ruling, the Court described the underlying facts in considerable detail. *See Galanakis II*, 2024 WL 606235, at *1–5. These facts will be recited again here, in abbreviated form, to help provide context for the Motion to Bifurcate.

   1. Galanakis's Arrest on August 28, 2022.

Shortly after midnight on August 28, 2022, Officer Winters was on active-duty patrol in his Newton Police Department vehicle, accompanied by Lieutenant Wing. *Id.*, at *1. Winters initiated a traffic stop after seeing Galanakis driving with his bright lights on, in arguable violation of Iowa Code 321.415. *Id.* Winters asserts that Galanakis had "watery and blood shot eyes"— although this is not apparent in Winters's body worn camera footage—and that there was "a small odor of an alcoholic beverage that was coming from his person." *Id.* Multiple air fresheners were hanging from the rearview mirror of the car, and Galanakis was chewing gum. *Id.* Winters ended up directing Galanakis to exit the vehicle and join him in Winters's police vehicle. *Id.*, at *2.

During an ensuing discussion in the police vehicle, Galanakis denied having consumed alcohol that night and even proactively asked to take a preliminary breath test (PBT), often known as a "breathalyzer." *Id.* After a brief discussion, Winters had Galanakis exit the vehicle to perform field sobriety tests. *Id.* For the most part, Galanakis completed the tests without difficulty or signs of impairment, although Winters alleged that Galanakis showed signs of impairment during walk-and-turn, one-leg-stand, and finger-to-nose sobriety tests, as well as tests of Galanakis's eye movements and ability to estimate the passage of thirty seconds with his eyes closed. *Id.*, at *3–4. The video footage contained, at best, limited support for Winters's allegations. *Id.* As their interaction continued, Galanakis began verbally jousting with Winters, including asking him "how many false accusations you got?" and suggesting that Winters was a "rookie" or in his "first year." *Id.*, at *3.

Following the field sobriety tests, Winters finally offered Galanakis a PBT, which Galanakis had requested multiple times. *Id.*, at *4. The test revealed a blood alcohol content of 0.00. *Id.* Nonetheless, Winters advised Galanakis that he was going to read him his *Miranda* rights anyway, purportedly based on Galanakis being under the influence of marijuana. *Id.* Galanakis repeatedly denied smoking marijuana, but Winters arrested him anyway for operating while intoxicated and took him to the police station. *Id.* Galanakis submitted to a drug influence evaluation by a different officer, who concluded he was "not under the influence of a drug." *Id.*

3

Galanakis was then released without charges. *Id.* Prior to leaving the police station, Galanakis spoke with Winters and admonished him for his handling of the arrest. *Id.*

2.  Galanakis's Social Media Activity in the Days and Weeks After His Arrest.

On August 29, 2022, Galanakis posted a statement on Facebook recounting his version of the events surrounding his arrest. *Id.* The Facebook post received one thousand "likes" and over eight hundred comments. *Id.* After the post, Winters's ex-girlfriend contacted Galanakis. *Id.* In their online conversation, the ex-girlfriend (referred to in this Order as "C.V.") said that Winters had "a protective order against him and still works as a cop." *Id.* She said she had not filed criminal charges but did file a petition for a civil no-contact order. *Id.* Galanakis searched Winters's name on Iowa Courts Online and came across information relating to a "petition for relief from domestic abuse." *Id.* Galanakis did not pay for access to full versions of the documents. *Id.* Some of the court documents, including the petition for relief from domestic abuse, were included in the summary judgment record, along with an affidavit from C.V., screenshots from some of her text messages with Winters, and documents from a Newton Police Department internal investigation. *Id.* These documents include C.V.'s account of having been stalked, harassed, and physically abused by Winters, including him pushing her onto a bed; holding her down and twisting her wrist; squeezing the back of her neck slightly while saying that if he "squeezed right now it would kill you"; grabbing her wrist and pulling her back while walking with a group; elbowing her in the chest so hard that it left a bruise; and slamming her onto his bed, holding her down by the wrists, saying she could not leave until he said so. *Id.* The documents corroborate her statements that there was a civil no-contact order in place against Winters but do not say that Winters was ever charged with or convicted of domestic abuse. *Id.*

There were many comments to Galanakis's initial Facebook post in late August 2022 about his interactions with Winters on the night of the arrest. Galanakis publicly replied to some of these comments with statements implicating Winters in domestic abuse and impugning his fitness to perform his job. *Id.*, at *5. Galanakis also criticized Winters's "boss" for allowing Winters to carry a gun after committing domestic abuse. *Id.*

