**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| TAYVIN GALANAKIS,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEWTON, IOWA, et al.,<br>    Defendants. | CASE NO. 4:23-cv-00044 |
| NATHAN WINTERS AND CHRISTOPHER WING,<br>    Counterclaim Plaintiffs,<br><br>v.<br><br>TAYVIN GALANAKIS,<br>    Counterclaim Defendant. | PLAINTIFF/COUNTERCLAIM DEFENDANT'S BRIEF SUPPORTING MOTION IN LIMINE |

**COMES NOW,** the Plaintiff/Counterclaim Defendant and under Fed. R. Evid.

104, and for this Brief Supporting Motion In Limine states:

### Table Of Contents

I.    **Trial On Plaintiff's Claims** ..............................................................................2

    A.    EVIDENCE ON COLLEGE DRUG TESTING STANDARDS .............................2

    B.    GOFUNDME EVIDENCE .........................................................................3

    C.    ALLEGATIONS OF PRIOR DRUG USE .......................................................4

    D.    AFFIRMATIVE DEFENSES NOT PLED ........................................................4

    E.    "RIPPLE EFFECT" OF LITIGATION ...........................................................4

    F.    REFERENCE TO TAXATION OR TAXPAYERS .............................................5

    G.    SOURCE OF PAYMENT FOR ANY AWARD .................................................5

    H.    DEFENDANTS' OPINION AS TO NATURE AND EXTENT OF PLAINTIFF'S

DAMAGES..................................................................................................5

II. **Trial on Counterclaims**............................................................................6

    A.  WINTERS' TESTIMONY ON DOMESTIC ABUSE.............................................6

    B.  UNDISCLOSED WITNESSES AND EVIDENCE ON REPUTATIONAL INJURY.................................................................................... 13

    C.  UNDISCLOSED WITNESSES AND EVIDENCE ON DAMAGES...................... 17

    D.  ONLINE COMMENTS INADMISSIBLE AS HEARSAY ................................. 18

    E.  ONLINE COMMENTS INADMISSIBLE AS UNFAIRLY PREJUDICIAL & IRRELEVANT ........................................................................................ 19

III. **Applicable to Both Trials**...................................................................... 20

    A.  DISMISSED CLAIMS ............................................................................ 20

    B.  ATTEMPTED T-SHIRT SALES AND FINANCIAL STATUS........................... 20

    C.  OTHER BAD ACTS EVIDENCE ............................................................. 21

    D.  OFFERS OF SETTLEMENT .................................................................... 21

    E.  SEQUESTRATION OF WITNESSES ......................................................... 22

IV. **Conclusion** ............................................................................................ 22

## I.    Trial On Plaintiff's Claims

### A.  EVIDENCE ON COLLEGE DRUG TESTING STANDARDS

At the summary judgment stage, Officer Nathan Winters argued, and the Court rejected, that Tayvin's statements about being a football player for William Penn University and being drug tested every Friday supported his belief that Tayvin was intoxicated. (R.Doc.77 at 16.) As the Court said:

> Winters's incident report does not mention anything about this…and thus a reasonable juror could conclude it was not something Winters

2

> …contemplated during the stop. Moreover…a single false or misleading statement would not be enough to establish arguable probable cause for arrest given the surrounding evidence of non-impairment.

(R.Doc.77 at 16.) Given the lack of relevance and weight of this evidence, Officer Winters should not be permitted to testify on it, nor introduce evidence of the NAIA and William Penn drug testing policies. Such information would create a substantial danger of misleading or confusing the jury as to the standard for an officer to arrest an individual for driving while intoxicated. Fed. R. Evid. 402, 403.