In September 2022, Galanakis posted a video on YouTube.com under the title "Police Wrongfully Arrest 19 Year Old During Traffic Stop." *Id.* The video is an edited compilation of police body-worn camera footage and Galanakis's phone recording from the night of the arrest. Overlaying the video, Galanakis inserted scrolling text which reads: "NATHAN WINTERS OF

THE NEWTON POLICE DEPARTMENT CONVICTED OF DOMESTIC ABUSE AFTER BEATING UP HIS EX GIRLFRIEND. THE CHIEF OF POLICE ALLOWED NATHAN WINTERS TO STAY ON THE FORCE EVEN AFTER NATHAN BEAT THE SHIT OUT OF HIS GIRLFRIEND. ROB BURDESS (THE CHIEF OF POLICE) HAD NO COMMENT ON THIS." *Id.* The YouTube video went viral, with over two million views, 63,000 "likes," and more than 18,000 comments. *Id.* In a text box immediately below the video, Galanakis posted links to his GoFundMe and Paypal accounts under the heading "To help support." *Id.* He also included the following additional information:

> Nathan Winters and LT Wing of The Newton Police Department falsely arrest teen in Newton Iowa. Tayvin Galanakis was pulled over for driving with his high beams on, and then was later falsely arrested for driving while intoxicated even after blowing 0's. Officer Nathan Winters has a no contact order involving domestic abuse in 2021 after beating his ex girlfriend. The Chief of police Rob Burdess allowed Nathan Winters to keep his job as an officer even after the news of domestic abuse.

*Id.* Winters disputes ever having been convicted of domestic abuse, thus prompting him to file defamation and false light invasion of privacy counterclaims.

    *C.  Motion to Bifurcate/Sever.*

Defendants move to bifurcate trial of the claims and counterclaims pursuant to Federal Rule of Civil Procedure 42(b), arguing that they are likely to be prejudiced if their defamation counterclaims must go to trial at the same time as Galanakis's false arrest and § 1983 claims. (ECF 98.) Galanakis resists. (ECF 99.)

## III.   LEGAL STANDARDS.

In relevant part, Rule 42(b) states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(b) gives district courts "broad discretion" to order bifurcation. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201 (8th Cir. 1990). In deciding whether to exercise this discretion, "district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." *Id.* at 1202. "However, the key issue is whether bifurcation is necessary to avoid prejudice." *Shannon v. Koehler*, 673 F. Supp. 2d 758, 770 (N.D. Iowa 2009), *aff'd in part, appeal dismissed in part*, 616 F.3d 855 (8th Cir. 2010).

Although there is not extensive Eighth Circuit precedent on severance or bifurcation under Rule 42(b), the case law provides two helpful guideposts. On one hand, "where the issues in a case are clearly separable, bifurcation is not an abuse of discretion." *O'Dell*, 904 F.2d at 1202. "On the other hand, where evidence on one issue is relevant to other issues that the movant seeks to bifurcate into a separate phase of the trial, the movant is not prejudiced, and the court does not abuse its discretion in declining to bifurcate the issues." *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036, 1056 (N.D. Iowa 2009) (citing *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998).

## IV.   LEGAL ANALYSIS.

The bifurcation analysis starts with what the Court suspects is an uncontroversial proposition: but for Winters's counterclaims, there is no plausible scenario in which his domestic abuse history would be admissible in a trial about whether he arrested Galanakis without probable cause. *Cf., e.g.*, *United States v. Johnson*, 64 F. App'x 596, 597 (8th Cir. 2003) (affirming district court ruling prohibiting defense counsel from cross-examining police officer about officer's domestic abuse history); *United States v. Edwards*, No. 19-CR-20, 2019 WL 2914017, at *3 (N.D. Okla. July 8, 2019) ("A history of alleged domestic abuse prior to the October 16, 2018 incident would also be more prejudicial than probative of the three counts charged in the indictment in this case."); *Smith ex rel. J.L v. L.A. Unified Sch. Dist.*, No. CV-16-2358, 2018 WL 6136812, at *3 (C.D. Cal. Jan. 16, 2018) ("[E]vidence concerning the TRO and any alleged domestic violence occurring during the period in which the TRO issued is more prejudicial than probative."), <u>order clarified,</u> No. CV 16-2358, 2018 WL 6137133 (C.D. Cal. Feb. 13, 2018); *United States v. Drapeau*, 73 F. Supp. 3d 1086, 1091 (D.S.D. 2014) ("This Court agrees with Drapeau that any domestic assault from which no conviction resulted … is inadmissible under Rule 404 and would be more unfairly prejudicial than probative of any fact under Rule 403."), *aff'd*, 827 F.3d 773 (8th Cir. 2016). Such evidence is simply too "emotionally inflammatory" to be admissible. *United States v. Foster*, No. 25-CR-76, 2025 WL 1467441, at *2 (N.D. Okla. May 22, 2025) (excluding evidence of prior domestic assault). Accordingly, the "key issue" of avoiding prejudice weighs strongly in favor of bifurcation. *See Shannon*, 673 F. Supp. 2d at 770.