## B.   GOFUNDME EVIDENCE

Officer Winters may seek to introduce evidence of a short-lived GoFundMe fundraiser Tayvin created to obtain funds to retain legal counsel following his unlawful detention. Admission of such evidence violates the collateral source rule, which bars evidence or argument that a party received funds from an independent source to reduce a tortfeasor's liability. *North Star Mutual Ins. Co. v. Lipps*, No. 20-cv-3042, 2022 WL 19000608, *2 (N.D. Iowa Nov. 22, 2022). *See also Fust v. Francois*, 913 S.W.2d 38, 47 (Mo. Ct. App. 1995) (*quoting Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. 1995) (collateral source rule applies when attorney fees are recoverable as "the wrongdoer may not be benefited by collateral payments made to the person he was wronged."). As attorney fees and certain expenses are recoverable, collateral source evidence regarding such payments is inadmissible and undermines the statute's purpose. *See Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998) (purpose of §1988 "is to ensure effective access to the judicial process for persons with civil rights claims and to encourage litigation to enforce" civil rights provisions);

*Graco, Inc. v. CRC, Inc. of Texas*, 47 S.W.3d 742, 747 (Tex. Ct. App. 2001) (evidence on insurance payment of attorney fees defeats purpose behind indemnification statute and would impair ability to obtain legal representation).

It is also irrelevant to any issue to be tried to the jury, as any award of fees and expenses is determined by the Court, with the jury having no role. *See* 42 U.S.C. §1988(b)-(c). As it has no bearing on the jury's determination of any fact of consequence to any claim or defense, it must be excluded. Fed. R. Evid. 401, 02.

## C.  ALLEGATIONS OF PRIOR DRUG USE

Any assertion or questioning regarding whether Tayvin had used any controlled substance before the date of the stop is irrelevant. *Clinton*, 2023 WL 2534047 at *12. And as Tayvin has no "qualifying criminal conviction, evidence of [Tayvin's] drug use…is not admissible for purposes of impeaching his credibility." *Id.* (*citing U.S. v. Turner*, 104 F.3d 217, 223 (8th Cir. 1997)).

## D.  AFFIRMATIVE DEFENSES NOT PLED

Defendant is barred from raising any affirmative defenses not already pled. Failure to plead an affirmative defense "results in a waiver of that defense and its exclusion from the case." *Sayre v. Musicland Grp., Inc.*, 850 F.2d 350, 354 (8th Cir. 1988). The pleading deadline has passed. No additional defenses may be asserted.

## E.  "RIPPLE EFFECT" OF LITIGATION

Any argument this or similar lawsuits could be detrimental to insurance rates or premiums, police practice or procedures, or the municipal defendants' financing or budget must be excluded from trial. Any such effect is irrelevant to any issue to be

tried. *Clinton v. Garrett*, No. 4:20-cv-00166, 2023 WL 2534047, *12 (S.D. Iowa March 15, 2023). *See also* Fed. R. Evid. 401, 402, 403.

### F.    REFERENCE TO TAXATION OR TAXPAYERS

Any reference to any possible tax consequences from Plaintiff receiving a judgment is irrelevant under Rule 401, and any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and might mislead the jury under Rule 403. *See Shannon v. Koehler*, No. 08-4059, 2011 WL 10483363, *19 (N.D. Iowa Sept. 16, 2011) (prohibiting "inviting jurors to consider how a verdict might affect them (or their taxes)"). Any argument, mention, or implication that taxpayers will ultimately be responsible for paying a judgment should be precluded as irrelevant and highly prejudicial. Fed. R. Evid. 401, 402, 403.

### G.    SOURCE OF PAYMENT FOR ANY AWARD

Just as Officer Winters should not imply that taxpayers may have a role in paying any award in this matter, the Court should not allow any suggestion that Officer Winters would be indemnified in the event of any finding of liability or damages. Likewise, there should be no comment on the size of the City of Newton, its police department, or the ability to pay any award. Any such references are irrelevant and prejudicial and would confuse the jury. Fed. R. Evid. 401, 403. *See also Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986) (prejudicial error to indicate a municipality would pay a judgment against an officer).

### H.    DEFENDANTS' OPINION AS TO NATURE AND EXTENT OF PLAINTIFF'S DAMAGES

Defendants are unqualified to opine as to the nature and extent of Plaintiff's damages. Defendants have no personal knowledge based on observations of or

communications with Plaintiff following his release. Defendants are not qualified or competent to opine or testify as to the nature and extent of Plaintiff's damages, and they should be precluded from doing so. Fed. R. Evid. 104, 602, 701, 702.