The case for bifurcation is also supported by the fact that Galanakis's claims are "clearly separable" from Winters's counterclaims. *O'Dell*, 904 F.2d at 1202. Galanakis's claims arise entirely out of his interactions with Winters and Wing in the early morning hours of August 28, 2022, and require the jury to decide, among other things, whether Winters had arguable probable

cause to arrest Galanakis for driving under the influence. By contrast, Winters's counterclaims arise out of Galanakis's social media posts on August 29, 2022, and ensuing days and weeks and require the jury to decide, among other things, whether Galanakis's statements were false and, if so, whether Winters suffered resulting injury. There is no risk of confusion or inconsistent results on the two sets of claims in the event of bifurcation because the issues are analytically and factually distinct. *See id.* at 1201 (identifying "the likelihood of inconsistent results and possibilities for confusions" as relevant factors).

Moreover, it is unlikely that Galanakis's social media posts would be admissible if the trial were solely about his claims against Winters. Conversely, although at least *some* evidence about the arrest likely would be admissible to provide context if the trial were solely about Winters's counterclaims, such evidence would be more circumscribed than if the claims and counterclaims were tried together. Bifurcation will produce a "fairer trial" in these circumstances because "it will eliminate the significant problem of unfair prejudice resulting from introducing evidence admissible on one claim yet totally inadmissible on all others…." *Tenorio v. Pitzer*, No. CIV. 12-01295, 2018 WL 4491167, at *4 (D.N.M. Sept. 19, 2018)

In arguing against bifurcation, Galanakis asserts that other Rule 42(b) factors weigh against bifurcation, including the inefficiency of splitting the case into two trials, the late timing of the Motion to Bifurcate, the fact that Winters and Wing chose to bring their counterclaims in the first place, and the availability of limiting instructions to minimize any prejudice. (ECF 99-1.) The Court respectfully disagrees that these factors are sufficient to deny the Motion to Bifurcate.

As to limiting instructions, it is true that "[a] jury is presumed to follow its instructions." *United States v. Myers*, 503 F.3d 676, 683 (8th Cir. 2007) (quoting *Weeks v Angelone*, 528 U.S. 225, 234 (2000)). Even so, there are limits to the human mind's ability to compartmentalize. Those limits will be severely tested if jurors hear evidence about Winters's alleged physical abuse of a domestic partner as part of a case about whether he arrested Galanakis without probable cause. It is unlikely that a limiting instruction will "'unring the bell' in the minds of jurors regarding the prejudicial evidence." *Trujillo v. Am. Family Mut. Ins. Co.*, No. 1:08-CV-36-, 2009 WL 440638, at *3 (D. Utah Feb. 20, 2009); *see also Russell v. Nebo Sch. Dist.*, No. 2:16-CV-00273, 2019 WL 1930856, at *1–2 (D. Utah May 1, 2019) (concluding that limiting instruction would not provide sufficient protection against undue prejudice and thus ordering bifurcation of claims against

defendant for assault and battery from remaining claims). The availability of limiting instructions therefore does little, if anything, to weigh against bifurcation.

As to the timing of Defendants' Motion to Bifurcate, district courts have concluded that a motion to bifurcate or sever is premature if brought before the close of discovery. *See, e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 505 (S.D.N.Y. 2013); *United States v. Priv. Sanitation Indu. Ass'n of Nassau/Suffolk, Inc.* (*Private Sanitation*), 793 F. Supp. 1114, 1154 (E.D.N.Y. 1992). This is because it is not until discovery is complete—and summary judgment motions are decided—that the court and parties even know which claims and defendants will go to trial. *See Oram*, 979 F. Supp. 2d at 505 (denying motion to sever without prejudice in light of "uncertainty" as to parties, witnesses, and discovery); *Private Sanitation*, 793 F. Supp. at 1154 (denying motion as "premature"). This case illustrates the point, as many of the parties' claims and counterclaims did not survive summary judgment, including all of Wing's counterclaims and significant portions of Winters's counterclaims. In these circumstances, the Court may not have entertained an early motion to bifurcate at all, and even if it did the ruling would have been guesswork and subject to later reconsideration. The timing of the Motion to Bifurcate therefore does not weigh against bifurcation. *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417 (D. Del. 2004) (rejecting argument that defendant waited too long to file motion to sever).