## II.   Trial on Counterclaim

### A.   WINTERS' TESTIMONY ON DOMESTIC ABUSE

As this Court previously found, Officer Winters repeatedly invoked the Fifth Amendment during his deposition as he "refused to answer questions about the situation that led to the protective order" issued to his ex-girlfriend on allegations he abused her, "when opposing counsel could have probed for more details, tested his recollection of events, and otherwise tried to expose possible inaccuracies in his testimony." (R.Doc.77 at 27.) This invocation and refusal extended to his responses to written discovery. (R.Doc.66-4 at 60-62; R.Doc.70-2.)

Officer Winters invoked his right, with the advice of counsel, on an issue going directly to the counterclaims Officer Winters "*chose* to raise…against Galanakis," a choice he was entitled to make. (R.Doc.66-4 at 57; R.Doc.70-2; R.Doc.77 at 28 (original emphasis).) He did so though "he knew or should have known" his counterclaims "would place his underlying conduct at issue, yet he exercised his Fifth Amendment right" throughout discovery. (R.Doc.77 at 28.)

Though a litigant is free to assert this right, it is equally true "that the law of privileges tends to suppress the truth." *Rosebud Sioux Tribe v. A&P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984). This truth reaches its apex when the Fifth Amendment is asserted during civil litigation, where "'[i]n civil litigation between private parties,

current Fifth Amendment jurisprudence sacrifices the determination of truth, the policies underlying liberal discovery, and the vindication of public and private rights to an extent rarely appreciated." *Id.* (*quoting* Heidt, *The Conjurer's Circle–The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1064 (1982)).

Officer Winters' freedom to invoke this right in civil discovery is not freedom from consequence: "Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof. Moreover, a district court has discretion in its response to a party's invocation of the Fifth." *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). While Officer Winters "has important rights that must be respected… [Tayvin] should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1979). As the Fifth Circuit emphasized, "a civil plaintiff has no absolute right to both his silence and his lawsuit." *Id.*

The purpose of discovery, and the Rules guiding it and the admission of evidence, is "to secure fairness in the administration of justice; to guarantee that the truth would be ascertained and proceedings would be determined justly." *Rosebud Sioux Tribe*, 733 F.2d at 522. Efforts to circumvent this are looked upon poorly: "These rules were not designed to be manipulated unfairly, by any party in a legal proceeding, so as to obscure the truth. …[M]isuse of rules designed to assist in the struggle for justice cannot, and will not be tolerated." *Id.* at 523.

When confronted with such circumstances, courts have broad discretion in

7

forming a remedy. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989) (*citing National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976)). Such remedies include excluding testimony concerning matters on which the Fifth Amendment privilege has been asserted, as one "may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." *Id*. at 577.

The Ninth Circuit is equally blunt: "Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008). This approach extends broadly across jurisdictions, as "[c]ourts have not been afraid to bar a party from testifying where doing so was necessary to prevent the 'thwart[ing] [of] the purposes and policies of the discovery rules.'" *Gutierrez-Rodriguez*, 882 F.2d at 577 (*quoting Meyer v. Second Judicial Dist. Court, etc.*, 591 P.2d 259, 261 (Nev. 1979)). *See also Traficant v. C.I.R.*, 884 F.2d 258, 265 (6th Cir. 1989) (original emphasis) ("We believe it was proper…once he had invoked the privilege against self-incrimination…from introducing other evidence on *that matter*."); *S.E.C. v. Benson*, 657 F.Supp. 1122, 1129 (S.D.N.Y. 1987) (right of party obstructing discovery by assertion of privilege forfeited "right to offer evidence" disputing claim, "or supporting his own denials" as one "hiding behind the protection of the Fifth Amendment as to his contentions…gives up the right to prove them"); *Duffy v. Currier*, 291 F.Supp. 810, 815 (D. Minn. 1968) ("The court would not tolerate nor indulge a practice whereby" a party asserting the

8

Fifth Amendment "during pre-trial examination and then voluntarily waiving the privilege at the main trial surprise or prejudiced the opposing party.").

The Eighth Circuit recognizes that the district court "may exclude from evidence at trial any matter which was not properly disclosed" with reversal being "only for abuse of discretion." *Iowa-Mo Enterprises, Inc. v. Avren*, 63 F.2d 443, 447 (8th Cir. 1981). The reverse is also true, with the *admission* of undisclosed evidence being an abuse of discretion when available months before trial, "well within the scope of permissible discovery," and failure to disclose being "prejudicial to the preparation and presentation of" the opposing case. *Ryan v. Bd. of Police Comm'rs of City of St. Louis*, 96 F.3d 1076, 1083 (8th Cir. 1996).

This Court "must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3rd Cir. 1994). Evidentiary restrictions on "the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Id. See also Traficant*, 884 F.2d at 265 (limits on admissibility permitted when "directly related to the scope of the asserted privilege.").

In establishing the proper balance, however, "[t]he scales of justice would hardly remain equal…if a party can assert a claim…and then be able to block all discovery attempts…by asserting a Fifth Amendment privilege…upon his claim." *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969). Fairness recognizes that "[i]f any prejudice is to come from such a situation, it must…be to the party asserting the

claim" as the party who elected "to create an imbalance in the pans of the scales." *Id*.

Officer Winters brought the counterclaims for defamation and false light invasion of privacy. Officer Winters then asserted his right against self-incrimination as to the underlying facts of domestic abuse. Though the claims of defamation and invasion from stating he *committed* the abuse was resolved in Tayvin's favor, such abuse remains central to his remaining counterclaims, with this Court finding reasonable jurors "could conclude that if Winters actually physically assaulted his ex-girlfriend, he did not suffer reputational injury" for either defamation or invasion of privacy, or "did not place Winters before the public in a false light that would be highly offensive to a reasonable person." (R.Doc.77 at 30-31, 33.)

Discovery closed on November 13, 2023. (R.Doc.11 at 2.) Two months later, Officer Winters attempted to circumvent the process by appearing to waive his Fifth Amendment right in an affidavit. (R.Doc.65-3 at 15.) This Court correctly rejected this attempt. (R.Doc.77 at 28.) It should do so again as to Officer Winters testifying at trial, as permitting his testimony would place Tayvin, "having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter…at a disadvantage." *Graystone Nash, Inc.*, 25 F.3d at 187. "The opportunity to combat the newly available testimony" would be lost and "orderly trial preparation" disrupted. *Id*. Forcing Tayvin to ask Officer Winters "about details of the incident at trial…without the benefit of any discovery" would have a prejudicial "effect on the outcome of the trial" with the "ability to formulate a trial strategy [being] certainly hindered[.]" *Harris v. City of Chicago*, 266 F.3d 750, 755 (7th Cir. 2001).

While Officer Winters' affidavit purportedly consists of what his trial testimony would be, it consists entirely of general denials "on a critical issue that would have been explored in great detail in a deposition" and permitting it at trial "would allow him to manipulate the discovery process so that his unquestioned, conclusory assertions" would be "the only version of his testimony" available. *S.E.C. v. Brown*, 579 F.Supp.2d 1228, 1235 (D. Minn. 2008). As this Court has recognized, "Winters's manipulation of the discovery process is, in some respects, worse that what the defendants did in *Brown*" and *First Bank Business Capital, Inc. v. Agriprocessors, Inc.*, No. 08-cv-1035, 2010 WL 300630 (N.D. Iowa Jan. 19, 2010). (R.Doc.77 at 28.)

Officer Winters has known since February 8, 2024, that these counterclaims would go to trial. (R.Doc.77 at 34.) While he sought an interlocutory appeal regarding Tayvin's claims, he knew the outcome of that appeal could not change this fact. Even setting aside the time of his appeal, he has known since June 9, 2025, that a trial was coming. (R.Doc.91.) Despite this knowledge and his purported waiver of the Fifth Amendment, Officer Winters *never* supplemented his discovery responses, nor offered to reopen his deposition. From this, Tayvin is "entitled to assume that [Winters']…responses [have] not changed." *Harris*, 266 F.3d at 754. "Absent an effort by [Winters] to clarify where he asserted the privilege" it is reasonable to assume his "position with respect to the privilege remain[s] unchanged." *Id.*

His affidavit does not change this. "[T]estimonial waiver does not stretch from one proceeding to another." *U.S. v. Norman*, 107 F.4th 805, 809 (8th Cir. 2024). Pretrial proceedings are generally recognized as separate from trial, and even from

11

one type of discovery to another. *See Duffy*, 2910 F.Supp. at 815 ("substantial authority" that waiver "is limited to the particular proceedings" but declining to decide "whether the answer to interrogatories…is a separate and distinct pre-trial proceeding" from "the subsequent deposition…and still later the trial.").

Precluding Officer Winters from testifying on domestic abuse is not equivalent to a dismissal or directed verdict. The defamation/invasion alleged is not the abuse itself, but instead "[t]he jury will have to decided whether Galanakis defamed Winters by saying he had been 'convicted' of domestic abuse." (R.Doc.77 at 31.) The jury will assess testimony on the abuse, decide what it believes, and determine the interplay between it and the word "convicted" as to Officer Winters' reputation. Officer Winters can present his case to the same extent as he disclosed it during discovery. This is not an unfair burden, but "merely force[s] him to abide by his decision and protect[s] [Tayvin] from any unfair surprise at trial." *Gutierrez-Rodriguez*, 882 F.2d at 577. "The plaintiff who retreats under…the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would…enable plaintiff to use his Fifth Amendment shield as a sword." *Wehling*, 608 F.2d at 1087.

Officer Winters' counseled decision to assert the privilege against self-incrimination on whether he committed domestic abuse was his to make, but in a civil case, on a claim brought by him, it is not without consequence. The consequence sought here is only that he be bound by his decision, limiting him to the proof he has chosen to produce, a circumstance which is all that he is entitled to begin with. This

Court should order the exclusion of any testimony by Officer Winters regarding domestic abuse against his ex-girlfriend.

## B.   UNDISCLOSED WITNESSES AND EVIDENCE ON REPUTATIONAL INJURY

In his initial disclosures, Officer Winters had nothing to say about individuals with knowledge of harm to his reputation. It was stated that "friends and family members may have knowledge regarding the facts and circumstances within Counterclaim Plaintiffs' Counterclaim[,]" but reputational injury was not specified. (Attachment 1 at 2.) Also not specified was which friend or family member possessed knowledge, as it was "[y]et to be determined." (Attachment 1 at 2.) Nor were any documents speaking to his reputation identified. (Attachment 1 at 3.)

When asked via interrogatories to identify exhibits and witnesses for trial, he answered that "Defendant has made no decisions." (Attachment 3 – Rog. 15-16.) He also declined to summarize his factual contentions or identify documents regarding loss of reputation. (Attachment 4 – Rog. 23.) These were never supplemented.

Officer Winters did provide supplemental initial disclosures, which again said nothing about individuals with knowledge of reputational injury. (Attachment 2 at 2.) It simply restated that friends or family, who remained to be determined, may have knowledge concerning the counterclaims. (Attachment 2 at 2.) Nor were any additional documents identified as to reputational harm. (Attachment 2 at 2.) These supplemental disclosures were produced the day discovery closed. (R.Doc.11 at 2.)

Without awaiting discovery requests, Officer Winters was required to provide "the name and, if known, the address and telephone number of each individual likely

to have discoverable information–along with the subjects of that information—that the disclosing party may use to support its claims[.]" Fed. R. Civ. P. 26(a)(1)(a)(i). He was also required to supplement disclosures and discovery responses are made, "in a timely manner if…the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known[.]" Fed. R. Civ. P. 26(e). Officer Winters never identified, at any point before the close of discovery, any witness or other evidence he may use to establish reputational harm.

Because of Officer Winters' failure "to provide information or identify a witness as required by Rule 26(a) or (e), [he] is not allowed to use that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The exclusion of this evidence is an automatic self-executing sanction. *E&I Global Energy Services, Inc. v. Liberty Mutual Insurance Company*, 134 F.4th 504, 513 (8th Cir. 2025).

To avoid exclusion, the party resisting the sanction has the burden to establish that the failure to comply with the Rules was substantially justified or harmless. *PTH Holding II LLC v. North American Company for Life and Health Insurance*, 674 F.Supp.3d 532, 569 (S.D. Iowa 2023). This is assessed by considering "'the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony.'" *Doe v. Stephen*, No. 3:20-cv-00005, 2022 WL 4182197, *13 (S.D. Iowa July 27, 2022) (*quoting Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). Also considered is when the witnesses

14

became known to the disclosing party and how soon after they were disclosed. *Doe*, 2022 WL 4182197 at 13.

The reason for noncompliance appears to be that Officer Winters did not believe disclosure was necessary because he believed reputational harm did not need to be established. (Attachment 4 – Rog. 24; R.Doc.77 at 29.) But as of February 8, 2024, Officer Winters knew he would be required to prove "reputational injury to win a defamation claim…about Winters being 'convicted' of domestic abuse." (R.Doc.77 at 30.) Even allowing for his original belief, this was 1) resolved over two years ago with no supplemental answers being provided, and 2) based on a misunderstanding of the law, as even in defamation *per se* cases, "[r]equiring evidence of reputation…is necessary so that a jury can determine the extent of injury." *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990).

Misunderstanding what is required to prove a claim is not a "compelling reason for failing to identify these witnesses[,]" particularly when the pool of individuals is Officer Winters' "friends and family members," known to him, and only him, from the start. *Doe*, 2022 WL 4182197 at *14 (no reason for non-disclosure when party knew of witnesses "long before disclosing them.") The purpose of the disclosure rules "is to ensure that all parties have access to the information they need to properly evaluate their cases and prepare for trial." *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 674 F. Supp. 3d 532, 569 (S.D. Iowa 2023). Failure to disclose witnesses known to a party to have information on a central element to their claim "suggests the failure to disclose was a deliberate strategic decision." *Cox Automative, Inc. v. Super*

*Dispatch Inc.*, No. 4:24-cv-00292, 2025 WL 3146418, *2 (E.D. Mo. Nov. 11, 2025).

Nor is this harmless as "there is surprise and prejudice" to Tayvin should he now be "confronted with names of additional witnesses…year[s] after the close of discovery and shortly before trial." *Doe*, 2022 WL 4182197 at *14. *See also Cox Automotive, Inc.*, 2025 WL 3146418 at *2 (non-disclosure not harmless as "discovery is now closed" and there is not time "to thoroughly investigate and depose[.]")

Permitting Officer Winters to call undisclosed witnesses to testify as to his reputation would disrupt the order and efficiency of this trial. It has already been bifurcated on his motion, with the Court having specifically designed how the parties' claims are to be tried. At best, Tayvin's counsel would be forced to investigate new witnesses while in the final stretch of trial preparation, and likely while prosecuting Tayvin's claims. Additional witnesses necessarily lengthen a trial, which was of concern to the Court in granting bifurcation. (R.Doc.101 at 10.)

While such testimony is important to Officer Winters, this importance is a double-edged sword that cuts against him under the circumstances. *See Cox Automotive, Inc.*, 2025 WL 3146418 at *2 (excluding undisclosed "apex witnesses" as failure to disclose "two important witnesses suggests" non-disclosure was deliberate). Given the need to prove a baseline for reputation and harm in any defamation claim, Officer Winters knew which "friend or family member" would testify before now.

The above is also true as to what, if any, documents Officer Winters intends to use to establish his reputation or harm to it. None have yet been specifically identified for that purpose. It should not be left for Tayvin to guess what he intends to use. *PHT*

16

*Holding II LLC*, 674 F.Supp.3d at 570 (*quoting Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018)) (disclosure requirements meaningless if "'a party could ignore them and then claim that the nondisclosure was harmless because the other party should have read between the lines.")

Reputation and harm were always elements Officer Winters needed to prove. He never disclosed how he intended to, though he has likely known for some time. There is no justification for nondisclosure, nor is it harmless. Officer Winters should be prohibited from presenting witnesses or documents on his reputation or its harm.

## C.   UNDISCLOSED WITNESSES AND EVIDENCE ON DAMAGES

The above authorities also require excluding any undisclosed witness or document from being used to establish reputational damages. Officer Winters disclosures, initial and supplementary, state that "medical providers" and "fellow officers and coworkers" each "may have knowledge regarding the damages incurred," with specific individuals remaining "[y]et to be determined." (Attachment 1 at 2; Attachment 2 at 2.) While supposedly still determining which medical provider had this knowledge on the day discovery closed, Officer Winters had already answered an interrogatory asking for "treatment providers from which you received mental health treatment or counseling," by saying "none." (Attachment 4 – Rog. 25.)

When asked via interrogatories to identify exhibits and witnesses for trial, he answered that "Defendant has made no decisions[.]" (Attachment 3 – Rog. 15-16.) He declined to summarize his factual contentions or identify documents regarding counterclaim damages, including "any other category of damages" he expected to

17

seek. (Attachment 4 – Rog. 23.) These answers were never supplemented.

Just as he has failed to disclose the source of evidence he intends to present for reputational harm, Officer Winters also failed to disclose the same for any damages he claims, despite knowing for over years that he needs to prove damages. (R.Doc.77 at 30.) He has not disclosed witnesses or identified documents he intends to use for this purpose. This failure is neither justified nor harmless, and Officer Winters should be prohibited from presenting testimony or documents on such damages.

## D.   ONLINE COMMENTS INADMISSIBLE AS HEARSAY

As part of discovery, Officer Winters produced over two hundred pages of online comments, primarily from YouTube, but also TikTok, Facebook, and Instagram. Each comment is a written assertion by a declarant not made while testifying during trial, making every single comment hearsay if offered to prove the truth of the matter asserted. Fed. R. Civ. P. 801(a)-(c). Online comments do not inherently fall within a hearsay exception, and can "only be admitted for their truth upon a showing that each individual out-of-court statement falls within an exception[.]" *Steak N Shake Inc. v. White*, No. 4:18-cv-00072, 2020 WL 758977, *2 (E.D. Mo. Feb. 14, 2020). *See also Goldstein v. Hindle*, No. 21-cv-3124, 2026 WL 63116 (D. Md. Jan. 8, 2026) (alleged defamatory Facebook comments hearsay when offered for truth). Courts have applied the hearsay rule to internet comments to such an extent as to state, "'[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules.'" *U.S. v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (*quoting St. Clair v. Johnny's Oyster*

*& Shrimp, Inc.*, 76 F.Supp.2d 773, 775 (S.D. Tex. 1999)).

Tayvin asserts these comments are not subject to a hearsay exception. No witnesses have been identified as being the source of any comments, nor any documentation produced that would support any exception for them. Such comments should be ordered excluded as hearsay.

### E.    ONLINE COMMENTS INADMISSIBLE AS UNFAIRLY PREJUDICIAL & IRRELEVANT

In these two hundred-plus pages of online comments are thousands of comments by anonymous individuals running the gamut of support for Tayvin and antagonism for Officer Winters to the reverse, with random statements pertaining to nothing of relevance to the counterclaims. Evidence is only relevant if it tends to make "more or less probable" a fact "of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. And relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of…: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The only defamation or false-light invasion to be addressed at trial is the initial phrasing that Officer Winters had been *convicted* of domestic abuse. (R.Doc.77 at 31.) Out of over 15,000 comments on the YouTube video, only a handful are directed toward the "convicted" statement. And while these would be relevant, even this is minor if the comments are not admitted for their truth, as "[g]iven the anonymous nature of the comments, their relatively limited number and the fact that they are not considered for the truth…, the weight afforded them is slight." *GoSMiLE, Inc. v.*

19

*Dr. Jonathan Levine, D.M.D. P.C.,* 769 F.Supp.2d 630, 647 (S.D. N.Y. 2011).

The vast majority of the remaining thousands of comments are based on Officer Winters' behavior during Tayvin's detention, as are the comments on other social media. Assuming any are non-hearsay, comments not addressing Officer Winters' being "convicted" have no relevance. Even if they did, admitting *thousands* of them would infuse the trial with every danger that Rule 403 seeks to prevent, substantially outweighing any minor relevance they have. Such evidence should be excluded.

### III.   Applicable to Both Trials

#### A.   DISMISSED CLAIMS

Several claims and counterclaims have been dismissed. Any discussion of them is irrelevant to those being adjudicated, would confuse the issue, and mislead the jury, substantially outweighing probative value. Fed. R. Evid. 402, 403.

#### B.   ATTEMPTED T-SHIRT SALES AND FINANCIAL STATUS

Tayvin is not seeking damages for lost earnings or wages. At the time of the stop, he was an unemployed college student. Officer Winters is expected to seek to introduce evidence that Tayvin attempted—and failed—to earn income from sales of t-shirts bearing quotations of statements made during his stop on them. This is irrelevant. Fed. R. Evid. 401, 402. The purpose of such evidence would be to stoke an emotional reaction in the jury against him, requiring exclusion for being unduly prejudicial. Fed. R. Evid. 403. More generally, his financial status "has no bearing on the compensatory damages that may have been suffered[.]" *McRaven v. McMurrian,* No. 6:07-cv-06019, 2009 WL 10707512, *4 (W.D. Ark. Nov. 30, 2009). Inquiry into

financial status "thr[o]w[s] no light upon the single issue to be tried by the jury" and permitting evidence of a party's financial condition "except where position or wealth is necessarily involved in determining the damages sustained, is prejudicial error." *Union Electric Light & Power Co. v. Snyder Estate Co.*, 65 F.2d 297, 303 (8th Cir. 1933). "[S]uch evidence might invite jurors to decide the claims in this case on the improper basis of the parties' relative wealth, rather than on…proof of the specific claims. Thus, such evidence appears…more prejudicial than probative[.]" *Catipovic v. Turley*, 68 F.Supp.3d 983, 1002 (N.D. Iowa 2014). *See also* Fed. R. Evid. 401, 403.

## C.   OTHER BAD ACTS EVIDENCE

Any behavior by Tayvin unrelated to the incident at issue in this case is irrelevant and should be excluded at trial. Evidence of such behavior, misconduct, or bad acts does not make a fact of consequence in determining the action at hand more or less probable than it would be without the evidence. Accordingly, any such evidence is not relevant and thus inadmissible. Fed. R. Evid. 401, 402. Even if it could be argued that any prior bad acts or instances of misconduct, although unrelated in time, place, and circumstances to the incident at issue in this case, had some very marginal relevance, the prejudicial effect of such evidence greatly outweighs its probative value and should therefore be excluded. Fed. R. Evid. 403; *see generally Old Chief v. U.S.*, 519 U.S. 172, 180-182 (1997) (evidence of other bad acts as propensity evidence).

## D.   OFFERS OF SETTLEMENT

Federal Rule of Evidence 408 prohibits evidence of conduct or statements made in settlement negotiations. Any mention of settlement negotiations should not be

provided by either side or their witnesses. Admissibility of such evidence would be prejudicial, confusing to the jury, and may cause a mistrial on this action.

## E.    SEQUESTRATION OF WITNESSES

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. All non-party witnesses should be sequestered during trial.

## IV.    Conclusion

For these reasons, Plaintiff's Motion In Limine should be granted, with the Court ordering exclusion of all prohibited evidence and arguments. Where the Court believes issues may arise in each trial, the prohibitions should be granted as to each.

BOLES WITOSKY STEWART LAW PLLC

BY:            /s/ Adam C. Witosky
     Matthew M. Boles     AT0001037
     Adam C. Witosky     AT0010436
     Christopher Stewart     AT0013127
     2015 Grand Avenue, Ste. 200
     Des Moines, Iowa 50312
     Telephone:     (515) 235-0551
     Facsimile:     (515) 243-3696
     Email:   matt@bwsiowa.com
            adam@bwsiowa.com
            chris@bwsiowa.com
     **ATTORNEYS FOR PLAINTIFF/**
     **COUNTERCLAIM DEFENDANTS**

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was **electronically filed** on CM/ECF on April 24, 2026. Subject to the exceptions cited therein, Local Rule 5A provides this electronic filing, once electronically posted to the registered case party's CM/ECF account, constitutes service for purposes of the Federal Rules of Civil Procedure.

Copies have been provided to all registered parties because once the document is posted, those parties are able to view and download the presented or filed document.

     /s/ Tami Fairchild

22