The Court also will not give meaningful weight to Winters's decision to bring the counterclaims in the first place as a reason for denying bifurcation. Galanakis argues that the counterclaims "were never required to be joined" and instead have always been "permissive" for purposes of Federal Rule of Civil Procedure 13. (ECF 99-1, p. 7.) In other words, in his view, Winters made an unnecessary decision to bring the counterclaims as part of this case and should not be saved from that decision by bifurcation.

The Court is not sure that Winters had a choice. The Eighth Circuit has held that counterclaims are "compulsory" under Rule 13(a) when they have a "logical relationship" to the plaintiff's claims. *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990). The "logical relationship" test is a "broad" one, *Bankcard Sys., Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 773 (8th Cir. 2000),[1] and the Eighth Circuit is "mindful that the Federal Rules of Civil Procedure have as a general goal 'entertaining the broadest possible scope of action consistent with fairness to the

---

[1] *Bankcard Systems* applied Missouri law but noted that the governing Missouri Rule on compulsory counterclaims was "identical" to Rule 13(a).

parties; joinder of claims … is strongly encouraged,'" *Tullos*, 915 F.2d at 1195 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Against this legal backdrop—and notwithstanding the Court's conclusion above that the claims and counterclaims are analytically and legally distinct from one another—Winters's counterclaims may well have been compulsory given their close connection to his encounter with Galanakis on August 28, 2022. It follows that Winters would have run the risk of losing those claims forever if he did not assert them as counterclaims. *See Kolb v. Scherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 544–45 (8th Cir. 1993) (holding that res judicata barred plaintiff from pursuing claim that he failed to raise in prior action); *see also Burlington N. R. Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990 ("Rule 13(a) is in some ways a harsh rule." (internal punctuation omitted) (quoting *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir. 1979))). The Court will not hold the decision to bring the counterclaims against Winters in deciding whether bifurcation is appropriate.

This leaves Galanakis's strongest argument against bifurcation: the inefficiency that will arise for the Court and parties if the case goes to trial twice. This is an important factor in the Rule 42(b) analysis. For two reasons, however, the Court concludes that inefficiency is not a sufficient reason to deny the Motion to Bifurcate in a situation where all other factors are either neutral or weigh strongly in favor of bifurcation.

First, the risk of prejudice is the "key issue" when evaluating a motion to bifurcate. *Shannon*, 673 F. Supp. 2d at 770. Here, the risk of prejudice to Defendants is high if the jury hears evidence about Winters's alleged domestic abuse as part of a trial about whether Winters and Wing had probable cause to arrest Galanakis for driving under the influence. *Cf. Bombard v. Volp*, 44 F. Supp. 3d 514, 528 (D. Vt. 2014) (bifurcating § 1983 claims against an individual officer from *Monell* claims against his employer because "evidence of five years of excessive force claims against Burlington police officers would likely prejudice Officer Volp's efforts to defendant his specific actions"). Mere inefficiency is not enough in these circumstances to overcome the significant risk of prejudice.

Second, the Court can and will limit the inefficiency by splitting the case into two phases before a single jury instead of two separate trials with separate juries. Trial courts have done this in analogous circumstances. For example, in *Tenorio*, the district court bifurcated the plaintiff's § 1983 claims into "two phases before the same jury," with the first phase involving an excessive force claim against an individual officer and the second involving a municipal liability against his

9

employer. 2018 WL 4491167, at *4. The same occurred in *Jenkins v. City of New York*, No. 15-CV-5889, 2019 WL 3577767, at *1 (E.D.N.Y. Aug. 6, 2019). Similarly, "[c]ourts often bifurcate punitive damages from liability and compensatory damages because the punitive damages inquiry relies on different evidence that may unfairly prejudice the defendant or confuse the jury." *Johnson v. Union Pac. R. Co.*, 8:23-CV-216, 2025 WL 1249601, at *2 (D. Neb. Apr. 30, 2025). By proceeding in this fashion, the Court and parties will only need to undertake one round of jury selection. Moreover, so long as both parties are reasonably efficient—and assuming the jury is similarly efficient in its deliberations—the Court is confident that both phases of trial can be finished in the five-day setting beginning on June 1, 2026. If the parties believe more than five days are necessary, they should promptly file a notice or motion to that effect so the Court can set its schedule accordingly.

## V.    CONCLUSION.

The Court GRANTS Defendants' Motion to Bifurcate. (ECF 98.) The claims and counterclaims will be split into two phases before a single jury. In Phase One, the parties will present evidence and argument regarding Galanakis's claims. Following the return of the jury's verdict on Phase One, the case will proceed to Phase Two, in which the parties will present evidence and argument regarding Winters's counterclaims.


IT IS SO ORDERED.


Dated: March 17, 2026

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE